# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DONALD L. PALMER,

                        Petitioner,

        -vs-

MARGARET A. BAGLEY, Warden,

                        Respondent.

:      Case No. 1:00-cv-882

      District Judge Thomas M. Rose
      Chief Magistrate Judge Michael R. Merz

:

---

# REPORT AND RECOMMENDATIONS

---

In this capital case, Donald Palmer petitions the court for a Writ of Habeas Corpus (Doc. No. 15). Respondent has filed a Return of Writ (Doc. No. 21), and Palmer has filed his Traverse (Doc. No. 25). The matter is now ripe after the evidentiary hearing.

In his petition, Palmer raises the following eighteen grounds for relief:

**First Ground for Relief**

[Petitioner's] convictions . . . and resulting death sentence(s) are contrary to or involve an unreasonable application of the conclusion of law announced in the United States Supreme Court case of Schlup v. Delo, 513 U.S. 298 (1995)[,] and violate the Eighth and Fourteenth Amendments to the United States Constitution, because even though he is responsible for the deaths . . ., he did not act purposely with prior calculation and design.

**Second Ground for Relief**

[Petitioner's] conviction for the aggravated murders and resulting death sentence are contrary to or an unreasonable application of the conclusion of law announced in the United States Supreme Court case of In re Winship, 397 U.S. 358, 264 (1970)[, and] were obtained in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution because the evidence which was

introduced during his trial failed to establish that the [sic] acted with prior calculation and design.

**Third Ground for Relief**

The trial court . . . and Ohio Supreme Court's failure to find that the state prosecutor engaged in prejudicial misconduct . . . constitutes an unreasonable application of the conclusions of law announced in the case of <u>Berger v. United States</u>, 295 U.S. 78 (1935)[,] and prejudiced Petitioner in both the guilt and penalty phases of his trial.

**Fourth Ground for Relief**

The trial court's denial of Petitioner's request for an instruction on the lesser included offense of involuntary manslaughter was contrary to or an unreasonable application of the conclusion of law announced in the United States Supreme Court case of <u>Hopper v. Evans</u>, 456 U.S. 605, 612 (1982)[,] and thereby deprived Petitioner of his right to due process of law and against cruel and unusual punishment as guaranteed by the Constitution of the United States.

**Fifth Ground for Relief**

The trial court's decision to deny Petitioner's request for a jury instruction on the defense of self-defense was contrary to or an unreasonable application of the conclusion of law announced in the United States Supreme Court case of <u>Beck v. Alabama</u>, 447 U.S. 625, 637 (1980)[,] and thereby denied appellant [sic] his right to due process of law and against cruel and unusual punishment as guaranteed by the constutitions [sic] of the United States.

**Sixth Ground for Relief**

The trial court's failure to instruct the jury that they were required to make a specific finding that [P]etitioner intended to kill the respective victims was contrary to or an unreasonable application of the conclusion of law announced in the United States Supreme Court cases of <u>United States v. Gaudin</u>, U.S. (1995) [sic][,] and <u>Neder v. United States</u>, 119 S.Ct 1827 (1999).

**Seventh Ground for Relief**

The trial court's instruction on inferences deprived appellant [sic] of his rights to due process of law and against cruel and unusual

punishment as guaranteed by the Constitution of the United States .
. . .

**Eighth Ground for Relief**

The trial court erroneously permitted the admission of evidence of
and argument relating to irrelevant and highly prejudicial "other acts"
which [P]etitioner allegedly committed against a person not named
in the indictment [and] thereby deprived appellant [sic] of his right to
due process of law and violated his right against cruel and unusual
punishment . . . .

**Ninth Ground for Relief**

The trial court's failure to give a limiting instruction on "other acts"
evidence deprived Petitioner of [d]ue [p]rocess of law and violated
Petitioner's right against cruel and unusual punishment because there
were no permissible inferences that the jury could draw from the
evidence.

**Tenth Ground for Relief**

The trial court's failure to order the election of counts prior to the
sentencing phase of Petitioner's trial was contrary to or an
unreasonable application of the conclusion of law that a capital
sentencing procedure must be one that guides and focuses the jury's
objective consideration of the individual offense and the individual
offender before it can impose a sentence of death announced in the
United States Supreme Court case of <u>Jurek v. Texas</u>, 428 U.S. 262,
273-74 (1976)[,] and deprived Petitioner of his constitutional right to
due process of law and against cruel and unusual punishment.

**Eleventh Ground for Relief**

The trial court's exclusion of relevant mitigation evidence . . . at the
penalty phase of [Petitioner's] capital trial was contrary to or an
unreasonable application of the conclusion of law announced in the
United States Supreme Court case of <u>Lockett v. Ohio</u>, 438 U.S. 613
(1978), in violation of his rights to an informed, individualized
determination of the appropriate penalty and to his constitutional
rights to due process and against cruel and unusual punishment.

**Twelfth Ground for Relief**

The trial court's instruction to the jury during the sentencing phase of [Petitioner's] trial requiring the jury to be unanimous in their decision as to whether [Petitioner] was to receive a life sentence was contrary to or an unreasonable application of the conclusion of law announced in the United States Supreme Court case of <u>Mills v. Maryland</u>, 486 U.S. 367, 383 (1988)[,] and violated the Eighth and Fourteenth [A]mendments to the United States Constitution.

**Thirteenth Ground for Relief**

The trial court permitted the jury to consider multiple specifications which arose from an indivisible course of conduct which was contrary to or an unreasonable application of the conclusion of law announced in the United States Supreme Court case of <u>Godfrey v. Georgia</u>, 446 U.S. 420, 428 (1980)[,] and the trial court;'s [sic] instruction permitted the jury to aggregate the aggravating factors against the mitigating evidence instead of properly weighing the aggravating factors individually against all of the mitigating evidence thereby deprived Petitioner of his right to due process of law and against cruel and unusual punishment.

**Fourteenth Ground for Relief**

The judgment and sentences against Petitioner are void or voidable because his trial was held in a community that had been saturated with media coverage concerning his guilt, including extensive newspaper coverage and extensive radio and television coverage contrary to the constitutional protections . . . .

**Fifteenth Ground for Relief**

The trial court, Belmont County Court of Appeals[,] and Ohio Supreme Court's failure to find that [P]etitioner's trial counsel rendered ineffective assistance of counsel . . . constitutes an unreasonable application of the conclusions of law announced in the case of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

**Sixteenth Ground for Relief**

Petitioner was denied his right to an effective appeal which is contrary to or an unreasonable application of United States Supreme Court precedent announced in the case of <u>Griffin v. Illinois</u>, 351 U.S. 12, 20 (1956)[,] because the transcript on [a]ppeal was incomplete and alternative devices could not fulfill the same function as a

transcript so as to ensure meaningful appellate review.

**Seventeenth Ground for Relief**

The Belmont County Court of Appeals and Ohio Supreme Court's failure to find that [P]etitioner's appellate counsel rendered ineffective assistance of counsel . . . constitutes an unreasonable application of the conclusions of law announced in the case of <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985).

**Eighteenth Ground for Relief**

Petitioner['s] . . . conviction and death sentence are void or voidable because of the cumulative effect of the errors and omissions presented in this petition.

(Doc. No. 15.)


# FACTS

A brief recitation of the facts of Palmer's case will facilitate an understanding of his grounds for relief. Additional facts will be discussed as needed in the relevant grounds for relief.

According to Palmer, he and his former brother-in-law Edward Hill traveled from Columbus to Belmont County, Ohio, on May 7, 1989, to help Palmer's sister pick up and cash her social security disability check. After accomplishing that goal the next day, Palmer and Hill drove around the Belmont County area, during which time Palmer drank nearly a fifth of whiskey. Twice, Palmer and Hill drove past the residence of George Goolie, whom Palmer's ex-wife, Hill's sister Cammy Palmer, had dated. At trial, the prosecutors suggested the duo had it in mind to rob Goolie, burglarize his home, or worse. Indeed, upon passing by Goolie's home once and finding no indication that Goolie was there, Palmer and Hill drove to Goolie's workplace to, according to Palmer, see what Goolie looked like. Soon after their second pass by Goolie's residence, Palmer

and Hill apparently accidentally ran into the back of a slow-moving white pickup truck driven by Charles Sponhaltz. Sponhaltz and Hill, who was driving his own car in which Palmer was a passenger, both exited their automobiles to examine the damage. Palmer has consistently maintained that Sponhaltz became agitated and grabbed Hill. Palmer then got out of the vehicle, forgetting that he had a loaded .22 caliber pistol in his hand, and intending to hit Sponhaltz so that he would unhand Hill. Instead, Palmer shot Sponhaltz once in the head, and once again when Sponhaltz fell to the ground. Sponhaltz died of his wounds.

In the meantime, passer-by Steven Vargo pulled his vehicle to the side of the road, got out, and confronted Palmer and Hill, asking, "What the hell . . .?" Before he could complete his question, Palmer fired a shot into Vargo's head, and as with Sponhaltz, fired another after Vargo fell, killing him. Palmer and Hill loaded Sponhaltz' body into the bed of his truck and abandoned the truck in a field not far from the scene of the murders. Vargo's vehicle and body were left on the roadway. Almost immediately thereafter, a local resident came upon the scene where Vargo's body lay in the road and stopped. Finding no sign of life, the man continued to a nearby town and reported what he'd found to the authorities. Soon after arriving on the scene, the police were alerted to the discovery of Sponhaltz' body.

Several individuals in the area recalled seeing two men they thought suspicious on May 7 and 8 driving an early-1970s model brown Dodge Charger. In addition, Palmer and Hill had been questioned by a deputy sheriff in the early morning hours of May 8th about why they were parked in a motel parking lot at that hour. After the murders, and following a conversation with the deputy, Detective Fred Thompson, an investigator with the Belmont County Sheriff's Department, began looking for a brown Dodge Charger with a license plate number 546 STC, which as it turned out,

was registered to Edward Hill.

It was not until May 15, however, that Thompson first had contact with either Palmer or Hill. Palmer had telephoned Thompson the day before and left a message for Thompson to return his call. When Thompson did so on the 15th, Palmer inquired as to whether he was a suspect in the murders. "I don't know. Are you?" was Thompson's reply. The next day, Thompson drove to Palmer's residence in Columbus and found both Palmer and Hill there. He transported them to the Columbus police station, where Palmer eventually confessed to the murders. Sponhaltz' and Vargo's wallets and personal belongings were later located in a remote area near St. Clairsville, where Palmer and Hill had indicated the items had been buried.

## PROCEDURAL HISTORY

The offenses for which Palmer was indicted are as follows:

> [Palmer] was indicted by the Belmont County Grand Jury for the aggravated murders of Sponhaltz and Vargo. For each of the[] two murders, two counts were returned: one charging that the offense was committed with prior calculation and design (R.C. 2903.01(A)), and one charging felony murder (R.C. 2903.01(B)). Each of the four counts of aggravated murder carried R.C. 2929.04(A)(5) and 2929.04(A)(7) death penalty specifications. Additionally, the aggravated murder counts pertaining to Vargo . . . both contained an R.C. 2929.04(A)(3) death penalty specification. [Palmer] was also indicted on two counts of aggravated robbery. Each count in the indictment carried a firearm specification.

*State v. Palmer*, 80 Ohio St.3d 543, 549, 687 N.E.2d 685, 693 (1997). Following a trial, Palmer was convicted on all counts and attendant specifications except for the death specification attached to Count Four of the indictment. The Ohio Supreme Court observed that the verdict forms given to the jury apparently did not include the relevant specification, but that the jury had found Palmer

guilty of aggravated murder of the same victim with the same specification in the Sixth Count of the indictment. *Id*. at 552. The case proceeded to the penalty phase, resulting in the jury's recommendation that Palmer be sentenced to death. (Joint Appendix at 298-302, 324-59.) The trial court performed an independent weighing of the aggravating circumstances and mitigating factors and a proportionality review, and ultimately adopted the jury's recommendation in its sentencing opinion. (Joint Appendix at 308-15.)

Palmer appealed to the Belmont County Court of Appeals raising twenty-four assignments of error. (Joint Appendix at 361). None of them were successful. *State v. Palmer*, No. 89-B-28, 1996 WL 495576 (Ohio App. 7th Dist. Aug. 29, 1996) (unreported). Palmer was similarly unsuccessful in the Ohio Supreme Court. *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997). A motion for reconsideration (Joint Appendix at 1919) was summarily denied (Joint Appendix at 1928), and the United States Supreme Court declined to hear Palmer's case, *Palmer v. Ohio*, 525 U.S. 837 (1998).

Meanwhile, Palmer pursued a petition for post-conviction relief in the state courts. (Joint Appendix at 1996-2097.) The trial court filed its findings of fact and conclusions of law dismissing Palmer's petition on October 31, 1996. (Joint Appendix at 2299-301.) He appealed raising five assignments of error (Joint Appendix at 2324-62), and the trial court's judgment was affirmed, *State v. Palmer*, No. 96-BA-70, 1999 WL 979228 (Ohio App. 7th Dist. Oct. 20, 1999)(unreported). The Ohio Supreme Court declined jurisdiction. *State v. Palmer*, 88 Ohio St.3d 1424, 723 N.E.2d 1113 (2000)(table).

At the same time, Palmer made an attempt to have new counsel appointed to determine whether there were any ineffective assistance of appellate counsel claims worth pursuing in an Ohio

R. App. P. 26(B) application for reopening. (Joint Appendix at 2629-33.) The court of appeals reasoned that since the request was filed after Palmer's direct appeal to the Ohio Supreme Court, the court of appeals was divested of jurisdiction over the motion, and it was dismissed on December 5, 1996. (Joint Appendix at 2653-54.)

Nearly four years later, Palmer filed an application to reopen his direct appeal in the state court of appeals, arguing that his appellate counsel were ineffective for a variety of reasons. (Joint Appendix at 2667.) The court of appeals rejected Palmer's application as untimely, finding that Palmer had failed to demonstrate good cause for his failure to file his application within the time allowed by Ohio R. App. Proc. 26(B). (Joint Appendix at 2686-87.) When Palmer appealed the appellate court's decision to the Ohio Supreme Court, that court acknowledged the appellate court's reliance on a procedural rule, but addressed the merits of Palmer's application anyway. *State v. Palmer*, 92 Ohio St.3d 241, 243, 749 N.E.2d 749 (2001). The court concluded that Palmer had "failed to raise 'a genuine issue as to whether he was deprived of the effective assistance of counsel on appeal.'" *Id.*, *quoting* Ohio R. App. Proc. 26(B)(5).

Palmer filed his petition for writ of habeas corpus in this Court on September 8, 2000.

## ANALYSIS

Since Palmer filed his petition for a writ of habeas corpus well after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (hereinafter "AEDPA"), the amendments to 28 U.S.C. § 2254 embodied in that Act are applicable to his petition. (*See* Petition, Doc. No. 15.) The standard of review under 28 U.S.C. § 2254 as amended by the AEDPA is as follows:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

A state court's decision is contrary to the Supreme Court's clearly established precedent if (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from Supreme Court cases] but unreasonably applies it to the facts of the particular state prisoner's case."  *Williams*, 529 U.S. at 407-08.  For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous; it must have been "objectively unreasonable."  *Wiggins v. Smith*, 539 U.S. 510, 511 (2003), *quoting Williams*, 529 U.S. at 409.

In *Jamison v. Collins*, 100 F. Supp. 2d 647 (2000), this Court noted that:

Principles of comity necessary to a federal system narrow a federal

-10-

court's review of a petition for a writ of habeas corpus brought by a state prisoner. *See Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court explains that "[u]nder our federal system, the federal and the state 'courts [are] equally bound to guard and protect rights secured by the [C]onstitution.'" *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (quoting *Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886)); *see Coleman*, 501 U.S. at 731, 111 S.Ct. 2546 (quoting same). Thus, to ensure the states an opportunity to protect these rights, the doctrine of procedural default requires that the state courts retain "the first opportunity to address and correct alleged violations of state prisoner's [sic] rights." *Coleman*, 501 U.S. at 731, 111 S.Ct. 2546. The doctrine of procedural default provides that, if a state court previously dismisses a state prisoner's federal claim on the grounds that the prisoner failed to comply with a state procedural rule, then a federal court ordinarily cannot consider the merits of that federal claim. *Id*. at 729-730, 111 S.Ct. 2546.

This procedural default doctrine bars federal habeas review of a state court ruling only if the following requirements have been satisfied:

(1)     the petitioner actually violated an applicable state procedural rule;

(2)     the procedural violation provides an "adequate and independent state ground" for denying the petitioner's federal constitutional claim; and

(3)     the state court actually enforced the procedural violation; that is, the highest state court to rule on the claim clearly and unambiguously relied upon the procedural violation as the reason for rejecting the claim.

*See generally Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. However, the petitioner can excuse the procedural default by demonstrating either:

(a)     that there was "cause" for the procedural default and actual prejudice by the alleged constitutional error; or

(b)     that the case falls within the category of cases considered [a] "fundamental miscarriage of justice."

See *id*. . . .; *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986);

> *Harris v. Reed*, 489 U.S. 255, 260-62, 109 S.Ct. 1038, 103 L.Ed.2d
> 308 (1989); *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590,
> 115 L.Ed.2d 706 (1991).
>
> For the cause and prejudice standard, the petitioner must provide a
> "substantial" reason that is "external" to the petitioner as the cause
> for the procedural default.  *See Murray v. Carrier*, 477 U.S. 478, 488,
> 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Rust v. Zent*, 17 F.3d 155,
> 161 (6th Cir. 1994).  In addition, the petitioner must show that the
> alleged trial errors "not merely . . . created a *possibility* of prejudice,
> but that they worked to his *actual* and substantial disadvantage,
> infecting his entire trial with errors of constitutional dimensions."
> *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.
> 2d 816 (1982).
>
> To demonstrate a "fundamental miscarriage of justice," a petitioner
> must show that the alleged constitutional violation probably resulted
> in the conviction of one who is actually innocent.  *Murray*, 477 U.S.
> at 496, 106 S.Ct. 2639.  This exception applies only in "extraordinary
> cases."  *Id*.  The standard requires a petitioner to show that he is
> "actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct.
> 851, 130 L.Ed.2d 808 (1995).  To establish a probability of
> innocence, "a petitioner must show that it is more likely than not that
> no reasonable juror would have found petitioner guilty beyond a
> reasonable doubt."  *Id*.

*Jamison*, 100 F.Supp.2d at 669-70.  These principles govern the Court's discussion of Palmer's

asserted grounds for relief.


**First Ground for Relief**

        In his first ground for relief, Palmer claims his "probable innocence" should vitiate his

convictions and death sentence.  (Petition, Doc. No. 15 at 21.)  His argument, if it can be called that,

consists of one sentence.  In addition, although Respondent advanced a procedural default defense

as well as an argument that Palmer's claim is meritless in her Return of Writ (Doc. No. 21 at 37-39)

Palmer does not even mention his first ground for relief in his traverse.  Since he presented no

evidence at his evidentiary hearing on the issue (Doc. No. 68), further enlightenment as to the precise nature of his claim is absent.

The Court is unaware of any United States Supreme Court case in which "probable innocence" was held to be a valid ground for granting habeas corpus relief, and Palmer cites none. Rather, Palmer cites *Schlup v. Delo*, 513 U.S. 298 (1995), as having articulated the law governing his undeveloped claim. (Petition, Doc. No. 15 at 21.) Schlup's claim of *actual* innocence, however, was held not to have provided a basis for habeas relief in and of itself. 513 U.S. at 315. The Supreme Court observed that "Schlup's claim of innocence is thus 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*., *quoting Herrera v. Collins*, 506 U.S. 390, 404 (1993). In Palmer's case, the *Schlup* gateway leads nowhere, as he does not claim that his alleged "probable" innocence provides him an avenue with which to pursue otherwise barred constitutional claims. Indeed, the Court finds Palmer's claim of "probable" innocence indistinguishable in substance from his second ground for relief in his petition, where he challenges the sufficiency of the evidence sustaining his convictions. Thus, even assuming the claim is not procedurally defaulted, because Palmer has not set forth a cogent claim, and because his only citation to federal law is a case that clearly does not apply to his situation, his first ground for relief should be denied.


**Second Ground for Relief**

In his second ground for relief, Palmer argues that the evidence presented at trial was insufficient to support his convictions for aggravated murder. (Petition, Doc. No. 15 at 21.) In particular, he claims that the evidence on the element of prior calculation and design was lacking,

and that no reasonable juror could have found that element to have been established beyond a reasonable doubt. (Traverse, Doc. No. 25 at 7-10.) In his traverse, Palmer attempts to expand his second ground for relief to include claims that the evidence was insufficient to sustain his convictions for aggravated robbery and felony murder (Doc. No. 25 at 11-14), that his death sentence is inappropriate given the invalidation of the two "primary charges," *id*. at 14-19; and that the indictment failed to include all the essential elements of aggravated murder, *id*. at 19-21. A traverse, however, is not the proper vehicle in which to raise new claims or sub-claims in habeas corpus. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005)(holding that because the petitioner's claim was presented in his traverse rather than in his petition, the district court did not err in declining to address it), *citing United States v. Barrett*, 178 F.3d 34, 46 n.6 (1st Cir. 1999); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Thus, the Court will address Palmer's insufficiency-of-the-evidence claim only to the extent it was presented in Palmer's petition, to wit, that the evidence fell short of proving he murdered Sponhaltz and Vargo with prior calculation and design. Respondent does not advance a procedural default defense, and instead correctly acknowledges that the claim was properly raised by Palmer on direct appeal. (Return of Writ, Doc. No. 21 at 40.)

The Ohio Supreme Court addressed Palmer's claim on its merits, as follows:

> In his thirteenth proposition of law, [Palmer] contends that the evidence was not sufficient to sustain his convictions on the four counts of aggravated murder. . . . We disagree.
>
> In this proposition, [Palmer] essentially asks us to resolve all evidentiary conflicts in his favor. However, in reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis *sic*.) *Jackson v.*

-14-

*Virginia* (1979), 443 U.S. 307, 319.  Additionally, this court "may weigh evidence only to determine whether it is of sufficient probative force to support a finding of guilt."  [*State v.*] *Tyler* [(1990)], 50 Ohio St.3d [24,] 33[, *superseded by constitutional amendment as stated in State v. Smith*, 80 Ohio St.3d 89, 103, n. 4, 684 N.E.2d 668 (1997)].  Thus, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts."  *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.

. . .

[A]ppellant contends that the evidence was insufficient to sustain his convictions on the two counts of aggravated murder charging violations of R.C. 2903.01(A).  Specifically, [A]ppellant argues that the state failed to prove that he acted with "prior calculation and design" in causing the deaths of his victims.  In *State v. Cotton* (1978), 56 Ohio St.2d 8, paragraph one of the syllabus, this court recognized that "'prior calculation and design' is a more stringent element than the 'deliberate and premeditated malice' which was required under prior law."  In *Cotton*, paragraph three of the syllabus, we held that "[w]here evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified."  However, "[i]nstantaneous deliberation is not sufficient to constitute 'prior calculation and design.'"  *Id*. at paragraph two of the syllabus.

Recently, in *State v. Taylor* (1997), 78 Ohio St.3d 15, 18-20, we reviewed the history and meaning of the phrase "prior calculation and design."  We concluded, based upon a review of Ohio case law dealing with the issue, that "it is not possible to formulate a bright-line test that emphatically distinguishes between the presence or absence of 'prior calculation and design.'"  *Id*. at 20.  In *Taylor*, Michael M. Taylor shot an acquaintance several times in the thighs and torso with a semiautomatic .9 mm pistol.  Several shots had been fired while the victim was standing, and several other shots were fired after the victim fell to the floor.  The killing occurred after a brief (two- to three-minute) argument in a bar.  In *Taylor*, we determined that the evidence was more than sufficient to support the finding of prior calculation and design.  *Id*. at 20-23.  Today, we reach a similar conclusion on the facts and circumstances of the case at bar.

-15-

*State v. Palmer*, 80 Ohio St.3d 543, 566-68, 687 N.E.2d 685 (1997)(parallel cites omitted).  The

Ohio Supreme Court then described in detail the evidence against Palmer and concluded:

> Upon a review of all the facts and circumstances surrounding
> Sponhaltz's death, we find that the evidence in this case was clearly
> sufficient for any rational trier of fact to conclude that [Palmer] had
> engaged in more than a mere "instantaneous deliberation" with
> respect to Sponhaltz's murder.  The evidence, when viewed in a light
> most favorable to the state, was more than sufficient to show that
> [Palmer] had adopted a plan to kill Sponhaltz prior to exiting Hill's
> vehicle and that, with a level of precision, [Palmer] followed through
> on his calculated decision to kill.
>
> The evidence of prior calculation and design with respect to Vargo's
> murder is even more compelling. . . .  [T]here was also evidence at
> trial which, if believed, reveals that [Palmer] admitted killing Vargo
> because [Palmer] had feared that Vargo may have witnessed the first
> shooting.
>
> . . .
>
> Although there may be not a "bright-line test" that emphatically
> distinguishes between the presence and absence of prior calculation
> and design, we find that the evidence in this case, when viewed in a
> light most favorable to the prosecution, was more than sufficient for
> any reasonable jury to conclude that [Palmer] acted with prior
> calculation and design in causing the death of each victim.  The
> events giving rise to the death of each victim may have been of a
> short duration, but the duration of the events was quite long enough
> for [Palmer] to have conceived of, adopted, and executed a calculated
> plan to kill each victim.  The credibility of the witnesses was a matter
> for the jury to determine, and this jury apparently disbelieved much
> of [Palmer]'s trial testimony concerning the events leading up to and
> culminating in the death of each victim.

*Id*. at 569-70.  Palmer's raising the issue on direct appeal and the state supreme court's addressing

it on its merits preserve the instant claim for habeas corpus review.

There is no doubt that "the Due Process Clause of the Fourteenth Amendment protects a

defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of

every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443

U.S. 307, 315 (1979), *quoting In re Winship*, 397 U.S. 358, 364 (1970). A claim that the evidence

supporting a state conviction is insufficient to permit a finding of guilt beyond a reasonable doubt

is, therefore, cognizable in federal habeas corpus. *Jackson*, 443 U.S. at 321. The state appellate

court's rejection of an insufficient evidence challenge, however, is entitled to deference by the

federal courts in such circumstances, *id*. at 323, and in its consideration of the claim, the federal

habeas court must resolve any conflicts in the evidence or inferences therefrom in favor of the

prosecution, *id*. at 326. Thus, a habeas corpus petitioner is entitled to relief "if it is found that upon

the record evidence adduced at the trial no rational trier of fact could have found proof of guilt

beyond a reasonable doubt." *Id*. at 324.

While Palmer acknowledges *Winship* as the governing law concerning his claim that his

convictions were insufficiently supported by the evidence (Traverse, Doc. No. 25 at 10), his

argument relies exclusively on Palmer's version of events surrounding the murders for factual

support. To be sure, Palmer testified that he did not intend to kill Sponhaltz when he exited Hill's

car, that he was surprised by Vargo, and that he was confused throughout the incident. (Trial Tr.

I[1] at 1060, 1094-95, 1097-1101.) Palmer also testified that "everything took about fifteen seconds,

if that." (Trial Tr. I at 1101.) What Palmer does not argue in his argument is how the Ohio Supreme

Court's decision that there was sufficient evidence to support the prior calculation and design

element is contrary to federal law as decided by the United States Supreme Court. Respecting the

Sponhaltz murder, the state court relied on evidence showing that Palmer had gotten out of Hill's

automobile with a loaded .22 caliber single-action revolver; that Sponhaltz was shot twice in the

---

[1]The guilt and penalty phase trial transcripts are not consecutively paginated, so the Court will distinguish
them by referring to the guilt phase transcript as "Trial Tr. I," and the penalty phase transcript as "Trial Tr. II."

head; that the weapon used required the hammer to be cocked and pulled back between shots; that Palmer confessed to having shot Sponhaltz one or two more times after the first shot caused Sponhaltz to fall to the ground; that Palmer had stated he knew the second and third shots, if indeed there was a third shot, would kill Sponhaltz; and that Palmer told an officer he shot Sponhaltz more than once to make sure he was dead. *State v. Palmer*, 80 Ohio St.3d 543, 568-69, 687 N.E.2d 685 (1997). As for the Vargo murder, the state court cited evidence showing that Palmer killed Vargo because he feared Vargo was a witness to the Sponhaltz murder; that although Palmer testified that Vargo surprised him by coming up behind him immediately after Sponhaltz was murdered, the evidence showed that Vargo's body was found approximately fifty feet from where Sponhaltz was murdered; that the weapon used to kill Vargo was the same one used to kill Sponhaltz, and therefore required cocking and pulling the hammer back between shots; and that Vargo was shot twice in the head, one of which was fired from point-blank range. *Id.* at 569-70.

Faced with the contradictions between Palmer's testimony and the other evidence presented at trial, the trier of fact apparently determined that Palmer's description of events was less credible than the testimony of the other witnesses. That the jury did not believe Palmer's testimony does not equate to a lack of sufficient evidence to convict him, and Palmer has demonstrated nothing more than that the jury rejected his version of events. Having failed to show that the Ohio Supreme Court's resolution of his claim was contrary to or an unreasonable application of federal law, Palmer's second ground for relief should be denied.

**Third Ground for Relief**

In his third ground for relief, Palmer articulates twenty-one different instances of alleged

-18-

prosecutorial misconduct that took place in his trial.  After setting forth the standard relevant to prosecutorial misconduct claims, the Court will address each in turn.

The Sixth Circuit has articulated the relevant standard for habeas corpus claims of prosecutorial misconduct as follows:

> On habeas review, claims of prosecutorial misconduct are reviewed deferentially.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  To be cognizable, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id*. (citation omitted).  Even if the prosecutor's conduct was improper or even "universally condemned," *id*., we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair.  Once we find that a statement is improper, four factors are considered in determining whether the impropriety is flagrant:  (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial.  *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000).  Under [the] AEDPA, this bar is heightened by the deference we give to the . . . [Ohio] Supreme Court's determination of . . . [Petitioner's] prosecutorial-misconduct claims.  *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights.  But this case is before us on a petition for a writ of habeas corpus.  So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003).  Moreover, when the prosecutorial misconduct claim alleges prejudicial impropriety in closing arguments in the mitigation phase of a capital trial, the comments must be examined within the context of the trial to determine whether they constituted prejudicial error.  *United States v. Young*, 470 U.S. 1, 11-12 (1985); *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996).  "When a prosecutor's actions are so egregious that they effectively 'foreclose the jury's consideration of . . . mitigating evidence,' the jury is unable to

make a fair, individualized determination as required by the Eighth Amendment." *DePew v. Anderson*, 311 F.3d 742, 748 (6ᵗʰ Cir. 2002), *quoting Buchanan v. Angelone*, 522 U.S. 269, 277 (1998). Thus, the Eighth Amendment is violated when a prosecutor's comments are so prejudicial as to "constrain the manner in which the jury was able to give effect" to mitigating evidence. *Buchanan*, 522 U.S. at 277.

**Prosecutorial Misconduct in the Guilt Phase**

Here, Palmer contends in sub-claim 3.1 (*see* Report and Recommendations, Doc. No. 50 at 8 (specifying numbering system for sub-claims in Palmer's petition)) that the prosecutor improperly encouraged prospective jurors to look at Palmer and say whether there was anything about him that would prevent them from considering the death penalty as one of their sentencing options. (Petition, Doc. No. 15 at 22; Traverse, Doc. No. 25 at 22-25.) Although Respondent acknowledges that Palmer raised the instant sub-claim on direct appeal as his eleventh assignment of error in the court of appeals and as his thirteenth proposition of law[2] in the Ohio Supreme Court (Return of Writ, Doc. No. 21 at 46), she also argues the claim is procedurally defaulted, *id*. at 47.[3] Her argument, however, seems to be that the default is attributable to the state post-conviction court's reliance on an independent and adequate state procedural ground for dismissing the claim. Palmer did raise the issue in his tenth claim for relief in his post-conviction petition (Joint Appendix at 2038), but the state trial court's "Findings of Fact and Conclusions of Law,"*id*. at 2299-301, are so concise that

---

[2]Respondent is mistaken. Palmer raised the issue in his eleventh proposition of law on direct appeal to the Ohio Supreme Court, not the thirteenth. (Joint Appendix at 1576-77.)

[3]It is difficult to tell from Respondent's assertion of the procedural default defense precisely which prosecutorial misconduct sub-claims are argued to have been procedurally defaulted. In an abundance of caution, the Court will assume the procedural default argument made at pages 47-48 of the Return of Writ (Doc. No. 21) is argued to apply to all of the sub-claims discussed prior to that argument, specifically sub-claims 3.1-13 and 3.18.

they are rendered imprecise.  The trial court recognized that Palmer had raised his tenth post-conviction claim on direct appeal, but does not include it in its enumeration of claims barred by the doctrine of *res judicata*, and in fact, does not mention the claim again.  *Id.* at 2300-01.  Regardless, in determining whether Palmer has procedurally defaulted the claim for habeas corpus purposes, this Court need only look at the state court's handling of the issue in the direct appeal process.  Clearly the error claimed is such that it can be resolved without resort to material outside the record, and it was thus properly raised on direct appeal.  The court of appeals addressed the issue on its merits, *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *11-12 (Ohio App. 7th Dist. Aug. 29, 1996) (unreported), and the Ohio Supreme Court declined to consider the claim, *State v. Palmer*, 80 Ohio St. 3d 543, 687 N.E.2d 685 (1997).  Thus, that Palmer raised the issue in post-conviction, and even assuming that the state post-conviction court denied the claim on *res judicata* grounds, it is nevertheless preserved for habeas review *via* his having raised it on direct appeal, and the appellate court's merits determination.

Palmer cites a footnote in *Witherspoon v. Witt*, 391 U.S. 510 (1968) as support for his contention that the prosecutor's questioning of prospective jurors on their ability to consider the death penalty as an option in Palmer's case was improper.  (Petition, Doc. No. 15 at 22.)  There, the United States Supreme Court observed that "a prospective juror cannot be expected to say in advance of trial whether he would in fact vote for the extreme penalty in the case before him." *Witherspoon*, 391 U.S. at 523 n.21.  The Court went on to state, however, that "[t]he most that can be demanded of a venireman . . . is that he be willing to consider all of the penalties provided by state law, and that he not be irrevocably committed[] before the trial has begun" to one sentencing option or another.  *Id.*  For additional support, Palmer cites *Ice v. Commonwealth*, 667 S.W.2d 671

(Ky. 1984), which itself cites *Jaggers v. Kentucky*, 403 U.S. 946 (1971). In *Jaggers*, the prospective jurors who were excused for cause had stated that "their scruples would prevent imposition of a death sentence by them 'in this case,'" and the Supreme Court reversed and remanded the case for further proceedings in light of the recently decided *Witherspoon* case. *Jaggers*, 439 S.W.2d at 585; *Jaggers*, 403 U.S. 946.

Palmer cites four specific instances in which he claims the prosecutor exceeded the bounds of professional conduct. They are as follows:

> Prosecutor:          I want you to take a look at him and then I want you to tell me if in the proper case if the facts and circumstances warrant it, would you consider recommending the death penalty as one of the options for him?

> Prospective Juror:   Yes.

(Trial Tr. I at 166-67.)

> Prosecutor:          Now, for many of us it's easier to say that we believe in the death penalty as an abstract proposition. But what we have to do in this case is talk about the death penalty regarding a certain person. That person is the defendant, Mr. Palmer. I want you to take a look at him. I want you to tell me if there is anything about him, his age or appearance or any other circumstance that would prevent you from considering the death penalty about him [sic].

> Prospective Juror:   No. Because if he is found guilty with all the evidence that comes in, you know, that's –

> Prosecutor:          Okay. And if it's appropriate.

-22-

Prospective Juror:    And if it's appropriate.

(Trial Tr. I at 185.)

Prosecutor:    Do you know that it's somewhat easier to say in the abstract that we are for or against something than to actually put it into practice? What we are talking about here is a specific case, specific trial, specific defendant. I want you to take a look at the defendant, Mr. Palmer, and tell me if there is anything about him that would prevent or inhibit you from considering death as one sentence option?

Prospective Juror:    No, there isn't.

(Trial Tr. I at 245.)

Prosecutor:    I want you to take a look at the defendant and tell me if there is anything about him, his appearance, demeanor, whatever that would prevent you from sitting in this room for two to three weeks hearing all of the evidence and if appropriate recommending that he be given capital punishment?

Prospective Juror:    No.

(Trial Tr. I at 287.)

The prosecutor here never asked for a commitment from any prospective juror that they would impose death on Palmer. Each question Palmer now challenges was phrased to reveal whether the prospective jurors could consider death as a sentencing option, and each of the prospective jurors indicated that he or she could do so. Neither *Witherspoon* nor *Jaggers* establishes as a matter of law that questioning prospective jurors about their willingness to consider death as

-23-

one sentencing option is unconstitutional. Consequently, sub-claim 3.1 of Palmer's third ground for relief should be denied.

In sub-claims 3.2, 3.3, 3.9, and 3.10, Palmer contends that the prosecutor's elicitation and use of numerous instances of "other acts" evidence was improper, and that the prosecutor encouraged the jurors to use such evidence for improper purpose. (Petition, Doc. No. 15 at 6-8.) Respondent makes the same procedural default argument here as in the previous sub-claim, acknowledging that Palmer raised his claim in the state courts on direct appeal, but also asserting that the state post-conviction courts denied the claim on independent and adequate state procedural grounds resulting in procedural default of the claim. (Return of Writ, Doc. No. 21 at 46-47.) The record reflects that Palmer raised the issues on direct appeal in his twelfth and sixteenth assignments of error and propositions of law in the court of appeals and Ohio Supreme Court, respectively. (Joint Appendix at 857-64, 883-90, 1578-84A, 1592-95.) Since each of the stated sub-claims are by nature the type that the state court could resolve without resort to evidence outside the record, direct appeal was the proper forum in which to raise them, and Palmer did so. Whatever transpired in Palmer's post-conviction proceedings respecting the sub-claims specified is irrelevant to this Court's analysis of Respondent's invocation of the procedural default defense.

The state court of appeals addressed Palmer's claim on its merits on direct appeal, concluding that since the evidence complained of did not deal with "actual crimes, wrongs, or acts committed by the defendants" and instead related Palmer's "whereabouts, intentions or state of mind" the prosecutor had not engaged in misconduct. *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *5-6, 13 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported). The Ohio Supreme Court did not address Palmer's claim. *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997). Thus, sub-

claims 3.2, 3.3, 3.9, and 3.10 in Palmer's third ground for relief are preserved for habeas corpus review.

Although Palmer's allegations are rather spare in his petition, he provides greater specificity in his traverse. There, he contends the prosecutor repeatedly and improperly referenced a real or imagined rivalry between Palmer and his ex-wife's former paramour, George Goolie. (Traverse, Doc. No. 25 at 25.) The prosecutor elicited from one witness that Palmer and Hill drove past Goolie's home and workplace while in Belmont County, and that the victims' bodies were found in close proximity to Goolie's residence. *Id*. The same witness, a law enforcement officer, testified that Palmer told him he and Hill were planning to rob Goolie. *Id*. Another witness testified that Sponhaltz was a friend of Goolie's, and that Goolie had asked Sponhaltz to keep an eye on his home whenever Sponhaltz was in the neighborhood. *Id*. at 26. Goolie testified to his having received a phone call allegedly from Palmer within a few days after the murders in which the caller said he would like to perform sexual acts on Goolie then kill him. *Id*. Palmer also contends that the prosecutor improperly brought out that Palmer and Hill had been briefly questioned by a police officer in the parking lot of a motel in which there had been previous thefts. *Id*. In addition, witness Kiss testified to having been followed by automobile to his home by Palmer and another man in a brown car, after which one of the men hollered something unintelligible out the car window and drove away. *Id*. at 27. Two gas station attendants from a station at which Palmer and Hill had stopped twice on the day of the murder testified to their suspicious behavior while at the station, and the prosecutor speculated that they were lucky they were not robbed and killed by Palmer and Hill. *Id*. After eliciting the testimony above, the prosecutor encouraged the jurors to infer Palmer's guilt from that and other evidence, which, according to Palmer, invited them to make an inference on an

-25-

inference.  *Id*. at 28.

Ohio's Tenth District Court of Appeals explained the law of the state respecting "other acts" evidence:

> Evid. R. 404(B) provides as follows:
>
>> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
>
> As a general rule, evidence of previous or subsequent criminal acts, wholly independent of the criminal offense for which a defendant is on trial is inadmissible.  Exceptions to this general rule are codified in R.C. 2945.59 which provides as follows:
>
>> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
>
> Therefore, as the court held in *State v. Thompson* (1981), 66 Ohio St.2d 496, 422 N.E.2d 855, other acts testimony is relevant and admissible under the "scheme, plan, or system" exception of R.C. 2945.59, where those acts form part of the immediate background of the crime charged and are "inextricably related" to the acts alleged in the indictment such that the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime.  *Id*. at 498, 422 N.E.2d 855, citing *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 415 N.E.2d 261.

*State v. Hodge*, No. 02AP-1358, 2003 WL 22351122 at *4 (Ohio App. 10th Dist. Oct. 16, 2003)

(unreported). Since Palmer's defense rested entirely on the element of intent to rob and murder, the

prosecutor was entitled to bring out evidence of Palmer's activities prior to his encounter with

Sponhaltz and Vargo to show Palmer's intent, scheme, or plan to commit the offenses. Thus, the

evidence that Palmer had traveled to Belmont County to rob and/or do harm to George Goolie, his

and Hill's following Kiss to his home, and the two filling station attendants' observations of

Palmer's suspicious conduct at the station was all admissible under Ohio law as they tend to provide

evidence of Palmer and Hill's intent to engage in a robbery or robberies, and explained the sequence

of events leading up to the robberies and murders of Sponhaltz and Vargo. Palmer does not argue

that the state evidentiary rule allowing admission of such evidence is unconstitutional.

Even if the prosecutor's conduct had violated a state evidentiary rule, however, the question

would remain unanswered as to whether it also constituted a violation of Palmer's federal

constitutional rights. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991), *citing Marshall v.

Lonberger*, 459 U.S. 422, 438 n.6 (1983)("[T]he Due Process Clause does not permit the federal

courts to engage in a finely tuned review of the wisdom of state evidentiary rules"). A federal court

may grant habeas relief only if the prosecutor's conduct rendered the entire trial "fundamentally

unfair." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005), *quoting Bowling v. Parker*, 344 F.3d 487,

512 (6th Cir. 2003).

Palmer's claims do not establish the fundamental unfairness of his trial. The testimony

concerning any grudge Palmer may or may not have had against Goolie because of Goolie's

relationship with Cammy Palmer was relevant because it tended to corroborate Palmer's statement

to police that he intended to rob Goolie. Even if that were not so, the testimony relating to the

grudge was not so damaging to Palmer's case that it tainted the entire trial or resulted in fundamental unfairness. In addition, the testimony that Sponhaltz had been asked by Goolie to keep an eye on Goolie's residence was relevant since, if believed, it could tend to establish a connection between Sponhaltz' doing so and his encounter with Palmer and Hill. Palmer's contention that a police officer's testimony that he had stopped to question Palmer and Hill in an area where thefts had previously occurred necessarily implicated Palmer and Hill in the thefts is farfetched. The officer never stated that he suspected Palmer and Hill of committing the prior thefts, and merely mentioned the prior thefts as background which explained his heightened interest in the parked car with two occupants inside in the wee hours of the morning. (Trial Tr. I at 933.) Admission of the officer's explanation for his interest in the car and its occupants was therefore contextual, and was not introduced to show that Palmer and Hill were somehow involved in the prior thefts in the area.

The Court agrees with Palmer that Goolie's testimony regarding a threatening phone call allegedly made by Palmer to Goolie within a few days after the murders should have been excluded, but observes that the trial court came to the same realization and instructed the jurors as follows:

> Last week when Mr. Goolie testified there was an objection as to his testimony in regards to a phone call where there was an alleged threat made. The court overruled the objection on the basis that it went to the weight. There has been no testimony to compare that testimony with. In other words, no testimony to determine the weight. Therefore, the court on its own motion is instructing you that that part of Mr. Goolie's testimony pertaining to the phone call where an alleged threat was made by the defendant will be stricken from the record, and you are told to totally disregard that part of the testimony.

(Trial Tr. I at 1054.) Courts generally "presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, . . . and a strong likelihood that the effect of

-28-

the evidence would be 'devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987), *citing Richardson v. Marsh*, 481 U.S. 200, 208 (1987), *Bruton v. United States*, 391 U.S. 123, 136 (1968). Nothing in Palmer's argument, or the record, suggests that there existed an "overwhelming probability" that his jury would be unable to follow the court's instruction to disregard Goolie's threatening phone call testimony, or that there was a strong likelihood that the effect of the testimony would be devastating to Palmer's case.

Palmer also claims the prosecutor improperly presented the testimony of Larry Kiss, Richard Kolb, and Thomas Critser. Kiss testified that a brown car, which he identified as Hill's Dodge Charger, followed him an unstated distance as he drove to his home on the day of the murders. (Trial Tr. I at 938-43.) Kiss' testimony was some evidence that Palmer and Hill's *modus operandi* in the murder and robbery of Sponhaltz could have been that they followed Sponhaltz for the purpose of perpetrating their crimes upon him. Moreover, "background" evidence that is spatially or temporally connected with the charged offense is not "other acts" evidence. *United States v. Wesley*, 417 F.3d 612, 621-22 (6th Cir. 2005), *citing United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). The evidence offered by Kiss placed Hill's automobile in the vicinity of the murders and within a couple of hours of their commission.

Likewise, the Midei service station attendants who testified that Palmer and Hill visited their establishment twice on the day of the murders and that the pair acted in such a way so as to cause both witnesses to take note of the license plate on the car also established that Palmer and Hill were driving Hill's automobile in the area of and near the time of Sponhaltz' and Vargo's murders. The testimony of the two attendants, specifically that Palmer and Hill were acting in such a way that both attendants independently concluded they should make note of Hill's license plate, was further evidence of Palmer's scheme or plan to commit a robbery. In addition, while the only element materially at issue in Palmer's

trial was that of intent, the burden to prove each and every element of the offenses charged remained with the state, *Estelle v. McGuire*, 502 U.S. 62, 69 (1991)(noting that "the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense"), so introduction of the challenged evidence was relevant to show that Palmer was physically in the vicinity when the murders were committed.

One of the station attendants commented that it seemed to him as if Palmer and Hill were "casing" the station. (Trial Tr. I at 948.) The comment was offered in response to the prosecutor's question as to how a copy of Palmer and Hill's receipt from the station came to be in the possession of the police. *Id*. While objection made by the defense arguably should have been sustained rather than overruled, *id*., the error, if any, is attributable to the trial court, not to any misconduct on the prosecutor's part. Moreover, the comment was not so damaging to Palmer's defense that it compromised the fundamental fairness of his trial, and even assuming the prosecutor deliberately elicited the comment, it was neither pervasive nor flagrant, so it did not constitute misconduct.

Palmer also claims the prosecutor capitalized on his own misconduct by urging the jury to infer that Palmer was "bent on robbing and killing" from the inference, again encouraged by the prosecutor, that Palmer and Hill intended to rob and/or kill Kiss, Goolie, or the Midei station attendants. (Traverse, Doc. No. 25 at 27-8.) Palmer detects the prosecutor's exploitation of his own misconduct from the following statement made by the prosecutor in closing argument:

> No matter what any one [sic] else tells you, you alone have the power to put those facts together and draw the necessary and reasonable inferences. No one can tell you that you can or cannot draw a certain inference if you feel beyond any reasonable doubt, if you know in your heart that that is the necessary and probable inference to draw from all of the evidence. It is clear that all the reasonable inferences that any rational person can draw point to no other conclusion than

-30-

> that the defendant is guilty as charged on all counts and all specifications.

(Trial Tr. I at 1159-60.)  Nothing in the quoted passage suggests to the jurors that they could or should infer from inferences.  In addition, the jury was accurately and adequately instructed on inference by the trial court:

> Evidence may be direct or circumstantial.  Direct evidence is the testimony given by a witness who has seen or heard the facts to which he testifies.  Circumstantial evidence if proof of facts or circumstances by direct evidence from which you may reasonably infer other related or connected facts which naturally and logically follow according to the common experience of mankind.
>
> To infer or to make an inference is to reach a reasonable conclusion of fact which you may make but are not required to make from other facts which you find have been established by direct evidence.  Whether an inference is made rests entirely with you.

(Trial Tr. I at 1231.)  Furthermore, the jury was instructed that the argument of counsel was not evidence.  *Id* at 1231-32.

The state appellate court determined that the evidence complained of was not "other acts" evidence that should have been excluded.  *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *6-7 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported).  Palmer has failed to demonstrate that the state court's resolution of the issues presented in sub-claims 3.2, 3.3. 3.9, and 3.10 was contrary to clearly established federal law, and is therefore not entitled to habeas corpus relief on those sub-claims.

In prosecutorial misconduct sub-claim 3.4, Palmer contends the prosecutor argued to the jury that it could infer from Palmer's activities prior to the killings and his dislike of Goolie that Palmer intended to kill anyone he came into contact with prior to the murders of Sponhaltz and Vargo.

(Petition, Doc. No. 15 at 22.)  Respondent argues the issue was procedurally defaulted by the state

courts' disposition of it in Palmer's post-conviction proceedings.  (Return of Writ, Doc. No. 21 at

46-47.)  This, too, is a claim that was not cognizable in post-conviction, and which was properly

raised on direct appeal.  (Joint Appendix at 859.)  The court of appeals addressed the merits of

Palmer's claim, *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *12 (Ohio App. 7th Dist. Aug.

29, 1996)(unreported); the Ohio Supreme Court did not address it at all, *State v. Palmer*, 80 Ohio

St.3d 543, 687 N.E.2d 685 (1997).  Thus, the claim is preserved for habeas review.

Palmer provides no citation to the trial record where the offending comments might be found,

in either his petition or his traverse.  Nevertheless, the record does reveal the following comments

that could conceivably be the ones to which Palmer now objects:

> The evidence has shown we believe that on May 7, 1989 the
> defendant formed an intent to do something unlawful or criminal
> to George Goolie.  He told Detective McMenemy in Columbus that he
> was going to rob George.  In fact, when he drove past George's
> trailer the first time and saw that George's red pick-up truck wasn't
> there, he went down to the Wheeling Pitt dock where he knew
> George worked to look for him.
>
> A very reasonable inference you can draw from this fact is that the
> defendant was going to do more than just burglarize George's house.
>
> The evidence shows that his intention was to do something harmful
> to George.
>
> . . .
>
> It doesn't take a great leap of logic to figure from that fact and from
> the fact he passed up an opportunity to burglarize the home while
> nobody was there and went looking for George with a loaded .22.  It
> doesn't take any tremendous leap of logic to figure out what his real

intnetions [sic] were.

(Trial Tr. I at 1148-49.)

> They left Columbus with a loaded .22 looking for George Goolie, and they shot two other people instead. Their plan and design was murder and robbery.

(Trial Tr. I at 1196.)

> We have direct evidence of what he did that day, and we have circumstantial evidence of everything that is going on in his mind. There is absolutely nothing improper about making those important inferences. We know pretty much what he did, and from that you good people are permitted to infer what was going on in his mind at the time he did it. All of this we have been over and over what was their original purpose regarding Goolie and a loaded gun circling Goolie's. The length of time for the acts themselves, the length of time required to do this two-step process with the gun in a total panic, taking the precious moments to rob these two guys of their pitiful belongings, more than enough evidence to infer purpose and intent, prior calculation and design.

(Trial Tr. I at 1199-1201.) While the prosecutor's comments do encourage the jury to conclude that

Palmer intended harm to Goolie, they do not go so far as to urge the jury to convict Palmer for the

aggravated murders of Sponhaltz and Vargo on that basis. Instead, the prosecutor made repeated

arguments that Palmer's intent to kill the victims is evident in his possession of a loaded .22 caliber

weapon (Trial Tr. I at 1147, 1151), his exiting Hill's automobile with the loaded weapon in his hand

(Trial Tr. I at 1151, 1194, 1198, 1202), his holding the weapon by the handle rather than the barrel

when approaching Sponhaltz (Trial Tr. I at 1198), the fact that both victims suffered not one but two

gunshots to the head rather than anywhere else on their bodies (Trial Tr. I at 1147, 1148, 1152, 1157,

1158, 1194, 1195, 1199, 1202), that the weapon had to be cocked between shots in order to fire more

than once (Trial Tr. I at 1152, 1194, 1195, 1200), and that the distance Palmer had to travel between

the victims precluded accident (Trial Tr. I at 1157). Thus, the prosecutors did not urge the jurors

to infer from Palmer's dislike of Goolie that Palmer wanted to kill anyone he came into contact with

on the day of the murders, as Palmer contends. Consequently, Palmer's prosecutorial misconduct

sub-claim 3.4 should be denied.

In sub-claim 3.5, Palmer claims the prosecutor misstated the law by arguing that prior

calculation and design is capable of being manifested in ten to fifteen seconds. (Petition, Doc. No.

15 at 22.) The complained-of segment of the prosecutor's closing argument is as follows:

> Although it's true that we have to show the defendant had a specific
> intent to kill this man, and it's true we have to show that he had some
> degree of forethought that he thought about it for some period of
> time, there is no legally required period of time. The defendant
> testified the whole thing happened in 10 to 16 seconds. If in those 10
> to 15 seconds, if that's true – and we submit the evidence will show
> that that length of time is virtually impossible – but even if that were
> true, it is legally possible for the defendant to have in his mind
> sufficient prior calculation and design in that period of time.

(Trial Tr. I at 1153-54.) Respondent advances a procedural default defense based on the state

courts' resolution of Palmer's claim in post-conviction (Return of Writ, Doc. No. 21 at 46-47), but

the issue presented is one that is not cognizable in post-conviction as the error, if there is one, is

apparent on the record. Rather, Palmer's sub-claim states an issue that would properly be raised on

direct appeal, and Palmer so raised it. (Joint Appendix at 859-60.) The court of appeals held that

all but plain error had been waived since no contemporaneous objection was made at trial. *State v.*

*Palmer*, No. 89-B-28, 1996 WL 495576 at *12 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported).

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling

them to the attention of the trial court at a time when the error could have been avoided or corrected,

-34-

set forth in *State v. Glaros,* 170 Ohio St. 471, 166 N.E.2d 379 (1960) paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E.2d 932 (1998) — is an adequate and independent state ground. *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000), *citing Engle v. Isaac*, 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). The rule applied in Palmer's case, and was relied upon by the state court of appeals as noted above. Consequently, Palmer's prosecutorial misconduct sub-claim 3.5 is procedurally defaulted. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Palmer makes no argument that there exists cause for his default, or that prejudice flowed therefrom. Because Palmer has not preserved sub-claim 3.5 for habeas review, it should be denied.

Even if the claim were preserved, however, it would be unsuccessful. The Ohio Supreme Court has explained the meaning of "prior calculation and design" as follows:

> Under former R.C. 2901.01, "murder in the first degree," aside from murder by poison or felony-murder, required proof of "deliberate and premeditated malice." *See State v. Stewart* (1964), 176 Ohio St. 156, 27 O.O.2d 42, 198 N.E.2d 439. Effective January 1, 1974, the General Assembly reclassified first-degree murder as "aggravated murder" and substituted a requirement of "prior calculation and design" to replace the more traditional "deliberate and premeditated malice." (134 Ohio Laws, Part II, 1866, 1900, Am.Sub.H.B. No. 511.) *See State v. Jenkins* (1976), 48 Ohio App.2d 99, 2 O.O.3d 73, 355 N.E.2d 825. R.C. 2903.01(A), amended in 1981, retained the term "prior calculation and design" as a necessary element of aggravated murder. (139 Ohio Laws, Part I, 1, 3.)
>
> According to the 1973 Technical Committee Comment to Am.Sub.H.B. No. 511, a Legislative Service Commission summary, R.C. 2903.01 "restates the former crime of premeditated murder so as to embody the classic concept of the planned, cold-blooded killing while discarding the notion that only an instant's prior deliberation is necessary. By judicial interpretation of the former Ohio law,

murder could be premeditated even though the fatal plan was conceived and executed on the spur of the moment." *See, e.g., State v. Stewart*[, *supra*]; *State v. Schaffer* (1960), 113 Ohio App. 125, 17 O.O.2d 114, 177 NB.E.2d 534.

According to the committee comment, "the phrase 'prior calculation and design' [was employed] to indicate studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim. Neither the degree of care nor the length of time * * * are critical factors in themselves, but they must amount to more than momentary deliberation."

. . .

[I]t is not possible to formulate a bright-line test that emphatically distinguishes between the presence or absence of "prior calculation and design." Instead, each case turns on the particular facts and evidence presented at trial.

*State v. Taylor*, 78 Ohio St.3d 15, 18-20, 676 N.E.2d 82 (1997). The jury was instructed in accordance with the Ohio Supreme Court's explanation. (Trial Tr. I at 1208.) Although the court of appeals stated the prosecutor had misstated the law with regard to prior calculation and design by suggesting ten to fifteen seconds was time enough in which to formulate prior calculation and design, *State v. Palmer*, No, 89-B-28, 1996 WL 495576 at *12 (Ohio App. 7th Dist. Aug. 29, 1996) (unreported), the law clearly states there is no minimum time for such formulation. The state court went on to note that the jury had been accurately instructed on prior calculation and design by the trial court, and found any error harmless. *Id*. Palmer has not demonstrated that the state court's resolution of the instant sub-claim was contrary to or an unreasonable application of federal law, thus prosecutorial misconduct sub-claim 3.5, if it had been preserved, would not have succeeded.

In sub-claim 3.6, Palmer argues that the prosecutor misstated the law respecting the timing of the intent to rob for purposes of the felony murder charges and specifications. (Petition, Doc. No. 15 at 22.) Again, Respondent claims the issue is procedurally defaulted because the state court

relied on an independent and adequate state procedural rule in rejecting the claim in Palmer's post-conviction proceedings. (Return of Writ, Doc. No. 21 at 46-47.) Like several of Palmer's previous sub-claims, however, this one, too, was properly brought on direct appeal as a claim apparent on the record. (Joint Appendix at 860-60A.) The court of appeals did not address the claim, *State v. Palmer*, No. 89-B-28, 1996 WL 495576 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported), nor did the Ohio Supreme Court, *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997). The Sixth Circuit has stated that "[w]here the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an 'adjudication on the merits.' Thus, a federal habeas court reviews such unaddressed claims *de novo*." *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005), *citing McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Sub-claim 3.6 is therefore amenable to *de novo* review here.

Palmer provides no citation to any state or federal case to support his claim that the prosecutor's statement about relative timing of the formation of the intent to rob and the intent to murder constituted prosecutorial misconduct. (Petition, Doc. No. 15 at 22; Traverse, Doc. No. 25 at 29-30.) Although Respondent states she addressed the merits of the current sub-claim in her discussion of sub-claim 3.5, she did not. (Return of Writ, Doc. No. 21 at 52-54.) Thus, the Court is left with Palmer's bald assertion that the prosecutor deprived Palmer of a fundamentally fair trial when he incorrectly stated the law concerning the sequence of the robberies of the victims and their murders as they relate to the formation of intent.

A review of Palmer's prosecutorial misconduct sub-claim 3.3, *supra*, shows that there was some evidence presented from which the trier of fact could reasonably have concluded that Palmer possessed the intent to rob prior to his coming into contact with Sponhaltz and Vargo. Repetition

-37-

of that evidence is not necessary here.  In addition, the jury was fully and adequately instructed on the element of intent as it applies to the sequence of events surrounding the murders:

> Under count three of the indictment, the death of Charles W. Sponhaltz must have occurred as part of acts leading up to or occurring during or immediately subsequent to the aggravated robbery and the death must be directly associated with the aggravated robbery or flight immediately after the aggravated robbery or attempted aggravated robbery.

(Trial Tr. I at 1217.)  The same instruction was given respecting the murder and robbery of Steven Vargo.  (Trial Tr. I at 1227.)  Thus, even assuming some merit in Palmer's contention – and the Court is not suggesting it has any merit – any error from the prosecutor's comment was harmless in light of the jury instructions and the evidence tending to show that Palmer possessed the intent to commit a robbery prior to the murders.  For the reasons stated, Palmer's prosecutorial misconduct sub-claim 3.6 should be denied.

In sub-claim 3.7, Palmer argues the prosecutor improperly argued that a finding of guilt on the felony murder charges equated to a finding of guilt on the felony specifications.  (Petition, Doc. No. 15 at 22-23.)  Respondent contends the sub-claim is procedurally defaulted based on the state courts' resolution of it in Palmer's post-conviction proceedings.  (Return of Writ, Doc. No. 21 at 46-47.) Because the claim was properly preserved in Palmer's direct appeal (Joint Appendix at 860A-61), *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *12 (Ohio App. 7th Dist. Aug 29, 1996)(unreported); *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997), however, it is amenable to habeas corpus review.

Palmer does not provide a record reference to aid the Court in locating the source of his contention that the prosecutor engaged in misconduct.  Nor does he make any argument respecting the instant sub-claim in his traverse.  The state court held that "[w]ith regards to the allegation that a finding of guilt upon the felony murder charges meant a finding of guilt on the felony specifications, we find

-38-

that the prosecuting attorney was only comparing the two concepts as a means to simplify what had to be proven." *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *12 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported). The Ohio Supreme Court did not address the issue. *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997). Palmer has cited no law at all, much less clearly established federal law as determined by the United States Supreme Court, *see* 28 U.S.C. § 2254(d)(1), to demonstrate that the state court's resolution of his claim was constitutionally flawed. Consequently, prosecutorial misconduct sub-claim 3.7 should be denied.

In sub-claim 3.8, Palmer contends that the prosecutor improperly told the jurors that it was their duty to convict Palmer. (Petition, Doc. No. 15 at 23.) Although Respondent argues the claim is procedurally defaulted (Return of Writ, Doc. No. 21 at 46-47), the Court finds it was properly raised in Palmer's direct appeal process (Joint Appendix at 862), and that the state court of appeals addressed the issue on its merits, *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *13 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported). The claim is therefore properly preserved for habeas corpus review.

Respondent correctly points out that Palmer has provided no record reference for the complained-of comments by the prosecutor. (Return of Writ, Doc. No. 21 at 54.) In his brief to the state court of appeals, however, Palmer cited the following excerpt in his assignment of error claiming prosecutorial misconduct:

> The other kind is unnatural or manmade confusion, such as the kind of confusion you get when you murder somebody. For this kind of confusion that is deliberately created by the actions of a defendant, that person must be held responsible. Mr. Palmer must be held legally accountable by you for the confusion that he himself created that day. It is your duty to see that he is.

> [Tr. 1200]. [sic]

-39-

(Joint Appendix at 862.)  These comments patently do not implore the jurors to convict Palmer out of a sense of societal duty, as Palmer contends.  Rather, the prosecutor seized upon Palmer's explanation for the murders as "mass confusion" and argued that since Palmer created the confusion, that he should be held responsible.  The state court found that "the prosecuting attorney did not improperly suggest to the jury [that they should] convict [Palmer] regardless of the evidence."  *State v. Palmer*, 89-B-28, 1996 WL 495576 at *13 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported).  The court stated that the prosecutor merely suggested that if the jurors believed Palmer was guilty after hearing all the evidence presented, that it was their duty to convict him.  *Id*.  Palmer does not argue or cite law to show that the state court's decision was contrary to clearly established law of the Supreme Court, and has consequently not fulfilled his burden for habeas corpus relief.  Accordingly, prosecutorial misconduct sub-claim 3.8 should be denied.

In sub-claim 3.11, Palmer contends that by repeatedly asking one witness whether there was any evidence that Palmer did not intend to rob the victims, the prosecutor improperly shifted the burden of persuasion to Palmer.  (Petition, Doc. No. 15 at 23.)  Respondent acknowledges that Palmer raised the issue on direct appeal, but asserts that the claim is nonetheless procedurally defaulted because the post-conviction relief court relied on an independent and adequate state procedural rule in dismissing the claim.  (Return of Writ, Doc. No. 21 at 46-47.)  Although it is true that Palmer raised the issue on direct appeal (Joint Appendix at 864), the court of appeals did not address it, *State v. Palmer*, 89-B-28, 1996 WL 495576 at *12-13 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported), nor did the Ohio Supreme Court, *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997).  Consequently, the claim is amenable to *de novo* review in habeas corpus.  *Howard v. Bouchard*, 405 F.3d, 459, 467 (6th Cir. 2005), *citing McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).

The testimony that Palmer challenges was that of Belmont County Sheriff's Department

investigator Fred Thompson on redirect examination by the prosecutor and transpired as follows:

| | |
|---|---|
| Prosecutor: | Fred, do you have any evidence that the defendant did not intend to rob Charles Sponhaltz before he was shot? |
| Defense: | Oh, I object, Your Honor.  Leading. |
| Court: | No.  Overruled |
| Thompson: | Repeat the question, please. |
| (Whereupon, reporter read back record as requested.) | |
| Thompson: | That he did not? |
| Prosecutor: | That he did not intend. |
| Thompson: | No evidence. |
| Prosecutor: | Do you have any evidence that he did not intend to rob Steven Vargo before he was shot? |
| Defense: | Same objection. |
| Court: | Overruled. |
| Thompson: | No evidence. |

(Trial Tr. I at 853-854.)  Defense counsel objected to the testimony, but on grounds that it was leading, not that it improperly shifted the burden of persuasion to Palmer.  In fact, in a discussion off the record just following the testimony above, the issue was the form of the prosecutor's question, specifically, that it asked if there was evidence of a negative, and the court instructed the prosecutor not to ask such questions.  *Id*. at 855.  Even so, the jury was instructed that Palmer was imbued with a presumption of innocence that continued until a verdict was rendered, and that it was the prosecution's burden to prove beyond a reasonable doubt each and every element of the offenses charged.  (Trial Tr. I at 1205.)  Prejudice, if any, from the testimony elicited by the prosecutor was

thereby ameliorated to the point of insignificance.  Accordingly, Palmer's prosecutorial misconduct sub-claim 3.11 should be denied.

In sub-claim 3.12, Palmer argues that the prosecutor failed to disclose that George Goolie had pled guilty to assault against Hill in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Petition, Doc. No. 15 at 23.)  Respondent correctly notes that Palmer raised that issue as his thirty-eighth claim for relief in his petition for post-conviction relief.  (Return of Writ, Doc. No. 21 at 46; Joint Appendix at 2090.)  The trial court rejected the claim reasoning that the claim could have been raised on direct appeal and that the issue was one that could have been determined from the record. (Joint Appendix at 2300.)  The trial court's application of the doctrine of *res judicata* to Palmer's *Brady* claim was plainly wrong since, by its very nature, a *Brady* claim asserts that relevant evidence was withheld by the prosecution and not available at trial.  In his appeal from the trial court's post-conviction judgment, Palmer argued as much in his first assignment of error.  (Joint Appendix at 2338-9.)  There, Palmer asserted that his thirty-eighth claim for relief in post-conviction could have been supported by evidence outside the record if defense counsel had been given an opportunity to conduct discovery.  *Id*. at 2339.  But a post-conviction petitioner in Ohio is not entitled to discovery, and must produce some evidence from outside the record to support his claim in post-conviction, something Palmer evidently did not do.  *State v. Palmer*, No. 96-BA-70, 1999 WL 979228 at *11 (Ohio App. 7th Dist. Oct. 20, 1999)(unreported); *see* Ohio Rev. Code § 2953.21; *State v. Pankey*, 68 Ohio St.2d 58, 59, 428 N.E. 2d 413 (1981); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E. 2d 819 (1980), syllabus.  The state court of appeals rejected Palmer's claim on that basis.  *State v. Palmer*, No. 96-BA-70, 1999 WL 979228 at *11 (Ohio App. 7th Dist. Oct. 20, 1999)(unreported), and the Ohio Supreme Court declined to review the court of appeals' judgment, *State v. Palmer*, 88 Ohio

St.3d 1424, 723 N.E.2d 1113 (2000).

Ohio's procedural rule that claims advanced in post-conviction proceedings must be supported by cogent documentation from outside the record has been "routinely and regularly applied in the Ohio courts." *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002), *citing State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905, 910 (1999); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819, 823 (1980). *See also, Sowell v. Bradshaw*, 372 F.3d 821, 829-30 (6th Cir. 2004); *State v. Kapper*, 5 Ohio St.3d 36, 448 N.E.2d 823 (1983). Palmer's *Brady* claim, therefore, is procedurally defaulted, not because it was barred by the doctrine of *res judicata*, as the court of appeals erroneously held, but because he failed to submit documentation to support his claim in post-conviction. Even if that were not the case, however, this Court would have no basis upon which to grant habeas corpus relief, since Palmer has failed to demonstrate how the state courts' resolution of his claim might be contrary to or an unreasonable application of federal law. It is also noted that Palmer has not directed the Court's attention to any documents to support his claim that Goolie pled guilty to assault against Hill and that the prosecutor withheld such evidence, nor does he contest Respondent's procedural default defense. For the reasons stated, prosecutorial misconduct sub-claim 3.12 should be denied.

In sub-claim 3.13, his last relating to the guilt phase of his trial, Palmer claims the prosecutor improperly invoked God and the Bible in closing argument. (Petition, Doc. No. 15 at 23.) Respondent contends the claim is procedurally defaulted because, when Palmer raised it in his post-conviction proceedings, the state court found it to be barred on *res judicata* grounds. (Return of Writ, Doc. No. 21 at 47.)

Palmer does not contest Respondent's procedural default argument, nor does he provide a

-43-

citation as to where the offending comments appear in the transcript. Further, Palmer cites no law, federal or otherwise, that was violated when the prosecutor uttered the religious references. The sum total of Palmer's "argument" for his sub-claim is this: "The prosecution interjected improper and inflammatory arguments concerning the Bible and God." (Petition, Doc. No. 15 at 23.) As such, Palmer has failed to make out even a skeletal claim for habeas corpus purposes. Moreover, Respondent is correct in arguing that Palmer raised the claim in post-conviction rather than direct appeal, and that the post-conviction court found the claim barred on *res judicata* grounds. Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175, 226 N.E. 2d 104 (1967)(paragraph seven of the syllabus), is an independent and adequate state procedural ground. *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Coleman v. Mitchell,* 268 F.3d 417, 427 (6th Cir. 2001), *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994), and *Riggins v. McMackin,* 935 F. 2d 790 (6th Cir. 1991); *Buell v. Mitchell*, 274 F. 3d 337, 349 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Van Hook v. Anderson*, 127 F.Supp.2d 899, 916-17 (S.D. Ohio 2001). Also, the Ohio courts have consistently enforced the rule. *State v. Cole*, 2 Ohio St. 3d 112, 114, 443 N.E. 2d 169 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16, 18, 423 N.E. 2d 1068 (1981). Thus, Palmer's prosecutorial misconduct sub-claim 3.13 is procedurally defaulted and should be denied.

**Prosecutorial Misconduct in the Penalty Phase**

In sub-claim 3.14, Palmer contends that the prosecutor improperly argued that all of the aggravating circumstances found beyond a reasonable doubt in the guilt phase of the trial should be weighed against the mitigating factors in determining the appropriate penalty for Palmer. (Petition, Doc. No. 15 at 23; Traverse, Doc. No. 25 at 33-34.) Respondent alleges that although Palmer raised

the issue in his direct appeal, it was nevertheless procedurally defaulted by the state courts' reliance on an independent and adequate state procedural rule in dismissing the claim in Palmer's post-conviction proceedings.  (Return of Writ, Doc. No. 21 at 48.)  Palmer does not address Respondent's procedural default argument in his traverse.  (Doc. No. 25 at 33-34.)

Respondent correctly acknowledges that Palmer raised the instant issue in his sixteenth assignment of error on direct appeal to the Court of Appeals for Belmont County.  (Return of Writ, Doc. No. 21 at 48; Joint Appendix at 884-85.)  Specifically, Palmer argued that in his opening statement, the prosecutor misled the jury about how many aggravating circumstances Palmer was found to have been guilty of in the guilt phase.  (Joint Appendix at 884.)  The court of appeals concluded that the jury instructions corrected any ambiguity respecting which of the six counts of the indictment carried which aggravating circumstances, and that any error was harmless.  *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *15 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported). The Ohio Supreme Court did not address the issue on direct appeal.  *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997).

The issue presented by Palmer in the instant sub-claim is one that the state courts could, and did, resolve without resort to evidence outside the record.  As such, it was an issue that had to have been, and was, brought on direct appeal rather than in post-conviction.  Consequently, whatever may have transpired in Palmer's post-conviction proceedings respecting the claim is of no import. Palmer raised the issue appropriately on direct appeal and the state court of appeals addressed it on its merits.  It is therefore preserved for habeas corpus review.

Palmer's specific argument is that the prosecutor inflated the aggravating circumstances by stating there were three "in this case" of which Palmer had been found guilty in the guilt phase.

(Traverse, Doc. No. 25 at 33-34.)  The prosecutor's statement is only true as it applies to the counts

of aggravated murder relating to Vargo (Joint Appendix at 2104, 2108), and does not accurately state

aggravating circumstances attached to the Sponhaltz aggravated murder counts (Joint Appendix at

2098, 2102).   Although Palmer does not mention it, the prosecutor also noted that the counts

accompanied by three aggravating circumstances were those concerning Vargo's murder.   The

prosecutor's comments, including the ones not acknowledged by Palmer in his argument, are as

follows:

> May it please the court, counsel for the defense, ladies and
> gentlemen, [sic] by your verdicts on last Friday, you have already
> found and we have already established beyond a reasonable doubt
> that the defendant is guilty of three aggravating circumstances in this
> case.  The first being the mass murder, aggravating circumstance the
> killing of two or more persons.  The second being, the felony murder,
> the killing of these persons during the commission of aggravated
> robbery.  And the third being, regarding Mr. Vargo, killing to escape
> detection for the killing of Mr. Sponhaltz.

(Trial Tr. II at 14-5.)  While the prosecutor's remarks could certainly be interpreted as Palmer urges,

that is by no means the only or perhaps even the most reasonable interpretation.  It is clear from the

comments that the third aggravating circumstance applied only to the charges relating to Vargo.  In

addition, defense counsel pointedly informed the jury of that in closing arguments (Trial Tr. II at

149), and the jury was instructed at length on the aggravating circumstances attached to each count

in both the guilt and penalty phases of the trial (Trial Tr. I at 1206-41; Trial Tr. II at 159-61).

Finally, Palmer does not explain how the state court's findings that the error, if any, from the

prosecutor's statement was cured by the jury instructions, and alternatively that the error was

harmless, is contrary to or an unreasonable application of federal law.  Rather, he simply states that

the prosecutor's remarks "clearly violated Ohio law."  (Traverse, Doc. No. 25 at 34.)  A violation

of state law, however, does not entitle a federal habeas corpus petitioner to relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Accordingly, Palmer's prosecutorial misconduct sub-claim 3.14 should be denied.

In sub-claims 3.15 and 3.16, Palmer contends the prosecutor improperly placed on Palmer the burden of showing that the mitigating factors in his case outweighed the aggravating circumstances. (Petition, Doc. No. 15 at 23.) In addition, he argues the prosecutor erred in stating that mitigation is not synonymous with an explanation for Palmer's crimes. *Id*. Respondent notes that the fifteenth sub-claim was raised as error in Palmer's sixteenth assignment of error on direct appeal, but neglects to acknowledge that the sixteenth sub-claim was as well. (Return of Writ, Doc. No. 21 at 48; Joint Appendix at 885-88.) Respondent goes on to argue that the state court's resolution of the issues in post-conviction resulted in their procedural default. (Return of Writ, Doc. No. 21 at 48.) As noted above, however, claims apparent on the record, like these, are properly brought on direct appeal. Palmer did so, and does not suffer procedural default as a consequence of his post-conviction counsels' inappropriately raising the claims in those proceedings as well.

The state court of appeals held that the jury instructions on the burden of proof respecting the relative weight of the aggravating circumstances and mitigating factors "cleared any ambiguity" as to whom the burden belonged, and that any error from the prosecutor's comment about mitigation versus explanation was harmless. *State v. Palmer*, 89-B-28, 1996 WL 495576 at *15 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported). The Ohio Supreme Court declined to address the issue. *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997). Palmer's prosecutorial misconduct sub-claims 3.15 and 3.16 are therefore preserved for habeas corpus purposes.

The comments Palmer complains of are as follows:

-47-

Remember first of all that the word "mitigation" is not synonymous with the word "explanation". [sic] So that the defendant will give a great deal of evidence explaining the whys and the wherefores of his bad behavior.

You and you alone must decide whether those explanations fall in the category of mitigation or lessening of the penalty he should receive. Because even if some mitigation factor or other is considered established it must still outweigh, that is be more important than, the aggravating circumstances you have already found.

(Trial Tr. II at 15-16.)

The defendant's mother, aunts, close friends and relatives are going to get on the stand and say nice things about him and hope you are going to say he is a really great guy and hope – he killed two people just because – he took two innocent lives, two people who will never see the light of another day just because he had an unhappy childhood. Somehow or another that's a mitigating factor that should outweigh and wipe out all of this.

So I think after soberly reflecting on the instructions the judge is going to give you and after you have done your job you will see clearly there is nothing at all in this so called mitigation evidence that outweighs the aggravating circumstances of what the defendant has done.

And I want to remind you again, even if you find that a mitigating circumstance has been established, let's say you find – you say twenty-four is youth. It's not middle age. It's not old age. You said twenty-four is youth. You are not required to find that it outweighs this or is not outweighed by this. The mere finding of the existence of a mitigating factor does not mean that it necessarily overreaches these aggravating circumstances.

So if you find that he is twenty-four and if you find that he was lucky enough to escape having a criminal record and if you find that he had an unhappy childhood and he is borderline personality; which if you listen carefully to the doctor's testimony kind of means that he is, you know – has a bad temper and he is mean and antisocial and that he was drinking that day. Even if you accept all those factors as proved, they don't outweigh what he did on May 8th.

(Trial Tr. II at 145-46.)

> As I said, you got [sic] to remember that mitigation is not the same
> as explanation.
>
> . . .
>
> I'm not sure what we are supposed to do with Doctor Jackson's
> testimony.  It doesn't outweigh anything.

(Trial Tr. II at 154.)[4]  Palmer makes no argument that the prosecutor's remarks distinguishing

mitigation evidence from an explanation for the murders was contrary to federal law as articulated

by the United States Supreme Court, nor does he cite any law that so holds.  Consequently, those

comments provide no basis for granting habeas corpus relief and will not be considered further.

Unquestionably, however, the prosecutor's other comments misstated the mechanics of the

weighing process in capital sentencing in Ohio.  *See* Ohio Rev. Code § 2929.03(D)(1), (2), (3).  *See*

*also*, *Hill v. Mitchell*, 400 F.3d 308, 326 (6th Cir. 2005)(characterizing prosecutor's argument that

the mitigating factors did not outweigh the aggravating circumstances as a misstatement of the

applicable law); *Hamblin v. Mitchell*, 354 F.3d 482, 493 (6th Cir. 2003)(observing that "Ohio is a

'weighing' state, which means that the aggravating circumstances must outweigh the mitigating

factors in order to impose the death penalty").  Palmer does not provide the court with a citation to

any United States Supreme Court case, however, that stands for the proposition that the prosecutor's

comments constitute a violation of Palmer's federal constitutional rights.  Instead, he relies on Ohio

cases for support.  (Traverse, Doc. No. 25 at 35-36.)  He has consequently failed to make his case

for habeas corpus relief.

Even if that were not so, Palmer's sub-claim would fail.  At the outset of the penalty phase

---

[4]The Court notes that the prosecutor also suggested the mitigation evidence presented by the defense
"might in some way be an explanation or an effort at an explanation but [it] . . . is not mitigation."  (Trial Tr. II at
155.)

of Palmer's trial, the trial court informed the jurors that "the State of Ohio has the burden of proving beyond a reasonable doubt that the aggravating circumstances which the defendant has been found guilty of committing outweigh any mitigating factors that might be presented to you in this hearing before you can return a recommendation of death." (Trial Tr. II at 12.) Soon afterward, Palmer's defense counsel stated their intention to "show[] through the presentation of witnesses, family, friends and a Doctor Jackson that those circumstances are not so aggravating that you could find beyond a reasonable doubt that the mitigating circumstances are overborn [sic] by them," correctly, though perhaps awkwardly, stating the weighing process. (Trial Tr. II at 13.) Defense counsel made a similar comment later, *id*. at 14, and in closing argument correctly stated that the jurors must find that the aggravating circumstances outweigh the mitigating factors before a death verdict could be returned (Trial Tr. II at 142, 150-51, 152-3). The prosecutor also correctly explained the weighing process in his opening statement, saying that the jury's task in the penalty phase was to consider whether the aggravating circumstances outweigh the mitigating factors, *id*. at 15, and did so again in closing argument, *id*. at 156-57. Finally, the trial court correctly and repeatedly instructed the jury on the weighing process. (Trial Tr. II at 161, 162.)

Given that defense counsel, the trial court, and, at times, the prosecutor, accurately explained the weighing process to the jury, and since both the court of appeals and the Ohio Supreme Court conducted an independent weighing and concluded that the aggravating circumstances outweighed the mitigating factors, *State v. Palmer*, 89-B-28, 1996 WL 495576 at *19-21 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported); *State v. Palmer*, 80 Ohio St.3d 543, 575-77, 687 N.E.2d 685 (1997), Palmer would not be able to demonstrate that the state courts' rejection of the instant sub-claim was contrary to or an unreasonable application of federal law. *See Clemons v. Mississippi*, 494 U.S. 738,

750 (1990)(finding "nothing in appellate weighing or reweighing of the aggravating and mitigating circumstances that is at odds with contemporary standards of fairness or that is inherently unreliable and likely to result in arbitrary imposition of the death sentence").

For the foregoing reasons, prosecutorial misconduct sub-claims 3.15 and 3.16 should be denied.

In sub-claim 3.17, Palmer contends the prosecutor improperly suggested to the jurors that their rejection of the defense of voluntary intoxication in the guilt phase of Palmer's trial also eliminated intoxication as a mitigating factor in the penalty phase. (Petition, Doc. No. 15 at 23-24.) Respondent argues the claim was procedurally defaulted in the state post-conviction proceedings (Return of Writ, Doc. No. 21 at 48), but the record shows that Palmer raised the issue on direct appeal (Joint Appendix at 888) and that the state court of appeals addressed it on the merits, *State v. Palmer*, 89-B-28, 1996 WL 495576 at *15 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported). Though Palmer raised it before the Ohio Supreme Court on direct appeal as well, the court never addressed the issue. *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997). Accordingly, the claim is preserved for habeas corpus review.

In his closing argument, the prosecutor made the following comments to which Palmer now objects:

> Now, under the catchall [mitigating factor], . . . I guess we had some testimony that [Palmer] had an alcohol and drug problem; although, he never once in any of this testified that he was intoxicated during the commission of the offense [sic]. You have rejected this defense once already in your first proceedings when the alcohol or the intoxication defense charge was given to you. And, of course, he knew enough about what he was doing to that he could plan way before he took that first drink of Southern Comfort, he had planned what he was going to do.

-51-

(Trial Tr. II at 144.)  Once again, Palmer cites only Ohio law in support of his argument.  (Traverse, Doc. No. 25 at 37.)   While the prosecutor's statement might have violated Ohio law, that alone would not demonstrate that habeas corpus relief is warranted since a violation of state law does not necessarily amount to an infringement on a petitioner's federal constitutional rights.  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  Furthermore, Palmer does not explain how the state court's merits ruling on his claim was contrary to or an unreasonable application of federal law.  Thus, he has failed to make out a claim for habeas corpus relief, and his prosecutorial misconduct sub-claim 3.17 should be denied on that basis.

Even if that were not the case, however, his claim would still fail.  At the time of Palmer's offenses and trial, Ohio law allowed that "evidence of voluntary intoxication 'may be considered [in the guilt phase of a capital trial to determine] whether an act was done intentionally or with deliberation and premeditation.'" *Hicks v. Collins*, 384 F.3d 204, 214 (6th Cir. 2004), *quoting Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000), *quoting Ohio v. Fox,* 68 Ohio St.2d 53, 55, 428 N.E. 2d 410, 412 (1981); *see also State v. Wolons,* 44 Ohio St.3d 64, 68, 541 N.E.2d 443, 446 (1989).[5]  Only intoxication so severe that the defendant is "mentally unable to intend anything," however, is sufficient to negate the element of specific intent.  *State v. Otte*, 74 Ohio St.3d 555, 564, 660 N.E. 2d 711, 720 (1996).  Evidence of substance abuse and intoxication at the time of the offense is also admissible for mitigation purposes under a "catch-all" mitigating factor set forth in Ohio Rev. Code § 2929.04(B)(7).  Ohio courts, however, have generally given little or no weight to intoxication as a mitigating factor.  *See Mitts v.Bagley*, No. 1:03CV1131, 2005 WL 2416929 at *14-15 (N.D. Ohio, Sept. 29, 2005)(slip copy)(discussing Ohio courts' reluctance to give weight to intoxication as a

---

[5]As of October 27, 2000, however, "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense."  Ohio Rev. Code § 2901.21(C).

mitigating factor, and citing Ohio Supreme Court cases in support). Thus, with or without the prosecutor's comment, the scant evidence of intoxication produced in Palmer's trial is unlikely to have persuaded any of the jurors that the death sentence was too harsh a penalty for Palmer, especially since the case involved a double murder and the evidence against Palmer was particularly strong. Accordingly, Palmer's prosecutorial misconduct sub-claim 3.17 should be denied.[6]

In sub-claim 3.18, Palmer contends the prosecutor improperly invoked God and the Bible during closing arguments in the penalty phase of his trial. (Petition, Doc. No. 15 at 24.) Respondent argues the claim was procedurally defaulted by the state post-conviction court's reliance on the doctrine of *res judicata* in dismissing the claim. (Return of Writ, Doc. No. 21 at 47.) Palmer did not raise the issue on direct appeal, but it was, as Respondent represents, raised in Palmer's twenty-third ground for relief in his state petition for post-conviction relief, (Joint Appendix at 2081-82), and the state court did reject it on *res judicata* grounds, *id*. at 2300. Ohio's doctrine of *res judicata* is an independent and adequate state procedural rule. *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994); *Van Hook v. Anderson*, 127 F.Supp.2d 899, 916-17 (S.D. Ohio 2001); *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967)(paragraph seven of the syllabus). Since the sub-claim now asserted did not rely on evidence

---

[6]It is noted that the court of appeals denied Palmer's sub-claim because it found that the prosecuting attorney was merely stating that "he did not believe intoxication should be considered as a mitigating factor." *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *15 (Ohio App. 7th Dist. Aug. 28, 1996). Palmer does not attack the state court's resolution of that claim on grounds that it is improper for a prosecutor to state his opinion of the evidence, an arguably valid ground upon which to challenge the state court's determination in federal habeas corpus, and for which there is some support in federal law. *See Bates v. Bell*, 402 F.3d 635, 644 (6th Cir. 2005); *United States v. Galloway*, 316 F.3d 624, 632-33 (6th Cir. 2003); *Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000); *United States v. Krebs*, 788 F.2d 1166, 1176 (6th Cir. 1986); *United States v. Daniels*, 528 F.2d 705, 709 (6th Cir. 1976). *See generally, United States v. Young*, 470 U.S. 1 (1985); *Berger v. United States*, 295 U.S. 78 (1935). Because it was not raised, however, this Court has no occasion to address that question.

outside the record for its resolution, the state procedural rule involving the doctrine of *res judicata* was applicable to Palmer's claim in post-conviction, and it was enforced against Palmer by the state court. (Joint Appendix at 2300.) The sub-claim here is consequently procedurally defaulted and is not amenable to habeas corpus review. Prosecutorial misconduct sub-claim 3.18 should be denied.

In sub claims 3.19 and 3.20, Palmer argues that the prosecutor improperly introduced evidence that Palmer had failed to pay child support and had sexually abused his children. (Petition, Doc. No. 15 at 24.) In his traverse, Palmer attempts to expand the instant sub-claim to include other allegedly incompetent testimony or evidence relating to Palmer's attempts to kill his ex-wife, blow up her car, burn down the marital home, run his ex-mother-in-law's car off the road, engage in sex with his ex-mother-in-law, beat his ex-wife, and his threats to kill his daughter. (Traverse, Doc. No. 25 at 32.) Respondent replies that Palmer raised the claimed error (minus the allegations advanced in his traverse) on direct appeal, and that the court of appeals rejected it for lack of a contemporaneous objection to the evidence at trial, but maintains that the claim was procedurally defaulted in post-conviction rather than on direct appeal. (Return of Writ, Doc. No. 21 at 48.) Respondent does not cite to a state court opinion, much less a page within the opinion, on which the state court relied upon the contemporaneous objection rule in denying Palmer's claim, and after repeated readings, the Court finds no mention of the allegations that Palmer had failed to pay his child support and had abused his children in his assignment of error devoted to prosecutorial misconduct in the *penalty* phase of his trial. (Joint Appendix at 883-90.)

Palmer raised an assignment of error on direct appeal to the court of appeals claiming the prosecutor improperly elicited "other acts" evidence in the *guilt* phase of his trial. (Joint Appendix

at 857-64.)  The court of appeals found no merit in Palmer's claim that "other acts" evidence was erroneously admitted in the *guilt* phase of the trial.  *State v. Palmer*, 89-B-28, 1996 WL 495576 at *5-6 (Ohio App. 7th Dist. Aug. 28, 1996) (unreported).  In his claim relating to prosecutorial misconduct in the *penalty* phase of his trial, which he advanced in his sixteenth assignment of error on direct appeal to the court of appeals, Palmer does not mention the allegations of non-support or sexual abuse of his children, either explicitly or by reference to another assignment of error.  (Joint Appendix at 883-90.)

Palmer's sub-claim here is that the prosecutor engaged in misconduct by presenting evidence in the *penalty* phase of his trial suggesting that Palmer did not pay child support for his children, and that he sexually abused them.  (Petition, Doc. No. 15 at 24.)  Although his argument is unclear, he seems to contend either that because the non-support evidence was before the jury in the guilt phase, and all of the guilt-phase evidence was admitted in the penalty phase, the non-support evidence also tainted the penalty phase, or that non-support evidence was admitted into evidence *via* Cammy Palmer's divorce affidavit.  (Traverse, Doc. No. 25 at 32-33.)  Although Palmer does not cite to it, he himself testified on cross-examination that he had not paid any child support since his divorce. (Trial Tr. at 70.)  The Court recommends that because sub-claims 3.19 and 3.20, as the Court understands them, were not raised in the state courts as errors occurring in the *penalty* phase of the trial, the issues therein have been procedurally defaulted and are not amenable to habeas corpus review.

Even so, the sub-claims are meritless.  In the penalty phase of trial, Palmer presented evidence of his kind and considerate nature, and that he was upset by his loss of his children in his divorce (Trial Tr. II at 20, 24, 44, 46, 47, 67).  Thus, the prosecutor's confrontation of the witnesses

who testified to Palmer's kindness and truthfulness, and his questioning of Palmer as to his involvement with the children after the divorce, including the child support issue, was fair rebuttal to the evidence Palmer presented. In addition, it is unlikely that news of Palmer's failure to pay child support was the proverbial "straw that broke the camel's back" with respect to jurors' sentencing determinations, especially in light of the substantial evidence against him respecting the aggravating circumstances of the murders. Cammy Palmer also vacillated and equivocated about the truth of her divorce allegation that Palmer had molested the children, and testified that the allegation may have been suggested to her daughter by her family members. (Trial Tr. II at 108-9, 113, 121, 123.) Because they are procedurally defaulted, and because the complained-of evidence was unlikely to have impacted the outcome of Palmer's sentencing hearing given the strong evidence against him, prosecutorial misconduct sub-claims 3.19 and 3.20 should be denied.

In his last prosecutorial misconduct sub-claim, 3.21, Palmer contends the prosecutor used a visual aid during closing arguments that misstated the law respecting the process of weighing the aggravating circumstances against the mitigating factors. (Petition, Doc. No. 15 at 24.) Respondent advances a procedural default argument, claiming the instant issue was never presented to the state courts on direct appeal or in Palmer's post-conviction proceedings. (Return of Writ, Doc. No. 21 at 49.) Palmer does not address Respondent's argument, and in fact makes no argument on the issue at all, procedural or substantive. (Petition, Doc. No. 15 at 24; Traverse, Doc. No. 25 at 32-38.) The Court, however, observes that Palmer did indeed raise the issue in his post-conviction proceedings as his thirty-second claim for relief (Joint Appendix at 2079), and the trial court held the claim barred by the doctrine of *res judicata* (Joint Appendix at 2300). On appeal from the trial court's decision, the court of appeals stated that Palmer had not asserted prejudice from the allegedly

inappropriate visual aid; that "the state removed the contested comment from the display"; that the issue could have been raised on direct appeal; and that Palmer made no assertion about the size of the display, even though his trial counsel indicated they were going to take measurements. *State v. Palmer*, No. 96-BA-70, 1999 WL 979228 at *9-10 (Ohio App. 7th Dist. Oct. 20, 1999)(unreported). The Ohio Supreme Court declined review. *State v. Palmer*, 88 Ohio St.3d 1424, 723 N.E.2d 1113 (2000). Palmer has utterly failed to argue, much less demonstrate, how the state courts' resolution of the issue presented was contrary to or an unreasonable application of federal law as set forth by the United States Supreme Court. Thus, even if it is assumed that the claim is preserved for habeas review, Palmer's bare allegation is an insufficient ground upon which to grant relief. Accordingly, prosecutorial misconduct sub-claim 3.21 should be denied.

The Court has evaluated each of Palmer's claims of prosecutorial misconduct and found none of them warrant habeas corpus relief. They fare no better when accumulated. Palmer has not demonstrated that the prosecutors' conduct at trial so prejudiced him that the entire proceeding was rendered fundamentally unfair. Consequently, it is recommended that Palmer's third ground for relief be denied.

**Fourth Ground for Relief**

In his fourth ground for relief, Palmer contends the trial court erred in rejecting his request for an instruction on the lesser included offense of involuntary manslaughter. (Petition, Doc. No. 15 at 24.) Respondent does not argue the claim is procedurally defaulted, but instead that it is meritless. (Return of Writ, Doc. No. 21 at 61-65.)

Palmer presented the issue in his fifth assignment of error and fifth proposition of law on

direct appeal before the court of appeals and Ohio Supreme Court, respectively.  (Joint Appendix

at 828-33, 1554-58.)  Both courts rejected Palmer's claim on its merits, with the Ohio Supreme

Court providing more detailed analysis of the issue:

> Here, under any reasonable view of the evidence, the killing of both Sponhaltz and Vargo was purposeful.  [Palmer] fired two shots into the left side of Sponhaltz's head.  He shot Vargo in the right side and in the left side of the head, with one of the shots having been fired from point-blank range.
>
> At trial, [Palmer] claimed that he did not know he was carrying the pistol until it accidentally discharged when [Palmer] attempted to strike Sponhaltz with a hand or fist.  [Palmer] also claimed that he killed Sponhaltz and Vargo in the "panic" and "mass confusion" that followed the first "accidental" shot.  However, the placement of the shots fired into Sponhaltz's head, and the paths of the projectiles through Sponhaltz's brain, clearly show the absence of any accident or mistake.  Moreover, the alleged accidental shot and [Palmer]'s alleged intoxication do not even begin to explain the second shot fired into Sponhaltz's head, which was fired with unmitigated accuracy.  [Palmer]'s claims of panic and confusion are thoroughly refuted by the location and placement of the shots fired into Sponhaltz's head, and the location and placement of the shots fired into the left and into the right side of Vargo's head.  Both victims were killed execution-style [sic] with a single-action revolver.  The evidence concerning the type of weapon used by [Palmer] demonstrated that the hammer mechanism had to be pulled back and cocked, and the trigger then pulled, for each round fired.  [Palmer]'s claims of accident, panic, and confusion are wholly inconsistent with the evidence.  Additionally, contrary to [Palmer]'s assertions, no reasonable juror could have believed that these killings were the accidental byproduct of an aggravated robbery gone wrong.  The number and location of the victims' wounds would lead any reasonable trier of fact to conclude that [Palmer] acted purposefully in causing the death of each victim.
>
> We find that the evidence adduced at trial could not have reasonably supported both an acquittal on aggravated murder and a conviction on the charge of involuntary manslaughter.  Therefore, the trial court correctly rejected [Palmer]'s request for an involuntary manslaughter instruction.

*State v. Palmer*, 80 Ohio St.3d 543, 562-63, 687 N.E.2d 685 (1997). Palmer has not persuaded this Court that the Ohio Supreme Court's decision was an unreasonable application of federal law.

In *Beck v. Alabama*, 447 U.S. 625 (1980), the United States Supreme Court held that it is unconstitutional to impose the death penalty when a "jury [is] not permitted to consider a verdict of guilt of a lesser included non-capital offense . . . when the evidence would have supported such a verdict." *Id*. at 627. Deprived of an opportunity to consider the lesser included offense where the evidence could support such a conviction, the Court reasoned, jurors may be more likely to convict the defendant of the more serious offense out of a belief that the defendant "did *something* wrong." *Id*. at 632. The Court held that a criminal defendant is entitled to "'an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.'" *Id*. at 635, *quoting Keeble v. United States*, 412 U.S. 205, 208 (1973). Where the evidence supports the claim that the defendant intended to kill the victim and affirmatively negates any claim that he did not intend to do so, however, no error flows from a trial court's denial of a requested instruction on a lesser included offense. *Hopper v. Evans*, 456 U.S. 605, 613 (1982).

Here, like the petitioner in *Campbell v. Coyle*, 260 F.3d 531 (6th Cir. 2001), Palmer "bases his assertion that he was entitled to a lesser-included offense instruction solely on his evaluation of the evidence." *Id*. at 541. In Campbell's case, the Ohio Supreme Court concluded that the fact that there were four deadly wounds inflicted on the victim precluded a rational juror from finding the lack of a purposeful killing. *State v. Campbell*, 69 Ohio St.3d 38, 48, 630 N.E.2d 339, 350 (1994). On habeas corpus review of the state court's decision, the Sixth Circuit noted that to find in Campbell's favor would require the federal court to "hold that the Ohio Supreme Court's conclusion

-59-

– that the nature and number of the wounds compelled a reasonable jury to find that Campbell possessed the intent to kill -- was objectively unreasonable." *Campbell*, 260 F.3d at 544; *Williams v. Taylor*, 529 U.S. 362, 409 (2000); 28 U.S.C. § 2254(d). The court instead explained that Campbell had not demonstrated that to be the case, and that he simply urged a different interpretation of the evidence. *Campbell*, 260 F.3d at 544.

Like Campbell, Palmer relies upon his own version of events to support his claim here, rather than explaining how the Ohio Supreme Court's decision on the claim was objectively unreasonable. Simply urging the Court to adopt Palmer's interpretation of the evidence does not suffice to show that habeas corpus relief is warranted. Palmer testified that he exited Hill's automobile with a loaded and cocked firearm in his hand. (Trial Tr. I at 1120.) Each of Palmer's victims were shot twice in the head, arguably the most lethal location on the body in which to shoot a person. By his own testimony, Palmer admits that he shot Sponhaltz the second time after Hill shouted "kill him, kill him!" (Trial Tr. I at 1096.) Vargo's body was found approximately fifty feet from where Sponhaltz was murdered (Trial Tr. I at 797), which contradicts Palmer's testimony that he came face-to-face with Vargo as soon as he turned away from Sponhaltz after shooting him. (Trial Tr. I at 1097, 1123.) Palmer cocked and pulled back the hammer of the weapon between each of the four shots he fired. (Trial Tr. I at 1113.) Such evidence, especially coming from Palmer's own mouth, negates his claim that he did not intend to kill Sponhaltz and Vargo. As such, the Ohio Supreme Court's conclusion that the trial court did not err in denying Palmer's request for an instruction on the lesser included offense of involuntary manslaughter was not objectively unreasonable. Accordingly, Palmer's fourth ground for relief should be denied.

**Fifth Ground for Relief**

In his fifth ground for relief, Palmer contends that the trial court erred in denying his request for an instruction on the defense of self defense. (Petition, Doc. No. 15 at 24.) Respondent does not advance a procedural default argument. (Return of Writ, Doc. No. 21 at 65.) Palmer argues in his traverse that the trial court's failure to give the requested instruction was contrary to or an unreasonable application of federal law as announced by the United States Supreme Court in *Beck v. Alabama*, 447 U.S. 625 (1980). As Respondent correctly observes, however, *Beck* involved the issue just discussed, to wit, instructions on lesser included offenses, not the defense of self defense. (Return of Writ, Doc. No. 21 at 67-68.) Indeed, the term "self defense" appears nowhere in the report of the case. Thus, Palmer has pointed to no federal law applicable to his claim with which the state courts' resolution of his claim conflicts. The Ohio Supreme Court found Palmer's claim "nothing short of ridiculous," *State v. Palmer*, 80 Ohio St.3d 543, 564, 687 N.E.2d 685 (1997), and Palmer has not persuaded this Court that the Ohio Supreme Court was inaccurate in their description of his claim, much less objectively unreasonable. Thus, even if Palmer had cited some federal law on point, his claim would be unavailing. Consequently, Palmer's fifth ground for relief should be denied.

**Sixth Ground for Relief**

In his sixth ground for relief, Palmer argues that the trial court's failure to instruct the jury that a specific finding that Palmer intended to kill Sponhaltz and Vargo was necessary for conviction on the aggravated murder counts. (Petition, Doc. No. 15 at 25.) Respondent does not advance a procedural default defense, and instead contends the claim is meritless. (Return of Writ, Doc. No.

21 at 68-70.)

At trial, the jury was instructed, in relevant part, as follows:

> Purpose to cause the death of another is an essential element of the crime of aggravated murder.
>
> A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to cause the death of [the victims].
>
> A person acts purposely when the gist of the offense is a prohibition against conduct of a certain nature regardless of what the offender intends to accomplish thereby, if it is his specific intention to engage in conduct of that nature.
>
> Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct.
>
> The purpose with which a person brings about a result is determined from the manner in which it is done, the weapon used, and all other facts and circumstances in evidence.
>
> No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another.

(Trial Tr. at 1207, 1215, 1220-21; *see also* 1227.)

On direct appeal, the court of appeals rejected Palmer's claim that the jury instruction deprived him of a fair trial on the ground that defense counsel had not made a contemporaneous objection to the instructions at trial, and the court found no plain error flowing therefrom. *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *9 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported). Palmer raised the claim on direct appeal to the Ohio Supreme Court as well (Joint Appendix at 1562-64), but the court did not address the issue. *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685

(1997). The highest state court to address Palmer's claim rejected it on an adequate and independent state ground, *see Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982); *see also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000), so a convincing argument could be made that Palmer has procedurally defaulted his sixth ground for relief. Since Respondent does not do so, however, the Court turns to the merits of Palmer's claim.

Palmer argues that the jury instruction informing the jurors that the purpose element could be satisfied "when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, if it is his specific intention to engage in conduct of that nature" allowed the jury to convict him even without finding it was his specific intent to kill Sponhaltz and Vargo. (Traverse, Doc. No. 25 at 47-48.) "Errors in jury instructions do not rise to the level of a constitutional violation unless the habeas petitioner can establish that the 'instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Buell v. Mitchell*, 274 F.3d 337, 366 (6th Cir. 2001), *quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Scott v. Mitchell*, 209 F.3d 854, 872 (6th Cir. 2000). Viewed as a whole, the trial court's instructions on the element of purpose adequately conveyed to the jurors that to sign a guilty verdict on the aggravated murder counts, they must first have found that Palmer had the specific intention of causing the deaths of Sponhaltz and Vargo. Palmer ignores the instructions included in the excerpt above which plainly state that the specific intention to cause death is an essential element of aggravated murder. Thus, he has not demonstrated that the offending sentence violated his right to due process of law, when it is viewed in the context of the entire jury charge, or as the law requires, the entire trial. Moreover, in light of the strong evidence that Palmer intended the deaths

of Sponhaltz and Vargo (see Fourth Ground for Relief, *supra*), it is unlikely that the jury's verdict would have been different without the allegedly improper sentence in the jury instructions. Palmer's sixth ground for relief should be denied.

**Seventh Ground for Relief**

In his seventh ground for relief, Palmer contends that the trial court failed to properly instruct the jury on inferences. (Petition, Doc. No. 15 at 25.) Respondent does not advance a procedural default defense, and acknowledges that Palmer raised the claim in his direct appeal to the court of appeals and the Ohio Supreme Court. (Return of Writ, Doc. No. 21 at 70.) Both of those courts, however, found that Palmer had not objected to the instruction on inference at trial and that no plain error resulted from the instruction as given. *State v. Palmer*, 89-B-28, 1996 WL 495576 at *5 (Ohio App. 7th Dist. Aug 29, 1996)(unreported); *State v. Palmer*, 80 Ohio St.3d 543, 561, 687 N.E.2d 685 (1997). Palmer's claim, then is likely procedurally defaulted; but since Respondent does not assert the defense, the Court will address the merits of the claim.

Palmer argues that the trial court's instruction on inferences was contrary to or an unreasonable application of *Enmund v. Florida*, 458 U.S. 782 (1982), a case that dealt with accomplice liability and eligibility for the death sentence. Palmer's case is distinguishable because Palmer was the principal offender in Sponhaltz' and Vargo's murders, and there was ample evidence of his intent to cause their deaths. As noted above, *see* Second Ground for Relief, *supra*, Palmer got out of Hill's automobile with a loaded firearm and shot both of his victims twice in the head, cocking the weapon and pulling back the hammer between each shot. The victims were murdered approximately fifty feet from one another, a distance Palmer would necessarily have had to travel

-64-

to accomplish both killings, negating Palmer's asserted surprise at finding Vargo behind him after killing Sponhaltz. Therefore, without considering the inferences Palmer now claims contributed to his convictions, the evidence of his intent to murder Sponhaltz and Vargo withstands challenge. *See* Second Ground for Relief, *supra*. Thus, assuming without holding that Palmer's jury should have been instructed on inferences in the manner he contends, any error from not doing so is harmless, and is not contrary to or an unreasonable application of the law articulated in *Enmund*, a case that is in addition, factually dissimilar to Palmer's. For the reasons stated, Palmer's seventh ground for relief should be denied.

**Eighth Ground for Relief**

In his eighth ground for relief, Palmer argues that the trial court's erroneous admission of prejudicial "other acts" evidence deprived him of his right to due process of law and violated the Eighth Amendment's prohibition against cruel and unusual punishment. (Petition, Doc. No. 15 at 25-26.) Respondent asserts that the claim was raised in Palmer's third assignment of error and third proposition of law on direct appeal before the court of appeals and the state supreme court, respectively. (Return of Writ, Doc. No. 21 at 75.) The court of appeals addressed the issue raised on its merits, reasoning that the events described did not constitute "other acts" evidence prohibited by Ohio R. Evid. 404(B), but was instead evidence that established Palmer's "whereabouts, intentions, or state of mind" during the time preceding the murders. *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *6 (Ohio App. 7th Dist. Aug 29, 1996)(unreported). The Ohio Supreme Court did not address Palmer's claim. *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997).

Although Palmer argues the contrary, this Court finds that the jury in Palmer's case was

unlikely to have been swayed to convict him because of the alleged "other acts" evidence.  *See*

*United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002).  Evidence of Palmer's intent to rob and

murder Sponhaltz and Vargo was substantial and has been summarized in Palmer's second and third

grounds for relief, *supra*.  Moreover, Palmer has not demonstrated how the state court's decision

respecting the current claim was contrary to or an unreasonable application of federal law as set

forth by the United States Supreme Court.  He does not argue that the court of appeals' findings

were "objectively unreasonable" as required to warrant habeas corpus relief.  *See Wiggins v. Smith*,

539 U.S. 510, 511 (2003); *Williams v. Taylor*, 529 U.S. 362, 409 (2000).  Thus, even if this Court

were to agree with Palmer that the state court's decision was incorrect or erroneous, he would not

be entitled to habeas relief.  *Wiggins*,  539 U.S. at 511; *Williams*, 529 U.S. at 409.  For these reasons,

and for the reasons stated in the third ground for relief, *supra*, rejecting Palmer's claim that the

prosecutor engaged in misconduct by eliciting the alleged "other acts" evidence, Palmer's eighth

ground for relief should be denied.


**Ninth Ground for Relief**

In his ninth ground for relief, Palmer contends that the trial court's failure to give a limiting

instruction on the use of the "other acts" evidence violated his rights to due process and to be free

from cruel and unusual punishment.  (Petition, Doc. No. 15 at 26.)  Respondent states the claim was

raised as his eighth assignment of error and eighth proposition of law on direct appeal before the

court of appeals and state supreme court, respectively.  (Return of Writ, Doc. No. 21 at 76.)  She

does not advance the defense of procedural default.  *Id*.

Again, Respondent seems to ignore the state court's reliance on an independent and adequate

state procedural ground in denying the relevant assignment of error on direct appeal. Simply raising a claim of error in the state courts is not, in and of itself, sufficient to preserve the issue for habeas review. Instead, the state courts must have either addressed the issue on its merits, or declined to address it at all for the claim to be amenable to habeas corpus review. Where the state court relies upon an independent and adequate state procedural rule in disposing of the claim, the issue is procedurally defaulted and not reviewable in habeas corpus, unless the petitioner can show cause for the default and prejudice flowing therefrom. *Jamison v. Collins*, 100 F.Supp2d 647, 669-70 (S.D. Ohio 2000).

Here, the state court of appeals observed, and Palmer conceded, that defense counsel had not objected to the trial court's failure to give the limiting instruction on "other acts" evidence, and the state court evaluated Palmer's claim for plain error. *State v. Palmer*, 89-B-28, 1996 WL 495576 at *10 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported). Ohio's rule requiring a contemporaneous objection to trial errors is an independent and adequate state procedural rule. *Scott v. Mitchell*, 209 F.3d 854-867-68 (6th Cir. 2000), *citing Engle v. Isaac*, 456 U.S. 107, 124-29 (1982). In addition, a state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003). Nevertheless, although Palmer procedurally defaulted the present claim, Respondent does not so argue, which leaves this Court free to address the merits of the claim.

"A limiting instruction will minimize to some degree the prejudicial nature of evidence of other criminal acts; it is not, however, a sure-fire panacea for the prejudice resulting from the

needless admission of such evidence." *United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002), *citing United States v. Garcia-Rosa*, 876 F.2d 209, 222 (1st Cir. 1989), *vacated in part sub. nom. Rivera-Feliciano v. United States*, 498 U.S. 954 (1990). Whether a jury was substantially swayed by the improperly admitted evidence depends in large part on whether properly admitted evidence against the defendant was overwhelming. *Haywood*, 280 F.3d at 724. If there is little likelihood that the jury was "substantially swayed," by the alleged "other acts" evidence, then the fact that no limiting instruction was given by the trial court loses potency.

Here, evidence of Palmer's guilt was substanial. He confessed to causing the deaths of Sponhaltz and Vargo by shooting each man twice in the head. (Trial Tr. I at 1060.) He admitted that the weapon he used required him to cock and pull the hammer back between each shot. (Trial Tr. I at 1113.) In addition, the record is replete with evidence of his intent to murder Sponhaltz and Vargo. (See Second and Third Grounds for Relief, *supra*.) As such, even if this Court were to agree with Palmer that the evidence complained of was improper "other acts" evidence, and that a limiting instruction were required, the absence of the instruction would not call into question the fundamental fairness of Palmer's trial. Thus, any error from the trial court's failure to give a limiting instruction was harmless in light of the evidence against Palmer. Palmer's ninth ground for relief should be denied for the reasons stated.

**Tenth Ground for Relief**

In his tenth ground for relief, Palmer contends the trial court should have ordered the election of counts prior to the sentencing phase of his trial. (Petition, Doc. No. 15 at 26.) Respondent does not advance a procedural default defense, acknowledging that Palmer raised the present claim on

direct appeal to the court of appeals and the Ohio Supreme Court, both of which ruled on the claim's merits. (Return of Writ, Doc. No. 21 at 77-79.) *State v. Palmer*, 89-B-28, 1996 WL 495576 at *13 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported); *State v. Palmer*, 80 Ohio St.3d 543, 572, 687 N.E.2d 685 (1997).

First, the Court observes that the section of the Ohio Revised Code Palmer claims required the state to make an election of counts applies to indictment and conviction, not capital sentencing. *See* Ohio Rev. Code § 2941.25(A) (providing that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one"). Palmer does not challenge his *conviction* on all four counts of aggravated murder, but instead contends the two counts of aggravated murder pertaining to Sponhaltz should have been merged, and the two counts of aggravated murder pertaining to Vargo should have been merged for *sentencing* purposes. (Traverse, Doc. No. 25 at 65-68.) Thus, his reliance on Ohio Rev. Code § 2941.25(A) is misplaced. Moreover, a violation of a state statute is insufficient ground, in and of itself, upon which to grant habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).

Prior to the beginning of testimony in the mitigation phase of Palmer's trial, defense counsel filed a motion to require an election of counts as to each victim rather than permitting both aggravated murder charges relating to each victim to go to the jury for sentencing purposes. (Trial Tr. II at 5-6.) The following exchange took place between the court, prosecutor Pierce, and defense counsel Nichelson:

> The Court:          All right. The Defense has filed a motion to require election, to require the State to elect with respect to each victim to proceed on one count of aggravated murder at the penalty

|  | stage. And the Defendant cites the case of <u>State versus Cooey, 46 Ohio State 3d 20</u>. |
|--|--|
|  | Do you want to respond? |
| Mr. Pierce: | We don't think <u>Cooey</u> says anything, Your Honor. |
| The Court: | You don't what? |
| Mr. Pierce: | We don't think <u>Cooey</u> says what Mr. Nichelson thinks it says. |
| The Court: | Do you want to add anything more in your brief? |
| Mr. Nichelson: | That's interesting. I read <u>Cooey</u> to say at the trial stage the State was required to elect. I assume it does not say so, but I assume because of allied offenses in similar import, you cannot sentence doubly for sentences for a single act when the charges are allied and of similar import. Which is aggravated murder in this case. And the Supreme Court enforces the procedure that was required in the <u>Cooey</u> case. |
| The Court: | All right. Well, in the charge, the court enumerates the aggravating circumstances as to each count, each of the four counts in which the defendant was found guilty of aggravated murder. So the court isn't concerned about the double counting. |
|  | Now, also I feel at this stage for the State to elect would be practical [sic] to the defendant in that it, the jury, could think that the State is zeroing in on the two counts for the death penalty. So the motion to require election will be denied. |

(Trial Tr. II at 5-6.)

When Palmer raised the denial of his motion as error on direct appeal in the court of appeals,

the court concluded that even though Palmer was found guilty of two counts of aggravated murder for each victim, he suffered no prejudice because he was sentenced to only one death penalty, resulting in only one judgment of conviction. *State v. Palmer*, 89-B-28, 1996 WL 495576 at *14 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported).

The Ohio Supreme Court also addressed the issue on direct appeal. It reasoned that Palmer's arguments that the jury might have considered the multiple counts of aggravated murder for each killing as non-statutory aggravating circumstances, and that the multiple counts might have created in the minds of the jurors an impression that the murders were especially heinous because of the number of charges, were entirely speculative and meritless. *State v. Palmer*, 80 Ohio St.3d 543, 572, 687 N.E.2d 685 (1997). The court held that the jury instructions explained the aggravating circumstances relating to each count of aggravated murder, and that those were the only aggravating circumstances to consider, then concluded that the instructions given sufficiently averted any prejudice that might have otherwise resulted from the multiple counts of aggravated murder for each victim. *Id*. In addition, the Ohio Supreme Court agreed with the court of appeals' decision that since only one death sentence was imposed, there was only one judgment of conviction, and Palmer was not prejudiced by the multiple counts of aggravated murder. *Id*.

Palmer argues that the submission of four counts of aggravated murder, two for each victim, along with their attendant aggravating circumstances compromised the fairness of his sentencing determination. He does not, however, support his argument with United States Supreme Court cases that are on point. Instead, he cites *Woodson v. North Carolina*, 428 U.S. 280 (1976), *Jurek v. Texas*, 428 U.S. 262 (1976), *United States v. Duncan*, 850 F.2d 1104 (6th Cir. 1988), and *State v. Johnson*, 24 Ohio St.3d 87 (1986), none of which address the issue Palmer raises in his tenth ground for relief.

*Woodson* concerned the constitutionality of a North Carolina's mandatory death sentence. 428 U.S. at 305. *Jurek* addressed whether Texas' capital sentencing scheme required the jury to find "the existence of a statutory aggravating circumstance before the death penalty may be imposed," and whether the statutory scheme "allowed consideration of particularized mitigating factors." 428 U.S. at 271-72. *Duncan* mentioned "multiplicitous indictments" in a footnote, but was not a capital case and so had nothing whatsoever to contribute to a discussion of capital sentencing procedures. 850 F.2d at 1104, 1108. Finally, in *Johnson*, the Ohio Supreme Court addressed a capital trial counsel's duty to perform a mitigation investigation, the trial court's responsibility to ensure full justice to a defendant and his counsel in considering a continuation prior to the mitigation phase of a capital trial, the use of non-statutory aggravating circumstances in sentencing, and the trial court's failure to grant a continuance when new evidence was discovered in the guilt phase of the trial. 24 Ohio St.3d at 88-95. None of the cited cases, individually or together, provide any basis upon which this Court could find the state courts' decisions respecting the issue raised in Palmer's tenth ground for relief was contrary to or an unreasonable application of federal law as set forth by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). In fact, the relevance of the cited cases to the issue raised is a mystery. Accordingly, Palmer has failed to demonstrate that he is entitled to habeas corpus relief, and his tenth ground for relief should be denied.

**Eleventh Ground for Relief**

In his eleventh ground for relief, Palmer argues that the testimony of one Reverend Bush[7] was erroneously excluded in the mitigation phase of his trial. (Petition, Doc. No. 15 at 26-27.)

---

[7]In his traverse, Palmer variably refers to the Reverend as "Bush" and "Busch." (Traverse, Doc. No. 25 at 69.) The Court adopts the spelling that appears in the transcript of the trial proceedings. (Trial Tr. II at 6.)

Respondent acknowledges the claim was raised as error in the state courts on direct appeal, and contests the merit of Palmer's claim rather that its procedural status. (Return of Writ, Doc. No. 21 at 80-81.) The procedural posture of Palmer's claim, however, is considerably more complicated than Respondent's argument would suggest.

At the beginning of the mitigation phase of Palmer's trial, out of the jury's presence, a discussion was held between the trial judge, defense counsel, and the prosecutor respecting Reverend Bush. There appears to have been some controversy as to whether a particular juror had attended one of the Reverend's worship services, and if she had, whether she had violated the court's admonitions not to talk about the case by doing so. (Trial Tr. II at 6.) At that time, defense counsel appeared uncertain as to whether they would call Reverend Bush in the mitigation phase, and in fact indicated they were unlikely to do so because he had only counseled with Palmer one time, and that was since the guilty verdicts were returned. *Id*. at 7, 9. The judge and prosecutor questioned Reverend Bush's qualifications and the nature of his relationship with Palmer, after which the judge decided Reverend Bush could not testify before the jury, but the judge stated he would accept a proffer of the Reverend's testimony. *Id*. at 7-8. In the end, defense counsel stated they intended to call another preacher who had counseled with Palmer after his arrest. *Id*. at 9, 131-35. Reverend Bush's proposed testimony was never proffered into the record.

On direct appeal, Palmer was represented by different counsel. (Joint Appendix at 728.) They raised the trial court's exclusion of Reverend Bush's testimony as error (Joint Appendix at 880-882),[8] but since there had been no proffer, the court of appeals rejected the claim. *State v.*

---

[8]Although Palmer's appellate counsel directed the court of appeals' attention to his ineffective assistance of trial counsel assignment of error in the text of his claim, his ineffective assistance of trial counsel claim does not raise the failure to proffer Reverend Bush's testimony as evidence of trial counsels' ineffectiveness.

*Palmer*, 89-B-28, 1996 WL 495576 at *14 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported).  In his post-conviction proceedings, represented by the same counsel as had represented him on direct appeal, Palmer again raised the exclusion of Reverend Bush's testimony as error, but referenced no evidence outside the record, such as an affidavit by Reverend Bush, to support his claim.  (Joint Appendix at 2044.)  The post-conviction trial court, however, found that since Palmer had raised the claim on direct appeal, it was barred from consideration in post-conviction.  (Joint Appendix at 2300.)  Again, Palmer raised trial counsels' ineffectiveness on other grounds, but did not claim their failure to proffer Reverend Bush's testimony into the trial record constituted sub-standard representation.  (Joint Appendix at 2053.)  Even here in federal habeas corpus proceedings, Palmer does not cite to anywhere in the record where the substance of Reverend Bush's proposed testimony can be found.  Thus, it appears that Palmer's counsel all down the line have successfully dodged every opportunity to present the substance of the Reverend's proposed testimony to both state and federal courts.

Where does all that leave this Court?  At the merits of the claim, since Respondent does not advance any procedural default defense, although it would appear that the defense is viable many times over.

Palmer's claim is unavailing.  First, this Court has no way of knowing what "relevant mitigation evidence" (Petition, Doc. No. 15 at 26) Reverend Bush would have supplied had he been permitted to testify.  Second, Palmer's trial counsel were apparently never committed to presenting Reverend Bush's testimony anyway, and instead presented the testimony of Reverend Groves, who had had more contact with Palmer earlier in his case and was therefore in a better position to offer testimony of substance.  (Trial Tr. II at 7, 9, 131-35.)  For all of these reasons, Palmer's eleventh

ground for relief should be denied.

**Twelfth Ground for Relief**

In his twelfth ground for relief, Palmer claims the jury was erroneously instructed that a sentencing verdict of life imprisonment must be unanimous. (Petition, Doc. No. 15 at 27.) Respondent argues the claim is meritless, and eschews an arguably valid procedural default defense. (Return of Writ, Doc. No. 21 at 81-82.) *See State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *16 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported)(holding that in the absence of a contemporaneous objection and plain error, Palmer has waived any right to bring the unanimity issue on appeal). Consequently, this Court considers the merits of Palmer's claim.

As part of its instruction to the jury in the mitigation phase of Palmer's trial, the trial court directed the jurors as follows:

> You shall recommend the death sentence, [sic] if you unanimously find by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors. If you do not so find as to any one or all of the four counts of the indictment, you shall unanimously recommend either life sentence with parole eligibility after serving 20 years of imprisonment or life sentence with parole eligibility after serving 30 years of imprisonment. A verdict for with these three options will be furnished to you as to each count.

(Trial Tr. II at 162.)

That a jury's verdict for life imprisonment must be unanimous is a correct statement of the law in Ohio. Ohio Rev. Code § 2929.03(D)(2). In his argument, Palmer appears not to differentiate between an instruction requiring jurors to be unanimous in finding the existence of any particular mitigating factor, which is prohibited by *Mills v. Maryland*, 486 U.S. 367 (1988), and *McKoy v. North Carolina*, 494 U.S. 433 (1990), and an instruction requiring jurors to come to a unanimous

decision as to the appropriate sentence for a particular defendant. Three Sixth Circuit cases make it clear, however, that there is a distinction.

In *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998), the jury was instructed as follows:

> If you unanimously determine that at least one statutory aggravating circumstance or . . . circumstances have been proved by the State, beyond a reasonable doubt, and said circumstance or circumstances are not outweighed by any mitigation circumstances, the sentence shall be death. The Jury shall state in writing the statutory aggravating circumstance or . . . circumstances so found, and signify in writing that there were no mitigating circumstances sufficiently substantial to outweigh the [aggravating circumstances].

*Coe*, 161 F.3d at 336-37. The jury was then told that the form of its verdict should be as follows:

> (1)    We, the Jury, unanimously find the following listed statutory aggravating circumstance or circumstances;
>
> . . . .
>
> (2)    We, the Jury, unanimously find that there are no mitigating circumstances sufficiently substantial to outweigh the [aggravating circumstances] so listed above.
>
> (3)    Therefore, we, the Jury, unanimously find that the punishment shall be death.

*Id*. at 337. In addition, the jury was instructed on the alternative result:

> If you unanimously determine that no statutory aggravating circumstance has been proved by the State beyond a reasonable doubt; or if the Jury unanimously determine that [aggravating circumstances] have been proved by the State beyond a reasonable doubt; but that said [aggravating circumstances] are outweighed by one or more mitigating circumstances, the sentence shall be life imprisonment.

*Id*. The *Coe* court found the jury instructions did not violate *Mills v. Maryland*, 486 U.S. 367, 373-75 (1988), reasoning that the challenged instructions required unanimity as to the weighing process, but not to the existence of a mitigating factor. The court noted that "[t]he instructions say clearly

-76-

and correctly that in order to obtain a unanimous verdict, each juror must conclude that the mitigators do not outweigh the aggravators." *Coe*, 161 F.3d at 338.  In addition, the court acknowledged that an instruction requiring unanimity in the finding of aggravating circumstances, in combination with one instructing the jury to consider any mitigating factors, was not improper. *Id*.  The inclusion of the unanimity feature in the instruction on aggravating circumstances, and its exclusion from the instruction on mitigating factors sufficiently informed jurors that unanimity was not required with respect to the existence of mitigating factors.  *Id*. at 338-39.

The court also squarely addressed Coe's argument that the court had a duty to inform the jurors what the effect of a deadlock in the sentencing hearing would be.  The court rejected the contention that jurors must be informed of the consequences of the jury's failure to achieve unanimity.

In *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), the jury instructions were as follows:

> If all 12 members of the jury find, by proof beyond a reasonable doubt, that the aggravating circumstances which Jay Scott was found guilty of committing outweigh the mitigating factors, then you must return such a finding to the Court.  I instruct you as a matter of law that if you make such a finding, then you have no choice and must recommend to the Court that the sentence of death be imposed upon the defendant . . . .

> On the other hand, if after considering all of the relevant evidence raised at trial, the testimony, other evidence, the statement of Jay Scott, and the arguments of counsel, you find that the State of Ohio failed to prove that the aggravating circumstances which the defendant, Jay Scott, was found guilty of committing, outweigh the mitigating factors, then you will return your verdict reflecting your decision.

> In this event, you will then proceed to determine which of two possible life imprisonment sentences to recommend to the Court. . . . .

> [The verdict form] says, "Verdict: We, the jury in this case being
> duly empaneled and sworn, do find beyond a reasonable doubt that
> the aggravating circumstances which the defendant, Jay Scott, was
> found guilty of committing, are sufficient to outweigh the mitigating
> factors presented in this case."
>
> "We, the jury, recommend that the sentence of death be imposed
> upon the defendant, Jay Scott." and, again, signed by the foreman or
> forelady and all 12 of you must sign.
>
> The second form is: "We, the jury in this case being duly empaneled
> and sworn, do find that the aggravating circumstances which the
> defendant, Jay Scott, was found guilty of committing, are not
> sufficient to outweigh the mitigating factors presented in this case."
>
> "We, the jury, recommend that the defendant, Jay Scott, be sentenced
> to life imprisonment with parole eligibility after sentencing," and
> then there's a blank with an asterisk which refers down and says,
> "insert years of imprisonment," and again, the signatures, and the
> first line is reserved for the foreman or forelady, and the remainder
> of the eleven of you must sign that verdict form. It must be
> unanimous. . . .
>
> [W]hen all 12 of you – I repeat – all 12 of you agree upon a verdict,
> you will sign the verdict in ink, and advise the Court of this fact.

*Scott*, 209 F.3d at 874. Again, the court differentiated between an instruction requiring the jury to

be unanimous in its finding of each mitigating factor, as in *Mills v. Maryland*, 486 U.S. 367 (1988)

and *Kubat v. Thieret*, 867 F.2d 351 (7th Cir. 1989), and a unanimity instruction relating only to the

overall weighing of mitigating factors and aggravating circumstances, as the court found was so in

Scott's case. *Scott*, 209 F.3d at 875. As in *Coe*, the court found the *Scott* instructions did not violate

*Mills*. *Id*. at 877. In *Scott*, the court again rejected the argument that the jury must be informed of

the consequences of a deadlock, stating as follows:

> [T]he district court was clearly incorrect in finding error in the trial
> court's failure to advise the jury in its unanimity instruction as to the
> consequences of deadlock. The Supreme Court has chastised such
> instructions as encouraging deadlock and undermining the strong

> governmental interest in unanimous verdicts. *See Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 2099-2100, 144 L.Ed.2d 370 (1999).

*Scott*, 209 F.3d at 877.

In *Roe v. Baker*, 316 F.3d 557, 562-63 (6th Cir. 2002), the complained-of instructions were as follows:

> Now each of you must decide the case for yourself, but you should do so only after a discussion and consideration of this case with your fellow jurors. Now do not hesitate to change an opinion if you later find that that opinion or that position is wrong. However, you should not surrender honest convictions in order to be congenial or in order to reach a verdict solely based upon the opinion of the other jurors.
>
> . . . .
>
> [Y]our verdict must be a unanimous verdict. All 12 of the jurors must agree unanimously on the appropriate verdict. Once you have made such a finding, again you would notify my bailiff with respect to that. All 12 jurors have to sign the verdict form.

The Sixth Circuit recognized that although the challenged instruction might well have been incorrect under state law, it was not a basis for habeas relief since the unanimity requirement referred to the sentencing recommendation rather than to the existence of mitigating factors. *Id.* at 564, *citing Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Once again, the court rejected the argument that the jury must be informed of the consequences of a deadlock, relying on *Jones*, 527 U.S. at 381-84, and *Coe*, 161 F.3d at 339-40. *Roe*, 316 F.3d at 564.

The instruction given in Palmer's case are not contrary to clearly established federal law since it did not require jurors to be unanimous in their finding the existence of any mitigating factor, nor was it improper that the jury was not informed of the consequences of a deadlock. Consequently, Palmer's twelfth ground for relief should be denied.

-79-

**Thirteenth Ground for Relief**

In his thirteenth ground for relief, Palmer contends that the jurors were improperly instructed to aggregate the aggravating circumstances against the mitigating factors, and that the aggravating circumstances should instead have been merged for sentencing purposes. (Petition, Doc. No. 15 at 27.) Both state courts confronted with Palmer's claim appear to have relied on an independent and adequate state procedural rule, that being the contemporaneous objection rule, in their decisions. In *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *16 (Ohio App. 7th Dist. Aug. 29, 1996) (unreported) the court of appeals noted that Palmer did not request merger of the specifications and thereby waived his right to raise the trial court's failure to do so as error on appeal. Further, Palmer did not request an instruction that the jurors were to decide the appropriate penalty for each aggravated murder count by weighing only the aggravating circumstances attached to each count against all of the mitigating factors, so that claimed error, too, had been waived. *Id*. at 17. The Ohio Supreme Court found that part of Palmer's claim having to do with the trial court's failure to merge the aggravating circumstances for sentencing purposes to have been waived for the same reason as did the court of appeals. *State v. Palmer*, 80 Ohio St.3d 543, 573-74, 687 N.E.2d 685 (1997). The supreme court addressed Palmer's argument that the jury instructions failed to inform the jurors that they must weigh the aggravating circumstances of each count against the mitigating factors on its merits, so that part of Palmer's claim is properly preserved for habeas corpus review. *Id*. at 573. Thus, part of Palmer's claim has been procedurally defaulted, but since Respondent does not advance the defense (Return of Writ, Doc. No. 21 at 83), this Court is free to consider the merits of that part of Palmer's claim along with the part that has been properly preserved.

Palmer contends the trial court failed to instruct the jurors that the penalty for each individual

count of aggravated murder must be assessed separately from any other aggravated murder count. (Petition, Doc. No. 15 at 27; Traverse, Doc. No. 25 at 74-78.)  In giving the penalty phase instructions, the trial court spoke generally about the weighing process and stated that the jurors must find that the aggravating circumstances outweigh the mitigating factors before a death verdict could be returned (Trial Tr. II at 162).  In addition, the court informed the jurors that it was the prosecution's burden to prove that the aggravating circumstances outweighed the mitigating factors. *Id.* at 161.  Palmer claims these general statements led the jurors to aggregate the aggravating circumstances from all four counts of aggravated murder before weighing them against the mitigating factors.  (Traverse, Doc. No. 25 at 74-78.)  What he fails to acknowledge, however, is that the trial court also informed the jurors as follows:

> You shall make a recommendation to the court on each of the four counts of the indictment.
>
> You shall recommend the death sentence, if you unanimously find by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors.  If you do not so find as to any one or all of the four counts of the indictment, you shall unanimously recommend either life sentence with parole eligibility after serving 20 years of imprisonment or life sentence with parole eligibility after serving 30 years of imprisonment.  A verdict form with these three options will be furnished to you as to each count.

(Trial Tr. II at 162.)  In addition, when the verdicts were returned, the record shows that the aggravating circumstances for each count of aggravated murder were weighed against the mitigating factors and that the jury unanimously found the aggravating circumstances for each count outweighed the mitigating factors.  (Trial Tr. II at 165-167; Joint Appendix at 299-302.)

In addressing the issue on direct appeal, the Ohio Supreme Court rejected Palmer's contention for three reasons:  (1) it found Palmer's claim of prejudicial error "purely speculative";

-81-

(2) it found the trial court's sentencing instructions clearly informed the jury that it should consider each count of aggravated murder separately, and that only the aggravating circumstances relating to a particular count were to be weighed against the mitigating factors; and (3) the jury's verdict form made it "abundantly clear" that the jury considered each aggravated murder count separately, that it confined its consideration of each count to the aggravating circumstances relating to that count, and that it weighed only those aggravating circumstances in each count against the mitigating factors. *State v. Palmer*, 80 Ohio St.3d 543, 573, 687 N.E.2d 685 (1997).

In his argument, Palmer does not mention the Ohio Supreme Court's decision or reasoning, much less explain how it might be contrary to or an unreasonable application of federal law as articulated by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Rather, he argues the merits of the issue he presented to the state courts without regard for the stringent standard placed on federal habeas corpus review by the AEDPA. As noted above, under that standard, it is not enough that the state court decision might be incorrect or erroneous, it must be "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 511 (2003), *quoting Williams v. Taylor*, 529 U.S. 362, 409 (2000). Palmer has not demonstrated that the Ohio Supreme Court's resolution of his claim that the jury instructions inadequately informed the jurors of their obligation respecting weighing aggravating circumstances and mitigating factors was "objectively unreasonable," and this Court does not find it to be so after reviewing the record in Palmer's case. *See Cooey v. Coyle*, 289 F.3d 882, 889 (6th Cir. 2002)(noting that each murder is a separate offense subject to a separate penalty and that the aggravating circumstances in each count of aggravated murder are to be weighed against the mitigating factors).

Palmer also argues that the trial court's failure to merge the duplicative and cumulative

aggravating circumstances for each count of aggravated murder rendered the jury's sentencing recommendation fundamentally unfair. (Petition, Doc. No. 15 at 27; Traverse, Doc. No. 25 at 78-80.) He claims his death sentence is contrary to or an unreasonable application of *Godfrey v. Georgia*, 446 U.S. 420 (1980), but that case is easily distinguishable from Palmer's. In *Godfrey*, the United States Supreme Court determined that the aggravating circumstance upon which Godfrey's death sentence was premised, that the murders were "outrageously or wantonly vile, horrible[,] and inhuman," along with a lack of adequate jury instructions, resulted in a "standardless and unchanneled imposition" of the death sentence. 446 U.S. at 428-29. The aggravating circumstances in Palmer's case are, however, well defined and straighforward.[9]

Palmer cites an Ohio Supreme Court case for support. In *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), the state court held that the aggravating circumstances set forth in Ohio Rev. Code § 2929.04(A)(3), that the murder was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense, and § 2929.04(A)(7), which describes felony murder, were duplicative and should have been merged in that case. 15 Ohio St.3d at 197. Only the aggravated murder counts related to Vargo's murder included both of those aggravating circumstances, however. (Joint Appendix at 2104, 2108.) The counts relating to Sponhaltz' murder were identical to those in the Vargo counts except for (A)(3) specification, which was not charged in the Sponhaltz aggravated murder counts. (Joint Appendix at 2098, 2102.) The jury recommended

---

[9]The aggravating circumstances charged in the aggravated murder counts against Palmer for Sponhaltz' murder were that the murder "was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons," and that the murder "was committed while [Palmer] was committing, attempting to commit, or fleeing immediately after committing, aggravated robbery, and either [Palmer] was the principal offender in the commission of the aggravated murder , or if not the principal offender, committed the aggravated murder with prior calculation and design."

The aggravated murder counts for Vargo's murder included the same two aggravating circumstances along with a third, that being that the murder "was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by [Palmer]."

death as the appropriate sentence on all four counts, however, which makes it clear that even without

the (A)(3) aggravating circumstance, the remaining aggravating circumstances of each count

outweighed the mitigating factors. (Joint Appendix at 299-302.) Thus, that the Vargo aggravated

murder counts included an arguably duplicative aggravating circumstance resulted in no prejudice

to Palmer. Furthermore, Palmer does not contend that the aggravating circumstances charged in the

counts relating to Sponhaltz' murder were duplicative.

    For the reasons stated, Palmer's thirteenth ground for relief should be denied.


**Fourteenth Ground for Relief**

    In his fourteenth ground for relief, Palmer claims he was denied a fair trial due to extensive

media coverage of the Sponhaltz and Vargo murders. (Petition, Doc. No. 15 at 27-28.) Respondent

argues that the claim is procedurally defaulted because it was rejected on *res judicata* grounds when

Palmer raised it in his post-conviction proceedings. (Return of Writ, Doc. No. 21 at 89.)

    Palmer did in fact raise his pre-trial publicity as his twenty-first claim in his petition for post-

conviction relief in the state court (Joint Appendix at 2059), and the trial court denied the claim,

finding that it could have been raised on direct appeal and resolved without resort to evidence

outside the record (Joint Appendix at 2300). On appeal from the trial court's denial of relief, agreed.

*State v. Palmer*, No. 96-BA-70, 1999 WL 979228 at *6 (Ohio App. 7th Dist. Oct. 20,

1999)(unreported). Further appeal to the Ohio Supreme Court was not allowed. *State v. Palmer*,

88 Ohio St.3d 1424, 723 N.E.2d 1113 (2000). Thus, Palmer's fourteenth ground for relief here is

procedurally defaulted.[10]

Even if it had been properly preserved for habeas corpus review, however, the claim would have ultimately failed. Palmer sets forth his claim in one sentence in his petition (Doc. No. 15 at 27-28), and does not contest Respondent's arguments that the claim is both procedurally defaulted and meritless in his traverse (Doc. No. 25.) Indeed, he makes no argument at all respecting his fourteenth ground for relief in that document. A simple allegation falls far short of demonstrating that a petitioner is entitled to habeas corpus relief.

Moreover, Palmer's "evidence" in the form of a juror's statements that he had read the news reports of the crimes and initially formed an opinion is an inadequate basis upon which to grant habeas relief under *Irvin v. Dowd*, 366 U.S. 717, 723 (1961), which states as follows:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Instead, to succeed on a claim that pretrial publicity deprived Palmer of a fair trial, he must show that either (1) the circumstances under which the trial was held were such that inherent prejudice to the venire should be presumed as in *Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Estes v. Texas*, 381 U.S. 532 (1965); and *Rideau v. Louisiana*, 373 U.S. 723 (1963); or (2) that the publicity inherently prejudiced the jury pool, as evidenced by the extent and nature of the publicity and the responses of the prospective jurors in voir dire as in *Irvin, supra*. *Nevers v. Killinger*, 169

---

[10]Moreover, Palmer never claims to have requested a change of venue due to the pretrial publicity in his case. Thus, even if the state court claim were not barred by the doctrine of *res judicata* as the state court found, Palmer's failure to request the change of venue likely would have resulted in the claim being rejected for his failure to observe the rule requiring a contemporaneous objection to alleged trial error. In the ground for relief that follows, Palmer contends his trial counsel were ineffective because they failed to request a change of venue.

F.3d 352, 362-63 (6th Cir. 1999). Palmer's "argument" sounds in the second of these methods of demonstrating constitutional error attributable to pretrial publicity, and attempts to show that publicity inherently prejudiced the jury pool by citing one eventual juror's statement that he "initially" formed an opinion about the case after reading news reports prior to reporting to jury duty. He fails to demonstrate that the "extent and nature" of the publicity was anything other than what is normal in news coverage of murders. *See White v. Mitchell*, ___ F.3d ___, 2005 WL 3299378 (6th Cir. 2005)(rejecting pretrial publicity habeas claim where sixteen of sixty-three prospective jurors stated they had formed opinions regarding guilt, and where one of those ultimately served on the jury). Accordingly, Palmer's claim that he was denied a fair trial because of extensive pretrial publicity is meritless in addition to being procedurally defaulted, and should be denied.

**Fifteenth Ground for Relief**

In his fifteenth ground for relief, Palmer alleges numerous instances of his trial counsel's ineffective assistance. (Petition, Doc. No. 15 at 28-31.) Palmer makes no mention of his twenty-two sub-claims, or his fifteenth ground for relief in his traverse (Traverse, Doc. No. 25), but argues their merits instead in his post-evidentiary hearing brief (Doc. No. 79). Respondent argues most, if not all, of Palmer's ineffective assistance of trial counsel sub-claims have been procedurally defaulted. (Return of Writ, Doc. No. 21 at 92-95.) Each sub-claim, along with its procedural status, will be discussed in turn.

The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which states as follows:

> A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or death sentence has
> two components.  First, the defendant must show that counsel's
> performance was deficient.  This requires showing that counsel was
> not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires showing
> that counsel's errors were so serious as to deprive the defendant of a
> fair trial, a trial whose result is reliable.  Unless a defendant makes
> both showings, it cannot be said that the conviction or death sentence
> resulted from a breakdown in the adversary process that renders the
> result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.
> . . .  A fair assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and
> to evaluate the conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct falls within
> a wide range of reasonable professional assistance;  that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be considered sound trial
> strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding
> would have been different.  A reasonable probability is a probability
> sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainright*, 477 U.S. 168, 184 (1986); *Wong v. Money,* 142 F.3d

313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177, 1180-81 (6th Cir. 1987).  The merits of

Palmer's sub-claims will be considered with these principles in mind.

Pretrial

In sub-claim 15.1, Palmer argues his trial counsel provided ineffective assistance in neglecting to obtain a ruling that the photographs of the victims were cumulative. (Petition, Doc. No. 15 at 28.) A habeas petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Howard v. Bouchard*, 405 F.3d 459 (6th Cir. 2005). Nowhere does Palmer make an attempt to meet his burden with respect to sub-claim 15.1. He merely states his contention as if it were fact, supports it with nothing more than a general reference to *Strickland v. Washington*, 446 U.S. 668 (1984), and does not argue his claim anywhere. As the claim has not been argued in either the petition, the traverse, or in the post-evidentiary hearing brief,[11] it has been abandoned. Sub-claim 15.1 in Palmer's fifteenth ground for relief should consequently be denied.

In sub-claim 15.2, Palmer argues that his trial counsel were ineffective when they withdrew a motion to suppress evidence. (Petition, Doc. No. 15 at 28.) Respondent argues the sub-claim is both procedurally defaulted and meritless. (Return of Writ, Doc. No. 21 at 92-93, 97.) Respondent's procedural default argument, however, relies on the state courts' handling of the claim in Palmer's post-conviction proceedings. *Id*. at 92-93. Since the claim was one the state courts could have resolved without reference to evidence outside the record, the proper avenue with which to seek relief was direct appeal, and Palmer did raise the issue there, *albeit* only in the Ohio Supreme Court (Joint Appendix at 1624), and not in the court of appeals. In his twentieth assignment of error on direct appeal to the court of appeals, Palmer mentions his trial counsels' withdrawal of a motion

---

[11]Palmer references sub-claim 15.1 in a sub-heading to his arguments in his post-evidentiary hearing brief (Doc. No. 79 at 30), but does not argue the issue the sub-claim presents.

to suppress, but that appears to be in the context of a request to suppress the allegedly cumulative

photographs of the victims. (Joint Appendix at 902-3; *see* Fifteenth Ground for Relief, Sub-Claim

15.1, *supra*.) Palmer never mentioned his confession or its involuntary nature in that argument, so

the present sub-claim was not "fairly presented" to the state court of appeals. Regardless, it was

presented to the Ohio Supreme Court as noted, and that court declined to address the claim's

procedural posture or substantive worth. *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685

(1997). Since the state supreme court did not rely on an independent and adequate state procedural

ground to reject Palmer's claim, it is not procedurally defaulted for habeas corpus purposes, and this

Court may address the claim *de novo*.

Palmer's contention in his motion to suppress was that his statements to police should have

been suppressed because he was under the influence of alcohol when he made the statements. (Post-

Evidentiary Hearing Brief, Doc. No. 79 at 30-31.) In *Hill v. Anderson*, 300 F.3d 679, 682 (6th Cir.

2002), the court of appeals explained the effect of intoxication on a confession as follows:

> "[A] confession cannot be used if it is involuntary." *United States v.
> Macklin*, 900 F.2d 948, 951 (6th Cir. 1990), *cert. denied*, 498 U.S. 840
> (1990)(*citing United States v. Washington*, 431 U.S. 181, 186-87
> (1977)). A confession is involuntary only if there is (1) police
> coercion or overreaching which (2) overbore the accused's will and
> (3) caused the confession. *See Colorado v. Connelly*, 479 U.S. [157,]
> 165-55 [1986]; *United States v. Brown*, 66 F.3d 124, 126-27 (6th Cir.
> 1995). When a suspect suffers from some mental incapacity, such as
> intoxication or retardation, and the incapacity is known to
> interrogating officers, a "lesser quantum of coercion" is necessary to
> call a confession into question. *United States v. Sablotny*, 21 F.3d
> 747, 751 (7th Cir. 1994); *see also Nickel v. Hannigan*, 97 F.3d 403,
> 410 (10th Cir. 1996).

*Id*. (parallel citations omitted). Citing *Connelly*, the court of appeals has previously concluded that

intoxication, in and of itself, is not determinative of whether a confession was voluntary. *United*

*States v. Jones*, 935 F.2d 271, 1991 WL 105751 at **3 (6th Cir. 1991)(table); *Marcum v. Knight*, 922

F.2d 841, 1991 WL 1106 at **3 (6th Cir. 1991)(table).  In both cases, the Sixth Circuit observed that

without coercive police activity, intoxication does not render a confession involuntary.  *Jones*, 1991

WL 10571 at **3; *Marcum*, 1991 WL 1106 at **3.  Ohio courts of appeals have emphasized that

coercive police activity is required before a confession will be found to have been involuntary.  *State*

*v. Benson*, No. 94 CA 36, 1995 WL 477520 at *3-4 (Ohio App. 4th Dist. Aug. 9, 1995)(unreported);

*State v. Young*, No. 90AP-905, 1991 WL 224467 at *2-5 (Ohio App. 10th Dist. Oct. 10,

1991)(unreported); *State v. Taylor*, No. C-870458, 1988 WL 92633 at *1-2 (Ohio App. 1st Dist. Sept.

7, 1988)(unreported).  Those cases provide a reason to expect that the Ohio courts would not have

accepted Palmer's alleged intoxication as sufficient proof that his confession was involuntary, and

Palmer cites no cases to the contrary in his argument.  In addition, Palmer cites not a single instance

of any coercive government conduct that, in conjunction with his alleged intoxication, might have

amounted to a constitutional deprivation.  (Post-Evidentiary Hearing Brief, Doc. No. 79 at 30-31.)

Palmer's alleged intoxication alone did not provide a valid ground upon which to seek suppression

of his confession.  It is entirely plausible that Palmer's trial counsel recognized that fact and

withdrew the motion to suppress the confession on that basis, and Palmer gives this Court no reason

to conclude otherwise.  Consequently, Palmer's ineffective assistance of trial counsel sub-claim 15.2

should be denied.

In sub-claim 15.3, Palmer alleges his trial counsels' ineffectiveness in their failure to request

appointment of a toxicologist or pharmacologist to explain the effect of alcohol and cocaine

withdrawal on Palmer's ability to form the requisite intent to kill his victims.  (Petition, Doc. No.

15 at 28.)  Respondent contends the sub-claim is procedurally defaulted based upon the state courts'

resolution of the claim in Palmer's post-conviction proceedings.  (Return of Writ, Doc. No. 21 at 92-93.)  The Court agrees with Respondent.

Palmer raised the instant sub-claim in his post-conviction relief petition as his eighteenth claim for relief, without reference to evidence outside the record of the trial.  (Joint Appendix at 2053.)  The trial court held that since Palmer also raised the issue on direct appeal, the claim was barred in post-conviction by the doctrine of *res judicata*.  (Joint Appendix at 2300-01.)  The post-conviction court of appeals, however, rejected Palmer's claim on a different ground:  he had not supported his claim of error with evidence from outside the record as is required in post-conviction proceedings in Ohio.  *State v. Palmer*, No. 96-BA-70, 1999 WL 979228 at *5 (Ohio App. 7th Dist., Oct. 20, 1999)(unreported).  As was noted in Palmer's third ground for relief, *supra*, and bears repeating here, Ohio's procedural rule that claims advanced in post-conviction proceedings must be supported by cogent documentation from outside the record has been "routinely and regularly applied in the Ohio courts."  *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002), *citing State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905, 910 (1999); *State v. Jackson*, 64 Ohio St.21d 107, 413 N.E.2d 819, 823 (1983).  *See also*, *Sowell v. Bradshaw*, 372 F.3d 821, 829-30 (6th Cir. 2004); *State v. Kapper*, 5 Ohio St.3d 36, 448 N.E.2d 823 (1983).  Thus, there was a state procedural rule applicable to Palmer that was routinely and regularly followed in Ohio when he petitioned for post-conviction relief in the state courts.  The state court relied upon the rule in rejecting Palmer's claim, so the claim is procedurally defaulted and cannot be reviewed in federal habeas.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Moreover, Palmer has not demonstrated cause and prejudice for his default.  The claim is one that could only be raised in Ohio courts in post-conviction proceedings with proper support, and

even if Palmer had argued here that the ineffectiveness of his post-conviction counsel provided cause for the default, his argument would fail.  There is no federal constitutional right to an attorney in state post-conviction proceedings, so a habeas petitioner cannot successfully claim ineffective assistance of his post-conviction counsel to establish cause for his default.  *Gulertekin v. Tinnelman-Cooper,* 340 F.3d 415 (6th Cir. 2003), *citing Coleman v. Thompson*, 501 U.S. 722, 749 (1991).  In fact, the Court is unable to conceive of a set of circumstances that would demonstrate cause for a default such as Palmer's of the instant sub-claim.  Accordingly, Palmer's ineffective assistance of trial counsel sub-claim 15.3 should be denied.

**Guilt Phase**

In sub-claim 15.4, Palmer contends trial counsel rendered ineffective assistance in failing to assure that all proceedings were recorded.  (Petition, Doc. No. 15 at 28.)  Respondent argues the claim was procedurally defaulted by the state courts' treatment of it in Palmer's post-conviction proceedings.  (Return of Writ, Doc. No. 21 at 92.)  Palmer did not raise his trial counsels' failure to assure all portions of his trial were recorded as part of his ineffective assistance of trial counsel claim on direct appeal.  (Joint Appendix at 901-8.)  Nor did he raise it as a sub-claim in his post-conviction petition.  (Joint Appendix at 2052-54.)  As the claim was never raised on direct appeal or in post-conviction, the sub-claim is procedurally defaulted and is not amenable to habeas corpus review.

Next, in sub-claim 15.5, Palmer argues his trial counsel were ineffective for failing to seek a change of venue in his case.  (Petition, Doc. No. 15 at 28; Post-Evidentiary Hearing Brief, Doc. No. 79 at 42-44.)  Palmer contends extensive pre-trial publicity tainted the jury pool and necessitated a change of venue.  *Id.*  Respondent counters that the sub-claim is procedurally defaulted, having

been presented in Palmer's post-conviction proceedings and found barred by the doctrine of *res judicata*, and that it is meritless as well. (Return of Writ, Doc. No. 21 at 92-93, 100.)

Palmer raised the ineffectiveness of his trial counsel based on the failure to request a change of venue in his post-conviction petition to the state court. (Joint Appendix at 2052.) The trial court found Palmer's claim barred from consideration by the doctrine of *res judicata* because Palmer had already raised the issue on direct appeal. (Joint Appendix at 2300-01.) A review of the record proves the basis upon which the trial court so found to be factually erroneous, however. On direct appeal, Palmer did not include in his ineffective assistance of trial counsel assignment of error their failure to request a change of venue. (Joint Appendix at 901-08.) In *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001), the Sixth Circuit Court of Appeals concluded that "when the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded." *White v. Mitchell*, ___ F.3d ___, ___, 2005 WL 3299378 (6th Cir. 2005)*;Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005). When such circumstances arise, the district court is permitted to conduct *de novo* review on the merits of the claim. *Id*. Since the Ohio Supreme Court misapplied its own procedural rule, this Court is not bound by the state court's procedural findings, and will consider *de novo* the merits of Palmer's claimed error.

Palmer's sub-claim is unavailing. The only "proof" he refers to in his argument of the sub-claim is that one juror indicated he initially formed a conclusion about the case based on his readings of media reports. In context, the questioning of that juror relevant to the issue presented took place

as follows[12]:

| | |
|---|---|
| The Court: | Now, have you read or heard anything or seen anything on TV about this case? |
| PJ 29: | Yes.  Prior to you telling us not to read the newspapers or watch TV or zero in on anything, yes. |
| The Court: | What do you think you know about the case? |
| PJ 29: | Other than what I read in the paper.  And I know what the accusations are and how the newspaper has written it up.  Other than that, that's basically it. |
| The Court: | All right.  Now, what you read in the paper may be accurate, may be inaccurate. |
| PJ 29: | Yes, sir. |
| The Court: | And whatever it may be that you remember, can you put that out of your mind and decide this case – |
| PJ 29: | I would hope so. |
| The Court: | – on the evidence – |
| PJ 29: | Yes. |
| The Court: | – and the law given to you by the court? |
| PJ 29: | Yes. |
| . . . | |
| Prosecutor: | You know the defendant comes here presumed innocent and it's our side's obligation to prove him guilty beyond a reasonable doubt? |
| PJ 29: | Yes. |

---

[12]For the sake of brevity, the Court identifies the prosecutor as "Prosecutor" rather than "Mr. Pierce" as in the transcript, the prospective juror as "PJ 29" rather than "Prospective Juror No. 29" as in the transcript, and defense counsel as "Defense" rather than "Mr. Nichelson" as in the transcript.

. . .

Defense:      Has anyone, any person prior to today talked about this case in your presence?

PJ 29:        Yes.  Like neighbors or friends, yes.

Defense:      Did those neighbors or friends express an opinion in this case:

PJ 29:        Yes.

Defense:      Did those neighbors or friends express an opinion that you had any reason to believe was substantiated by good knowledge?

PJ 29:        No.

Defense:      You think they were just spouting off?

PJ 29:        I think they read the newspaper and pretty much formed their own conclusion.  Pretty much that's it.

Defense:      You read the newspaper?

PJ 29:        I sure did.

Defense:      Did you pretty much form your own conclusion?

PJ 29:        Initially I did, sir.

Defense:      You say "initially".  [sic]  Are you saying that you're more open now?

PJ 29:        Well, under these set [sic] of circumstances, I may have to be more open.

Defense:      Now, you are here and you have to listen to the evidence rather than what some paper has put out.

PJ 29:        It's a whole different ball game.

Defense:      You think possibly that the media may have their own slants from time to time?

-95-

| PJ 29: | Yes. |
|---|---|
| Defense: | And it's based solely on the opinion of an editor or reporter that what [sic] gets into the paper. |
| PJ 29: | Yes. |
| Defense: | Are you willing to say that whatever you may have read or heard now no longer exists in your mind? |
| PJ 29: | Once again, I know you people are looking for a yes or no. But, gee, that would be difficult once again to do. |
| Defense: | Okay. |
| PJ 29: | Based upon the questions you have asked me prior to this response. |
| Defense: | Sure. We can appreciate that you heard and know certain things. Are you going to be willing to say, okay, look. I have to set that aside and I have to listen to the witnesses, hear the evidence in this case at this moment and make my decision only on that basis? |
| PJ 29: | If that's the case, yes. |
| Defense: | And will you do so? |
| PJ 29: | Yes. |

(Trial Tr. I at 554-55, 557, 564-67.)

Palmer's sub-claim is unavailing. First, the underlying premise, that the publicity was such that it resulted in inherent prejudice to the jury pool, is without merit. (See Ground for Relief Fourteen, *supra*.) The prospective juror in Palmer's case acknowledged that Palmer was entitled to a presumption of innocence, and stated that he would set aside whatever he had read or seen on television about the case and would decide the case based on the evidence presented during the trial. Furthermore, that one juror admitted to forming an initial opinion about the case based on news

-96-

reports falls far short of demonstrating that extensive pretrial publicity tainted the jury pool, especially when the juror whose statement is relied upon has been adequately rehabilitated following the statement.  In addition, the juror never stated the substance of the opinion he had "initially" formed.  Thus, demonstrating prejudice is impossible unless this Court is willing to assume what opinion the juror had formed, which it is patently not willing to do.

Second, trial counsel were not ineffective for failing to request a change of venue that was sure to fail.  In addition to the analysis above, trial counsel testified by videotape in the evidentiary hearing in these proceedings that his recollection was that the trial judge stated "such a motion would not be entertained unless we couldn't seat a jury." (Videotaped Deposition [sic] of James L. Nichelson, Doc. No. 67, Volume I at 57.)  For the foregoing reasons, Palmer's ineffective assistance of trial counsel sub-claim 15.5 should be denied.

In sub-claim 15.6, Palmer alleges his trial counsels' ineffectiveness in their failure to object to incomplete and erroneous jury instructions on inferences.  (Petition, Doc. No. 15 at 29; Post-Evidentiary Hearing Brief, Doc. No. 79 at 38-41.)  Respondent contends the sub-claim is procedurally defaulted because the state courts relied upon an independent and adequate state procedural rule, the doctrine of *res judicata*, in denying relief in post-conviction proceedings. (Return of Writ, Doc. No. 21 at 92-93.)  Palmer does not address Respondent's procedural default argument.  (*See* Post-Evidentiary Hearing Brief, Doc. No. 79 at 38-41.)  Palmer did raise the instant sub-claim in his petition for post-conviction relief, as Respondent asserts (Joint Appendix at 2052-54), and the trial court rejected it on res *judicata* grounds, *id*. at 2300-01.  Palmer's apparent attempt to raise the issue on appeal from the denial of post-conviction relief was nebulously worded, referring to "certain jury instructions" trial counsel should have requested.  (Joint Appendix at

2052.)  The court of appeals did not address the issue, but noted that many of the ineffective assistance of trial counsel sub-claims presented on appeal were barred on res judicata grounds.  *State v. Palmer*, No. 96-BA-70, 1999 WL 979228 at *5 (Ohio App. 7th Dist. Oct. 20, 1999)(unreported). The Ohio Supreme Court did not allow further appeal.  *State v. Palmer*, 88 Ohio St.3d 1424, 723 N.E.2d 1113  (2000).  The issue has consequently been procedurally defaulted.

Even if it were not defaulted, however, it would fail.  Palmer contends his attorney should have requested an instruction on inferences upon inferences to contain the damage done by the trial court's instruction on inferences and the prosecutor's exploitation of "other acts" evidence produced in his trial.  (Post-Evidentiary Hearing Brief, Doc. No. 79 at 38-41.)  The trial court's allegedly offending instruction informed the jury that "[i]n order to warrant a conviction in a criminal case upon circumstantial evidence or by any evidence, it is necessary that the evidence be so clear and convincing as to exclude every reasonable doubt."  (Trial Tr. I at 1232.)  The complained-of argument by the prosecutor is as follows:

> No matter what anyone tells you, you alone have the power to put those facts together and draw the necessary and reasonable inferences.  No one can tell you that you can or cannot draw a certain inference if you feel beyond a reasonable doubt, if you know in your heart that that is the necessary and probable inference to draw from all of the evidence.

(Trial Tr. I at 1159-60.)  Together, Palmer contends these excerpts permitted the jurors to draw inferences upon inferences in order to convict him.

Neither of the excerpts refer to inferences upon inferences, however, and each refers explicitly to the evidence and inferences that can be drawn from the evidence.  In Palmer's brief, he emphasizes the words "or by any evidence" in the instruction, and "all of the evidence" in the prosecutor's argument as if those words communicated to the jurors that they should draw inferences

upon inferences. (Trial Tr. I at 1232, 1159-60.) Evidence and inferences are not the same, however, and inferences are not evidence. Nothing in the trial court's instruction on inferences or the excerpt from the prosecutor's closing argument encourages inferences based on inferences, as this Court noted in Palmer's seventh ground for relief, *supra*. In addition, even if the jurors were so encouraged, there was ample evidence in the record from which the jury could have found the element of specific intent proven beyond a reasonable doubt without resort to inferring upon inferences. Thus, the underpinnings of Palmer's ineffective assistance of trial counsel sub-claim 15.6 lack merit, and his trial counsel cannot be faulted for bypassing a losing objection. Accordingly, sub-claim 15.6 should be denied.

Next, in sub-claim 15.7, Palmer argues his trial counsels' ineffectiveness is demonstrated by their failure to object to "other acts" testimony brought out through George Goolie. (Petition, Doc. No. 15 at 29.) Respondent acknowledges Palmer raised the issue on direct appeal and does not advance a procedural default argument. (Return of Writ, Doc. No. 21 at 93.) The allegedly damaging evidence brought out in George Goolie's testimony was that Palmer may not have paid his child support and that Goolie had received a phone call from someone Goolie believed was Palmer threatening Goolie at some time after the murders. (Trial Tr. I at 972-75.) Palmer's counsel did object to Goolie's testimony (Trial Tr. I at 974), but the objection was overruled, *id*.[13] At the conclusion of the prosecution's case, the trial court reversed itself in part and instructed that the jury must totally disregard Goolie's testimony respecting the telephone threat. (Trial Tr. I at 1054.)

---

[13]Palmer's counsel's objection was that Goolie's testimony was not relevant to the proceedings in any way. (Trial Tr. I at 974.) At the evidentiary hearing here, counsel testified that he guessed his objection related to Goolie's entire testimony, not just the testimony relating to the threatening telephone call. (Tr. of Videotape of Evid. Hrg. Testimony of James Nicholson, Vol. I, Doc. No. 67 at 73.) When asked by Palmer's current counsel if his objection related only to the testimony about the threatening telephone call, Nicholson stated that he did not think that was correct. (Tr. of Videotape of Evid. Hrg. Testimony of James Nicholson, Vol. II, Doc. No. 67 at 18.) Thus, this Court construes Nicholson's objection as relating to all of Goolie's testimony.

Because Palmer's trial counsel did object to the offensive testimony, the factual premise upon which Palmer's ineffective assistance of trial counsel sub-claim 15.7 rests is faulty, and it should be denied.

In sub-claims 15.8 and 15.9, Palmer claims his trial counsel were ineffective when they failed to object to evidence that Palmer did not pay his child support,[14] and trial counsels' failure to request a limiting instruction regarding the same evidence.  (Petition, Doc. No. 15 at 29.) Respondent correctly notes that the issue presented was raised on direct appeal in the court of appeals (Return of Writ, Doc. No. 21 at 93), and the Court observes that the state appellate court addressed the issue on the merits, *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *17 (Ohio App. 7th Dist. Aug 29, 1996) (unreported).  Though raised on further appeal to the Ohio Supreme Court (Joint Appendix at 1822-28), the court declined to address the claim, *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997).  Respondent does not contend the sub-claim is procedurally defaulted, but instead that it is meritless.  (Return of Writ, Doc. No. 21 at 93, 100.)

In Palmer's eighth ground for relief, *supra*, this Court noted that the state court of appeals determined that the alleged "other acts" evidence was not really that at all, and that it was instead evidence that established Palmer's "whereabouts, intentions, or state of mind" during the time preceding the murders.  *See State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *6 (Ohio App. 7th Dist. Aug. 29, 1996) (unreported).  Palmer has given the Court no reason to suspect, let alone hold. that the state trial court would have come to a different conclusion had trial counsel objected to the

---

[14]In sub-claim 15.8, Palmer points only to testimony that he did not pay his child support as the "other acts" evidence to which his counsel should have objected.  (Petition, Doc. No. 15 at 29.)  That claim was raised along with others in his twentieth assignment of error on direct appeal to the court of appeals (Joint Exhibit at 815, 901-8), and addressed on the merits by that court, *State v. Palmer*, Doc. No. 89-B-28, 1996 WL 495576 at *17 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported).  Palmer attempts to expand sub-claim 15.8 to include other instances of alleged "other acts" evidence in his post-evidentiary hearing brief.  (Doc. No. 79 at 41-42.)  As is true of a traverse (see Second Ground for Relief, *supra*), a post-evidentiary hearing brief is no place to raise, or expand, a claim.  Thus, this Court will consider only the instance of "other acts" evidence specified in Palmer's petition in considering sub-claim 15.8.

complained-of evidence.

Moreover, this Court has also recommended that Palmer's claim that the trial court should have given a limiting instruction to the jurors on the use of the alleged "other acts" evidence be denied because there was substantial evidence of Palmer's guilt even without the "other acts" evidence. (*See* Ninth Ground for Relief, *supra*.) Because neither claim underlying Palmer's ineffective assistance of trial counsel sub-claims 15.8 and 15.9 are meritorious, neither are the ineffective assistance of trial counsel sub-claims themselves. Both sub-claims should be denied.

In sub-claim 15.10, Palmer argues that his trial counsel were ineffective in not objecting to several instances of alleged prosecutorial misconduct. (Petition, Doc. No. 15 at 29.) Respondent acknowledges that Palmer raised the issue on direct appeal, and does not assert a procedural default defense. (Return of Writ, Doc. No. 21 at 93.) The state court of appeals rejected the claim on the merits, *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *17 (Ohio App. 7th Dist. Aug. 29, 1996 (unreported), and the Ohio Supreme Court declined to address it altogether, *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997). As the claim has not been argued in either the petition, the traverse, or in the post-evidentiary hearing brief, however, it has been abandoned. Palmer's ineffective assistance of trial counsel sub-claim 15.10 should accordingly be denied.

In sub-claims 15.11, 15.12, and 15.13, Palmer contends the testimony of three witnesses respecting their contact with or observations of Palmer and Hill in the hours before the murders should have been objected to by his trial counsel, and that their failure to do so constitutes ineffective assistance. (Petition, Doc. No. 15 at 29.) Respondent argues that Palmer never raised the sub-claims in the state courts and that they are consequently procedurally defaulted. (Return of Writ, Doc. No. 21 at 29.) The record reflects that although Palmer raised the sub-claims as either

free-standing claims or as claims underlying his prosecutorial misconduct claim on direct appeal,

Respondent is correct in asserting that Palmer never raised an ineffective assistance of trial counsel

claim on direct appeal with the same underlying claims as the sub-claims here.  (See Joint Appendix

at 821-27, 901-8)  The sub-claims are procedurally defaulted and should be denied.

**Penalty Phase**

In sub-claim 15.14, Palmer argues that his counsels' failure to adequately prepare for the

opening statement in the penalty phase of his trial constituted ineffective assistance.  (Petition, Doc.

No. 15 at 29.)  Respondent acknowledges that Palmer raised the issue in his twentieth assignment

of error on direct appeal in the state court of appeals and his twenty-first proposition of law on direct

appeal to the Ohio Supreme Court, but appears to argue the claim was procedurally defaulted in

post-conviction.  (Return of Writ, Doc. No. 21 at 94-95.)

Palmer's sub-claim was raised on direct appeal in the court of appeals as Respondent

contends (Joint Appendix at 905), and the appellate court rejected the claim on its merits, *State v.*

*Palmer*, No. 89-B-28, 1996 WL 495576 at *16-17 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported).

The Ohio Supreme Court did not address the issue on direct appeal.  *State v. Palmer*, 80 Ohio St.3d

543, 687 N.E.2d 685 (1997).  Since the highest state court to consider Palmer's claim did so on the

merits, the issue is preserved for federal habeas corpus purposes.

Palmer's sole allegation in his petition relating to sub-claim 15.14 is that his trial counsel

announced in his penalty-phase opening statement that the night before, he had been watching

television news reports about an earthquake in California when he should have been preparing for

the mitigation phase.  (Petition, Doc. No. 15 at 29-30.)  The claim is not argued in the traverse, and

while argument purports to be made concerning sub-claim 15.14 in Palmer's post-evidentiary

hearing brief (Doc. No. 79 at 5-9), the argument relates to sub-claim 15.22, *infra*. That argument will be considered when the relevant sub-claim is addressed below, and since Palmer does not argue the substance of sub-claim 15.14 in either his petition, traverse, or post-evidentiary hearing brief, it is abandoned and should be denied.

In sub-claim 15.15, Palmer contends his trial counsels' failure to object to numerous instances of prosecutorial misconduct in the penalty phase of trial constituted ineffective assistance. (Petition, Doc. No. 15 at 30.) Respondent asserts that the instant sub-claim shares the procedural posture of the previous sub-claim (Return of Writ, Doc. No. 21 at 94), and the record bears that out to the extent Palmer raised the prosecutor's misconduct on direct appeal.[15] (Joint Appendix at 883-890, 905); *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *17-18 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported); *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997). Thus, the claim is, to that extent, preserved for habeas corpus review.

Each of the instances of alleged prosecutorial misconduct underlying the present sub-claim, however, were found to be meritless in their own right in Palmer's third ground for relief, *supra*. For the reasons stated therein, Palmer's trial counsels' objections to the prosecutor's conduct, had they been made, were unlikely to be sustained, or if they should have been, do not result in prejudice sufficient to call into question the jury's sentencing recommendation. Thus, Palmer has failed to

---

[15]In his ineffective assistance of trial counsel assignment of error on direct appeal in the court of appeals, Palmer argued that his counsel were ineffective for not objecting to the prosecutorial misconduct he argued in his assignment of error devoted to prosecutorial misconduct, incorporating it by reference. (Joint Appendix at 905.) There, Palmer raised the same issues as are set forth in his habeas corpus petition under his third ground for relief, sub-claims 3.9, 3.10, and 3.14-17. (Joint Appendix at 883-890.) Although sub-claims 3.9 and 3.10 relate in the third ground for relief to the guilt phase of Palmer's trial, the jurors were instructed to consider "all the evidence" in the mitigation phase, without distinguishing evidence presented in the two phases. (Trial Tr. II at 158, 162, 163.) Consequently, any error from the prosecutor's conduct described in sub-claims 3.9 and 3.10 would necessarily taint the penalty phase as well. Thus, those two sub-claims will be considered along with sub-claims 3.14-17 as underlying Palmer's ineffective assistance of trial counsel claim.

demonstrate how the state court's decision that Palmer's trial counsel were not ineffective was contrary to or an unreasonable application of federal law as set forth by the United States Supreme Court.  Consequently, his ineffective assistance of trial counsel sub-claim 15.15 should be denied.

In sub-claim 15.16, Palmer contends his trial counsel were ineffective in failing to object to erroneous jury instructions respecting the unanimity requirement of any verdict less than death, and that the jury's verdict would be only a recommendation.  (Petition, Doc. No. 15 at 30.)  Respondent appears to contend that Palmer's claim was procedurally defaulted because the state courts relied on an independent and adequate state procedural ground in denying the claim in post-conviction proceedings.   (Return of Writ, Doc. No. 21 at 94-95.)   Palmer raised his trial counsels' ineffectiveness for not objecting to the unanimity instruction on direct appeal, however (Joint Appendix at 905-6), and the court of appeals denied the claim on its merits, *State v. Palmer*, 89-B-28, 1996 WL 495576 at *17-18 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported).  The Ohio Supreme Court did not address the issue.  *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997).  The remainder of the instant sub-claim, that Palmer's counsel were ineffective in failing to object to the characterization of the jury's verdict as a recommendation, was not raised on direct appeal, and is procedurally defaulted.

Ohio law requires a capital jury's sentencing verdict to be unanimous, whether it be for death or one of the life imprisonment options available.  *State v. Monroe*, 105 Ohio St.3d 384, 401, 827 N.E.2d 285 (2005); *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), paragraph ten of the syllabus.  Thus, Palmer's trial counsels' failure to object to the instruction so directing the jury does not constitute ineffective assistance.  Accordingly, Palmer's ineffective assistance of trial counsel sub-claim 15.16 should be denied because part of it is procedurally defaulted, and the

remainder is meritless.

In sub-claim 15.17, Palmer contends his trial counsel provided ineffective assistance when they failed to object to cross-examination of defense witnesses by the prosecutor. (Petition, Doc. No. 15 at 30.) Respondent acknowledges the claim was raised on direct appeal, but appears to contend it was procedurally defaulted by the state post-conviction court's reliance on an independent and adequate state procedural rule in denying the claim. (Return of Writ, Doc. No. 21 at 94.) As the claim was capable of resolution without resort to evidence outside the record, it was properly raised on direct appeal (Joint Appendix at 906), and since the state court of appeals addressed the merits of the claim, *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *17-18 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported), and the Ohio Supreme Court was silent on the issue, *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997), it is properly preserved for federal habeas corpus review.


Palmer's claim is meritless. Each mitigation witness whom the prosecutor cross-examined about the allegations that Palmer had abused his wife or children and had failed to pay child support first testified on direct examination to Palmer's kindness, considerate nature, sweetness, truthfulness, or nonviolent nature. (Trial Tr. II at 20, 22, 24, 28, 31, 38, 45-47, 105, 107-8.) Palmer himself testified on direct examination that he never struck his ex-wife or abused his children. (Trial Tr. II at 68.) Thus, the prosecutor was entitled to cross-examine the witnesses on their direct testimony, Ohio R. Evid. 616(C), and trial counsel was not ineffective for not objecting to the same. Consequently, Palmer's ineffective assistance of trial counsel claim 15.17 should be denied.

In claim 15.18, Palmer contends his trial counsels' failure to object to the introduction into evidence of Cammy Palmer's affidavit constituted ineffective assistance. (Petition, Doc. No. 15 at

30.)  Respondent notes that Palmer raised the claim on direct appeal, but seems to argue it is procedurally defaulted via the state courts' treatment of it in post-conviction proceedings.  (Return of Writ, Doc. No. 21 at 94.)  The record reflects that Palmer did raise the issue on direct appeal (Joint Appendix at 907), and the state court of appeals addressed it on its merits, however briefly, *State v. Palmer*, No. 89-B-028, 1996 WL 495576 at *17-18(Ohio App. 7th Dist. Aug. 29, 1996)(unreported).  The Ohio Supreme Court did not address the issue.  State v. Palmer, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997).  Thus, Palmer's sub-claim is preserved for federal habeas corpus review.

As noted in the immediately previous sub-claim, several defense mitigation witnesses testified to Palmer's kind, non-violent nature.  Toward the end of the mitigation phase, Cammy, Palmer's ex-wife, testified on direct examination that Palmer had never struck her and at least strongly suggested the allegation that Palmer had molested his child was falsely made during the couple's divorce proceedings.  (Trial Tr. II at 107-8.)  The prosecutor confronted Cammy with the affidavit she made in her divorce proceedings during his cross-examination of her (Trial Tr. II at 119-26), after which defense counsel questioned Cammy about the contents of the affidavit (Trial Tr. II at 126-27.)  Because Palmer's direct examination of Cammy invited the prosecutor to impeach her with her prior inconsistent statement, to wit, her divorce affidavit, there was no reason for his trial counsel to object to the prosecutor's use of the affidavit in cross-examining Cammy.  See Ohio R. Evid. 613(B).  Any objection from defense counsel would have been overruled by the state court, and the failure to make an unsustainable objection cannot constitute ineffective assistance of counsel.  Accordingly, Palmer's ineffective assistance of trial counsel sub-claim 15.18 should be denied.

-106-

In sub-claims 15.19 and 15.20, Palmer argues his trial counsels' ineffectiveness is demonstrated by their failure to obtain a mitigation specialist, toxicologist, or pharmacologist to assist in preparing and presenting his mitigation case. (Petition, Doc. No. 15 at 30.) Respondent contends both sub-claims were raised on direct appeal, but argues they have been procedurally defaulted by the state courts' resolution of them in post-conviction proceedings. (Return of Writ, Doc. No. 21 at 94.) Palmer did not, however, raise either sub-claim on direct appeal to the state court of appeals (Joint Appendix at 901-8, 1622-28), but such claims are not generally proper on direct appeal as they require evidence of what additional material might have been presented had counsel obtained the desired experts – evidence that is not, by its nature, in the record. Palmer did raise the claims in his post-conviction petition in the state court (Joint Appendix at 2053), and that court rejected the claim on *res judicata* grounds (Joint Appendix at 2300-01). On appeal from the denial of his request for post-conviction relief, both claims were rejected because Palmer failed to support them with evidence from outside the record that demonstrated the desired experts would have discovered mitigating factors different from those presented at trial. *State v. Palmer*, 90-BA-70, 1999 WL 979228 at *5 (Ohio App. 7th Dist. Oct. 20, 1999)(unreported). The Ohio Supreme Court declined to hear Palmer's further appeal. *State v. Palmer*, 88 Ohio St.3d 1424, 723 N.E.2d 1113 (2000). Since the highest state court to consider Palmer's claims rejected it on an independent and adequate state procedural ground, see Ohio Rev. Code § 2953.21; *State v. Pankey*, 68 Ohio St.2d 58, 59, 428 N.E. 2d 413 (1981); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E. 2d 819 (1980), syllabus, Palmer's sub-claims are procedurally defaulted and not amenable to federal habeas corpus review. Sub-claims 15.19 and 15.20 should be denied.

In sub-claim 15.21, Palmer contends his trial counsel were ineffective for not proffering into

evidence the proposed mitigation testimony of Reverend Bush. (Petition, Doc. No. 15 at 30.) Although Respondent contends Palmer raised the issue in his fourth claim for relief in his post-conviction proceedings, that claim instead related to the trial court's alleged error in refusing to instruct the jurors on the defense of self defense. (Joint Appendix at 2028.) Palmer's ineffective assistance of trial counsel claim advanced in post-conviction does not cite trial counsels' failure to proffer Reverend Bush's proposed testimony into the record as one of the instances of counsels' alleged ineffectiveness. (Joint Appendix at 2052-54.) Palmer does not contest Respondent's position that the instant sub-claim is procedurally defaulted, however, and he does not direct the Court's attention to anything in the record that shows he raised the claim in the state courts at any point in his direct appeals or post-conviction proceedings. (Post-Evidentiary Hearing Brief, Doc. No. 79 at 23-25.) Thus, because the claim was never presented to the state courts, and because a return to state court to pursue a second or successive post-conviction relief petition would no doubt result in the claim's being found to be barred on *res judicata* grounds, the sub-claim 15.21 is procedurally defaulted and should be denied.

In the final sub-claim of his fifteenth ground for relief, sub-claim 15.22, Palmer faults his trial counsel for failing to properly investigate and present mitigating evidence. (Petition, Doc. 15 at 30.) Respondent makes the same procedural default argument here as she did respecting the previous sub-claim (Return of Writ, Doc. No. 21 at 94), and it suffers the same fate. The instant sub-claim is not one that would have been presented on direct appeal as it would necessarily rely upon evidence outside the record for proof. Palmer would therefore had to have raised the claim in his petition for post-conviction relief and to have supported it with documentation identifying mitigation evidence that should have been presented at trial but was not because of his trial counsels'

substandard performance.   In the post-conviction claim for relief devoted to the alleged ineffectiveness of his trial counsel, however, Palmer did not argue that his counsel were ineffective in failing to properly investigate and present mitigation evidence.  (Joint Appendix at 2053-54.) Thus, the instant sub-claim has never been presented to the state courts, and since the claim would undoubtedly be barred on *res judicata* grounds were Palmer returned to state court to pursue a second or successive post-conviction relief petition, the instant sub-claim is procedurally defaulted for habeas corpus purposes.

The Court has considered each of Palmer's ineffective assistance of trial counsel sub-claims and found each to be either procedurally defaulted, meritless, or both.   Moreover, there is no preserved error to cumulate to amount to a violation of federal law as set forth by the United States Supreme Court in *Strickland*, *supra*.   Thus, Palmer's fifteenth ground for relief should be denied.

**Sixteenth Ground for Relief**

In his sixteenth ground for relief, Palmer claims he was denied an effective appeal because the transcript on appeal was incomplete and "alternative devices could not fulfill the same function as a transcript so as to ensure meaningful appellate review."   (Petition, Doc. No. 15 at 31.) Respondent does not argue procedural default even though both state courts reviewing the alleged error cited an arguably adequate and independent state procedural ground in its rejection of the claim.   *State v. Palmer*, 89-B-28, 1996 WL 495576 at *4 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported); *State v. Palmer*, 80 Ohio St.3d 543, 554, 687 N.E.2d 685 (1997)(both observing that Palmer's trial counsel failed to request that off-the-record proceedings be recorded, as required by *State v. Grant*, 67 Ohio St.3d 465, 481-82, 620 N.E.2d 50 (1993)).  As the defense is unadvanced,

this Court turns to the merits of Palmer's claim.

Prior to his direct appeal, or perhaps in the course of his appeal to the intermediate court of appeals, Palmer filed an "Agreed Statement of the Evidence or Proceedings" which purported to reconstruct the unrecorded portions of his trial as thoroughly as possible. (Joint Appendix at 1710-33.)  Defense counsel, the prosecutors in Palmer's case, and his trial judge all participated in creating the agreed statement, but some unrecorded proceedings were impossible to recreate due to the inability of anyone to recall exactly what had transpired in those instances.  *Id*.  Palmer argues that those unrecorded and unrecalled portions of his trial contained prejudicial error of a constitutional dimension, and that as a consequence, his convictions should be reversed. (Traverse, Doc. No. 25 at 80-86.)

"The Federal Constitution imposes on the States no obligation to provide appellate review of criminal convictions."  *Halbert v. Michigan*, ___ U.S. ___, ___, 125 S.Ct. 2582, 2586 (2005), *citing McKane v. Durston*, 153 U.S. 684, 687 (1894).  Where an appeal is taken, however, the Fourteenth Amendment to the United States Constitution guarantees a "certain minimum safeguards necessary to make that appeal 'adequate and effective.'"  *Evitts v. Lucey*, 469 U.S. 387, 392 (1985), *citing Griffin v. Illinois*, 351 U.S. 12, 20 (1956).  The Sixth Circuit Court of Appeals has elaborated on an appellant's due process right to an adequate and effective appeal once a state has provided for such proceedings:

> Lower courts, interpreting *Griffin* and *Norvell* [*v. Illinios*, 373 U.S. 420 (1963)] in the context of cases where transcripts were simply missing, have held that the [F]ourteenth [A]mendment does not require a word-by-word transcript where the production of such is impossible and the failure to produce the transcript is not invidiously motivated.  *See United States ex rel. Smart v. Pate*, 318 F.2d 559 (7th Cir. 1963); *United States ex rel. Hunter v. Follette*, 307 F.Supp. 1023 (S.D.N.Y.), *aff'd*, 420 F.2d 779 (2nd Cir. 1969), *cert. denied*, 397 U.S.

1067 (1970). We agree with these decisions and hold that in this case, where the defendant's trial attorney communicated with his appellate attorney, the absence of the jury instruction transcripts is not a *per se* denial of his due process right to a fair appeal.

Instead, in order to demonstrate denial of a fair appeal, [P]etitioner must show prejudice resulting from the missing transcripts. *See, e.g., Mitchell v. Wyrick*, 698 F.2d 940, 942 (8th Cir.), *cert. denied*, 462 U.S. 1135 (1983); *United States ex rel. Cadogan v. LaVallee*, 428 F.2d 165, 168 (2nd Cir.[1970]), *cert. denied*, 401 U.S. 914 (1971). Although this court recognizes the difficulty in demonstrating prejudice where the transcripts are missing, [P]etitioner must present something more than gross speculation that the transcripts were requisite to a fair trial.

In this case, [P]etitioner is able only to note that errors have frequently been found in the instructions for felony murder trials, and so a reversible error might have occurred at his trial. His trial attorney, however, was unable at the state evidentiary hearing to recall his specific objections to the jury instructions, and his testimony indicated that any such objections were not among the issues he considered to be especially relevant to an appeal. In these circumstances, an inference that prejudice resulted from the missing transcripts would simply be too farfetched. Any time a page is missing from a transcript we cannot assume that reversible error may have been reflected on that page, but rather some modicum of evidence must support such a conclusion. This is especially true when a defendant's trial attorney has communicated with his appellate attorney, and so it seems unlikely that an error was vital to a direct appeal yet was ignored. *See Norvell*, 373 U.S. at 424. Accordingly, we hold that [P]etitioner's due process right to a fair appeal has not been denied by the absence of his jury instruction transcripts.

*Bransford v. Brown*, 806 F.2d 83, 85-86 (6th Cir. 1986).

In Palmer's case, the trial court, prosecutors, and defense counsel all participated in reconstructing the unrecorded portions of the trial. (Joint Appendix at 1710-33.) In addition, Palmer's appellate counsel has indicated that they went "to great lengths to complete the record in this case," including conversations and correspondence with Palmer, Palmer's family, all trial

-111-

counsel, the trial judge, and the court reporter.  (Joint Appendix at 793.)  Appellate counsel also "searched the clerks's office for missing items, filed numerous pleadings with the [state court of appeals] and the trial court suggesting the incomplete record and seeking review and correction through hearings and otherwise."  *Id*.  Thus, Palmer's case cannot be distinguished from *Bransford*, *supra*, except to say that Palmer's appellate counsel went beyond the consultation with trial counsel that appellate counsel engaged in in *Bransford*.  Palmer's argument that state law requires recording of literally all proceedings in serious offense cases (Traverse, Doc. No. 25 at 82) does not address the issue presented in habeas corpus, that is, whether the same is required by the United States Constitution, and thus does not overcome the obstacle of *Bransford v. Brown*, 806 F.2d 83 (6th Cir. 1987).

The state courts found Palmer had not demonstrated prejudice from the absence of a transcript of the unrecorded portions of his trial.  *State v. Palmer*, 89-B-28, 1996 WL 495576 at *4 (Ohio App. 7th Dist. Aug. 29, 1996)(unreported); *State v. Palmer*, 80 Ohio St.3d 543, 553-60, 687 N.E.2d 685 (1997).  Palmer does not argue that the state courts' conclusions are contrary to or an unreasonable application of federal law as articulated by the United States Supreme Court.  Instead, he states in conclusory fashion that "[a] decision of the [s]tate [c]ourt of [a]ppeals and Ohio Supreme Court to the contrary [of *Griffin v. Illinois*, 351 U.S. 12 (1956)] is contrary to an unreasonable application [sic] of this United States Supreme Court precedent and its progeny."  (Traverse, Doc. No. 25 at 86.)  That disjointed sentence is the only mention Palmer makes of the standard under which this Court must evaluate his claim in the body of his argument for his sixteenth ground for relief.  In his argument, he relies primarily on state law (Traverse, Doc. No. 25 at 82-83) and circuit court cases that are distinguishable from his, *United States v. Smith*, 787 F.2d 111 (3d Cir.

1986)(addressing the public's right of access to transcript of sidebar conversation under the First Amendment); *United States v. Piascik*, 559 F.2d 545 (9th Cir. 1977)(relying on a federal statutory right to recorded proceedings rather than the federal constitution); *United States v. Selva*, 559 F.2d 1303 (5th Cir. 1977)(same); *United States v. Upshaw*, 448 F.2d 1218 (5th Cir. 1971)(same); *United States v. Workcuff*, 422 F.2d 700 (D.C. Cir. 1970)(same), (Traverse, Doc. No. 25 at 82, 84). Consequently, Palmer has not demonstrated entitlement to habeas corpus relief on his sixteenth ground for relief, and it should accordingly be denied.

**Seventeenth Ground for Relief**

In his seventeenth ground for relief, Palmer contends his appellate counsel ineffectively represented him in his direct appeal. (Petition, Doc. No. 15 at 31-37.) Respondent argues Palmer's claim is procedurally defaulted since he never raised the issue on direct appeal or in his post-conviction proceedings. (Return of Writ, Doc. No. 21 at 114.) Palmer makes no argument at all as to the procedural posture or substance of his ineffective assistance of appellate counsel claim in his traverse.

The Court observes that Ohio has only one procedural process available for pursuing ineffective assistance of appellate counsel claims: Ohio R. App. Proc. 26(B). The Ohio Supreme Court has explicitly rejected the notion that such claims are properly raised in a post-conviction petition, *State v. Murnahan*, 63 Ohio St.3d 60, 65-66, 584 N.E. 2d 1204 (1992), and since that court has also recognized that an attorney cannot be expected to raise his or her own ineffectiveness, the direct appeal process is practically foreclosed as a forum for advancing ineffective assistance of appellate counsel claims as well. *See State v. Gumm*, 103 Ohio St.3d 162, 163, 814 N.E.2d 861

(2004)(observing in the 26(B) context that "'counsel cannot be expected to argue their own ineffectiveness,'" *citing State v. Davis*, 86 Ohio St.3d 212, 214, 714 N.E.2d 384 (1999)).  Thus, the only process available for raising ineffective assistance of appellate counsel claims in Ohio is Rule 26(B).

Palmer filed a request for leave to pursue reopening under Ohio App. R. Proc. 26(B), and for appointment of counsel to review the case and determine if there were any valid reasons for reopening his appeal on November 12, 1996.  (Joint Appendix at 2629-33.)  At the time, Palmer was still represented by the same counsel who represented him in his direct appeals, Ken Murray and Nathan Ray.  That motion was dismissed by the court of appeals on jurisdictional grounds.  (Joint Appendix at 2653-54.)

On August 28, 2000, Palmer filed an application to reopen his direct appeal in the state court of appeals, arguing that his appellate counsel were ineffective for a variety of reasons.  (Joint Appendix at 2667.)  The court of appeals rejected Palmer's application as untimely, finding that Palmer had failed to demonstrate good cause for his failure to file his application within the time allowed by Ohio R. App. Proc. 26(B).  (Joint Appendix at 2686-87.)  When Palmer appealed the appellate court's decision to the Ohio Supreme Court, that court acknowledged the appellate court's reliance on a procedural rule, but nevertheless addressed the merits of Palmer's application.  *State v. Palmer*, 92 Ohio St.3d 241, 243, 749 N.E.2d 749 (2001).  The court concluded that Palmer had "failed to raise 'a genuine issue as to whether he was deprived of the effective assistance of counsel on appeal.'"  *Id*.  In bypassing the court of appeals' denial of Palmer's application on procedural grounds and considering the merits of Palmer's claim, the Ohio Supreme Court forgave Palmer's procedural default of his ineffective assistance of appellate counsel claim.  It is consequently

-114-

amenable to habeas corpus review.[16]

Nevertheless, several of Palmer's ineffective assistance of appellate counsel sub-claims are meritless as the alleged errors Palmer claims his appellate counsel should have raised on direct appeal rely on evidence outside the record for their success. In sub-claim 17.1 (See Report and Recommendations, Doc. No. 50 at 7-8 (specifying numbering system for sub-claims in Palmer's petition)), for instance, Palmer contends his appellate counsel were ineffective for not raising as error on direct appeal trial counsels' failure to proffer into the record the proposed testimony of Reverend Bush. (Petition, Doc. No. 15 at 31; *see* Third and Fifteenth Grounds for Relief, *supra*.) To prove prejudice from trial counsels' alleged error, Palmer would have had to present some evidence that Reverend Bush's testimony would likely have had a positive impact (from his point of view) on the jury's sentencing recommendation. Since that evidence would be outside the record in the court of appeals, the claim would not be one that could properly be raised on direct appeal, and could only have been raised in Palmer's post-conviction proceedings, and supported by evidence outside the record. *See State v. Pankey*, 68 Ohio St.2d 58, 59, 428 N.E. 2d 413 (1981); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E. 2d 819 (1980), syllabus; Ohio Rev. Code § 2953.21; Ohio R. App. Proc. 9(A); 12(a)(1)(b); 16(A)(3); 16(D). Thus, appellate counsel cannot have been ineffective in failing to raise a claim of error in a proceeding in which the claim was doomed to fail.

The following additional sub-claims are meritless for the same reason:

Sub-claim 17.3:    Alleging appellate counsel were ineffective for not raising as error on appeal that the extensive media coverage tainted Palmer's

___

[16]Respondent argues in her Return of Writ that all of Palmer's ineffective assistance of appellate counsel claims are procedurally defaulted because they were never raised in the state courts. (Doc. No. 21 at 114.) Palmer has since litigated his Ohio R. App. Proc. 26(B) application and has thereby preserved his ineffective assistance of appellate counsel claim. (Doc. No. 100.)

trial; this sub-claim necessarily relies upon
evidence outside the record, to wit, the
newspaper articles;

Sub-claim 17.7:        Alleging appellate counsel were ineffective
for not raising as error on appeal the denial of
an expert in drug/alcohol abuse in the
mitigation phase; this sub-claim necessarily
relies upon evidence showing what the expert
would have testified to for proof of prejudice;

Sub-claim 17.11:       Alleging appellate counsel were ineffective
for not raising as error on appeal the trial
court's failure to make a visual aid used by
the prosecutor in the mitigation a part of the
record; this sub-claim necessarily relies upon
evidence outside the record, namely, the
visual aid;

Sub-claim 17.12:       Alleging appellate counsel were ineffective
for not raising as error on appeal trial
counsels' ineffectiveness in failing to present
all mitigation evidence; this sub-claim
necessarily relies upon evidence outside the
record, that being the allegedly missing
mitigation evidence;

Sub-claim 17.13:       Alleging appellate counsel were ineffective
for not raising as error on appeal trial
counsels' ineffectiveness for failing to
request, and the trial court's failure to appoint
a social worker to assist in the mitigation
phase of Palmer's trial; this sub-claim
necessarily relies on evidence outside the
record, specifically what evidence the social
worker would have found that would
demonstrate prejudice from the trial court's,
trial counsels', and appellate counsels' alleged
errors.

(Petition, Doc. No. 15 at 31-33, 35-36.)  As each of the sub-claims discussed above could only be

properly raised in Palmer's post-conviction proceedings where supplementation of the record is not

only permitted, but required, his appellate counsel were not ineffective for failing to raise the alleged

errors on direct appeal.  As such, each of the sub-claims above should be denied.

In his remaining sub-claims under his seventeenth ground for relief, Palmer makes

allegations of error on his appellate counsels' part in his petition and post-evidentiary hearing brief.

The Court addresses each in turn, but first observes that the standard for reviewing ineffective

assistance of appellate counsel claims has been concisely set forth by the Sixth Circuit as follows:

> In order to succeed on a claim of ineffective assistance of appellate
> counsel, a petitioner must show errors so serious that counsel [were]
> scarcely functioning as counsel at all and that those errors undermine
> the reliability of the defendant's convictions. *Strickland v.
> Washington*, 466 U.S. 668, 687 (1984); *Rust v. Zent*, 17 F.3d 155,
> 161-62 (6th Cir. 1994).  Strategic choices by counsel, while not
> necessarily those a federal judge in hindsight might make, do not rise
> to the level of a Sixth Amendment violation. *Jones v. Barnes*, 463
> U.S. 745, 750-54 (1983).

*McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).

In sub-claim 17.2, Palmer contends his appellate counsel were ineffective because they failed

to raise as error on direct appeal the prosecutor's reference to the Bible in arguing for the death

penalty at the close of the penalty phase of the trial.  (Petition, Doc. No. 15 at 32; Post-Evidentiary

Hearing Brief, Doc. No. 79 at 46-48.)  The substance of Palmer's argument on this sub-claim,

however, relates to the prosecutor's alleged denigration of the witnesses offered by Palmer in the

mitigation phase.  (Post-Evidentiary Hearing Brief, Doc. No. 79 at 47-48.)  As such, Palmer has not

persuaded this Court that an assignment of error premised on the prosecutor's very mention of the

Bible in his closing argument would have had any likelihood of success on direct appeal.

Consequently, Palmer's ineffective assistance of appellate counsel sub-claim 17.2 should be denied.

In sub-claim 17.4, Palmer contends his appellate counsel were ineffective when they failed

to raise as error on direct appeal juror bias. (Petition, Doc. No. 15 at 32.) Palmer raised the claim as one exemplifying his appellate counsels' ineffectiveness in his application to reopen his direct appeal in the state court of appeals (Doc. No. 100 at 2672), so it is preserved for habeas corpus relief. It is, however, unavailing. The substance of the underlying claim were discussed in the course of this Court's consideration of Palmer's fourteenth ground for relief (claiming extensive pretrial publicity tainted the jury) and sub-claim 15.5 of his fifteenth ground for relief (claiming ineffective assistance of trial counsel because they did not file a motion for a change of venue), *supra*. To summarize, the Court observed that Palmer failed to demonstrate the allegedly biased juror had formed an opinion the strength of which would preclude his impartiality in determining Palmer's guilt or the appropriate sentence. In addition, the juror never indicated what the opinion was that he had initially formed so it is impossible to know whether the juror's initial opinion was damaging to Palmer or beneficial. Finally, Palmer ignored the juror's rehabilitation following his admission that he had "initially" formed an opinion about the case based upon news reports. Since the claim underlying Palmer's ineffective assistance of appellate counsel sub-claim 17.4 is not so strong that it can be said to undermine the reliability of Palmer's convictions, the instant sub-claim should be denied.

In sub-claim 17.5, Palmer contends his appellate counsel were ineffective when they failed to raise as error on direct appeal trial counsels' withdrawal of their previously filed motion to suppress Palmer's statements to police. (Petition, Doc. No. 15 at 33.) Palmer has withdrawn this sub-claim, so this Court has no reason to address it. (Post-Evidentiary Hearing Brief, Doc. No. 79 at 49.

In sub-claim 17.6, Palmer contends his appellate counsel rendered ineffective assistance

when they failed to raise as error on direct appeal the trial judge's faulty instruction on the element of specific intent.  (Petition, Doc. No. 15 at 33.)  The issue was presented to the state court of appeals in Palmer's Ohio R. App. Proc. 26(B) application to reopen his direct appeal.  In his post-evidentiary hearing brief, however, Palmer instead argues that his appellate counsel were ineffective for not raising as error on direct appeal defects in the indictment, which he contends did not include specific intent as an element of the charged offenses.  (Doc. No. 79 at 50-53.)  Palmer never attacked his appellate counsels' effectiveness on that basis in his Ohio R. App. Proc. 26(B) application to reopen his direct appeal, consequently if that is Palmer's argument, it is procedurally defaulted

As for the claim actually presented here, specifically, that Palmer's appellate counsel were ineffective for not raising as error the trial judge's incomplete instructions on the element of specific intent, the underlying claim was indeed presented on direct appeal as Palmer's seventh assignment of error in the court of appeals.  (Joint Appendix at 837-40; see also Sixth Ground for Relief, *supra*.)  The claim was rejected by the appellate court on an independent and adequate state procedural ground, that being that Palmer's trial counsel had not lodged a contemporaneous objection to the allegedly faulty jury instruction.  *State v. Palmer*, No. 89-B-28, 1996 WL 495576 at *9 (Ohio App. 7th Dist. Aug. 239, 1996)(unreported).  Because Palmer's appellate counsel actually raised the claim he now contends they did not, his ineffective assistance of appellate counsel sub-claim 15.6 should be denied.

In sub-claim 17.8, Palmer argues that his appellate counsel were ineffective when they failed to raise as error on direct appeal the jury's consideration of multiple specifications arising from an indivisible course of conduct.  (Petition, Doc. No. 15 at 34.)  Palmer has withdrawn the sub-claim because the record reflects that appellate counsel did indeed raise the issue on direct appeal in the

state courts. (Post-Evidentiary Hearing Brief, Doc. No. 79 at 54-55.)

In sub-claim 17.9, Palmer argues that a change in Ohio's death penalty statutes creating the possibility for a sentence of life without parole, which came into effect when Palmer's case was in the state courts on direct appeal, should have been applied to his case via the rule of lenity. (Petition, Doc. No. 15 at 34; Post-Evidentiary Hearing Brief, Doc. No. 79 at 55.) *See* Ohio Rev. Code 2901.04. The rule of lenity, however, is not a rule of retroactivity, and Palmer does not cite any law for the proposition that it does or should function as such. Palmer has not demonstrated his appellate counsels' ineffectiveness related to his contention, and his ineffective assistance of appellate counsel sub-claim 17.9 should therefore be denied.

In sub-claim 17.10, Palmer argues his appellate counsels' ineffectiveness for their failure to object to the jury instruction which characterized the jury's recommendation as just that, a recommendation. (Petition, Doc. No. 34-35; Post-Evidentiary Hearing Brief, Doc. No. 79 at 55-56.) The identical argument has repeatedly and consistently been rejected by Ohio courts and Palmer provides no basis upon which to imagine the outcome of his claim, had it been advanced on direct appeal, would have been different. *See State v. Monroe*, 105 Ohio St.3d 384, 394, 827 N.E.2d 285 (2005); *State v. Skatzes*, 104 Ohio St.3d 195, 226, 819 N.E.2d 215 (2004); *State v. Robb*, 88 Ohio St.3d 59, 84, 723 N.E.2d 1019 (2000); *State v. Clemons*, 82 Ohio St.3d 438, 444, 696 N.E.2d 1009 (1998); *State v. Carter*, 72 Ohio St.3d 545, 559, 651 N.E.2d 965 (1995). Accordingly, Palmer's ineffective assistance of appellate counsel sub-claim 17.10 should be denied.

In sub-claim 17.14, Palmer contends his appellate counsel were ineffective when they failed to raise as error on direct appeal a jury instruction that purportedly urged the jurors to consider that Palmer was both the principal offender in the murders and that he committed the murders with prior

calculation and design in weighing the aggravating circumstances and mitigating factors. (Petition, Doc. No. 15 at 36-37; Post-Evidentiary Hearing Brief, Doc. No. 79 at 58-59.) Aside from the fact that there was no contemporaneous objection by trial counsel that would have preserved the alleged error for appellate review, the record shows that the principal offender and prior calculation and design language in the instructions identifies the two concepts as alternative to one another, and was not intended to be cumulated as Palmer posits. (Trial Tr. II at 158-63.) Consequently, Palmer's ineffective assistance of appellate counsel sub-claim 17.14 lacks merit and should be denied.

In his fifteenth and final sub-claim of his seventeenth ground for relief, Palmer argues his appellate counsel were ineffective by not raising as error on direct appeal (presumably to the Ohio Supreme Court, although Palmer does not say) the court of appeals' error on direct appeal in its independent weighing of the aggravating circumstances and mitigating factors. (Petition, Doc. No. 15 at 37; Post-Evidentiary Hearing Brief, Doc. No. 79 at 59-60.) In his argument, Palmer hinges the success of the instant sub-claim to that of sub-claim 17.7, *supra*, which, it is recalled, is a claim that could not have been brought on direct appeal as it would necessarily have relied upon evidence from outside the record for its proof. In other words, Palmer claims the court of appeals' independent reweighing of the aggravating circumstances and mitigating factors in Palmer's case was problematic because the court of appeals did not have before it the additional mitigating evidence that should have been presented during the trial but was not. But that evidence, even if it were substantial, could never be considered by the court of appeals, absent a new penalty hearing which would allow its introduction into the record in the new hearing. Palmer's claim misunderstands a fundamental characteristic of the direct appeal process, and that is that no new material may be added to the record for consideration by a reviewing court on direct appeal. Thus,

his ineffective assistance of appellate counsel sub-claim 17.15 fails, and its denial is recommended.

**Eighteenth Ground for Relief**

In his eighteenth ground for relief, Palmer contends that the cumulative effect of the previous seventeen grounds for relief amount to a deprivation of his right to a fair trial.  (Petition, Doc. No. 15 at 37.)  Several of Palmer's claims have been procedurally defaulted; others have been found meritless, and others have been abandoned for Palmer's failure to argue them.  Remaining error, if any, does not cumulate to constitute deprivation of a federal constitutional right.  Consequently, Palmer's eighteenth ground for relief should be denied.

## Conclusion

For the foregoing reasons, and having found no ground upon which to grant relief, the Magistrate Judge recommends that Donald Palmer's petition for habeas corpus relief be DENIED.

December 16, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

J:\Death Penalty\Palmer v. Bagley\Palmer v Bagley R&R.wpd