defense at the guilt phase by implying that the same result necessarily would obtain at the penalty phase. The Court found that, in spite of appropriate instructions from the Court, prosecutor's misstatement of the law in this regard was in error. The Court found that the statement could reasonably have mislead the jury into believing that the juror's determination of the existence of a mental disorder as a defense of the guilt phase had to be considered the same during the sentencing phase. The Court therefore reversed the convictions. Consequently, even if this Court finds that the jury instructions regarding the burden of proof during the mitigation phase were accurate statements of the law, it should nevertheless vacate the death sentence in light of the prosecutor's repeated misstatements to the jury suggesting that it was defendant's burden to prove that the mitigating circumstances outweigh the aggravating factors. *Id*. Due process demands no less.

For the most part the Magistrate Judge concludes that any misstatements by the prosecutor would have been remedied by jury instructions or were not otherwise a violation of clearly established federal law. Overlooked, however, is the confusion that these repeated misstatements of the law necessarily caused the jury. The jury would have

every reason to rely on the prosecutor's statement of what the law was.  In

*Mills v. Maryland,* 486 U.S. 384 (1988) the Supreme Court makes it very

clear that conducting a penalty phase trial in such a way as to mislead or

even confuse a jury as to the law it must follow in deciding whether a

sentence of death is to be imposed constitutionally taints the that phase

and requires reversal of a death sentence.  *Id.* 384.  Although the Court

was addressing  an Court's instruction regarding unanimity, the same

concerns which caused reversal there apply with equal force here.  The

prosecutor's repeated misstatements regarding the law that must be

followed in the sentencing phase of Petitioner's case occasioned the same

constitutional harm that required reversal in *Mills.*  The same result must

obtain in this case. The decision of the Ohio Supreme Court and Court of

Appeals was contrary to and an unreasonable application of established

Supreme Court precedent.  Accordingly, the writ should issue as to these

claims .

## F.    The State Courts' Approval of the Prosecutor's Trial Misconduct Violated Clearly Established Supreme Court Authority And Cannot be Characterized as Harmless

With respect to improper testimony, questions, and argument the

relevant inquiry "is whether the prosecutor's comments `so infected the trial

with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974).  There can be little doubt that the prosecutor's conduct eliciting irrelevant and immaterial, incompetent and utterly speculative highly prejudicial testimony regarding Petitioner's character and propensities, and other acts for which he was not charged, clearly "infected the trial with unfairness" in such a way as to deny him due process of law under *Darden*.  These were not isolated efforts on the part of the prosecutor.  They were peppered throughout the entire guilt phase of the proceedings in state court, and were done clearly with the intent to convict Mr. Palmer, at least in substantial part, for not what he actually did in the case at bar, but for his "evil character" that the prosecutor unfairly painted through speculation, unsupported opinion and prejudicial inferences.

In *Kincaid v. Sparkman*, 175 F.3d 444 (6th Cir. 1999), the Court of Appeals held that in a burglary prosecution, a prosecutor's comments about the defendant's prior numerous acts of burglary and implied involvement in a series of offenses warranted granting habeas corpus relief.  The Court found that the prosecutor's comments constituted more

than simply error under state law.  Rather, these prejudicial acts on the part of the prosecutor constituted misconduct that was fundamentally unfair and thus denied petitioner Due Process.  In so holding, the Court looked at the degree to which the prosecutor's comments and remarks had a tenancy to mislead the jury into prejudice against the defendant; the extent to which the prosecutor's misconduct was isolated or extensive; and whether they were deliberate or accidental efforts to place improper information before the jury.  *Id*. at 446.  In that case, the Sixth Circuit found Due Process violations where the prosecutor, although making his comments within a relatively short period of time, conveyed to the jury the prosecutor's contention that the defendant was a "professional burglar" and reminded the jury that there had been several other burglaries around the county.

As demonstrated above, the prosecutor in this case painted a similarly improper picture of Defendant Palmer with his efforts to persuade the jury that Mr. Palmer was out to rob and kill virtually everyone in his path including the gas station attendants, Mr. Kiss, and Mr. Goolie.  Unlike the prosecutor in the *Kincaid* case where the Sixth Circuit held that the prosecutor's remarks required granting of the writ, the prosecutor in Mr.

Palmer's case egregiously peppered the entire trial phase with evidence of other bad acts allegedly contemplated or committed by the Defendant. Like the prosecutor's conduct in *Kincaid*, the misconduct and comments of the prosecutor in this case were clearly deliberate and require granting of the writ.

In *McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993), the Court of Appeals concluded that the prosecutor admitted a substantial amount of evidence of "other acts" that was "probative only of character . . . ." *Id*. at 1384. The Court concluded that "this evidence . . . was not relevant to the question before the jury. It served only to prey on the emotions of the jury, to lead them to mistrust McKinney, and to believe more easily that he was the type of son who would kill his mother in her sleep without much apparent motive." *Id.* at 1385. The Court concluded that the admission of other acts evidence deprived the criminal defendant of a fair trial and violated his right to due process. Accordingly, the Court granted the writ. It is clear, therefore, that the prosecutor's misconduct throughout the guilt phase of his trial violated Petitioner's fundamental right to due process and entitles Petitioner to the granting of the writ.

Even where the evidence of guilt is strong, the Sixth Circuit Court of

Appeals has held that the accumulative effect of prosecutorial misconduct throughout trial proceedings can warrant a new trial.  "The prosecutor here simply failed in her duty to `refrain from improper methods' and did so pervasively and repeatedly, presenting to the jury without substantiated arguments, implicit opinions and conclusory assertions.  Although the individual review of each remark or other separate sets of remarks . . . are not as severe, our review of all the statements through the whole trial compels us to remand these cases for new trials."  *United States v. Francis*, 170 F.3d 546, 553 (6th Cir. 1999).  The fundamental unfairness present in the trial in *Francis* is clearly present in the instant case and requires granting of the writ.  See also *Floyd v. Meachum*, 907 F.2d 347 (2nd Cir. 1990), where the Court held that the accumulative effects of the state prosecutor's improper remarks and summation warranted the granting of the habeas corpus relief.  This misconduct included both inflammatory comments, erroneous statements of law and diverting the jury's attention from charges on which the defendant was actually being tried.  These acts of misconduct, therefore, cannot in anyway be considered harmless

Additionally, the prejudicial effect of the misconduct discussed above

59

is heightened by the trial court's  instruction to the jury to consider all the

evidence from the guilt phase in its deliberations during the penalty phase.[1]

The prosecutorial misconduct committed during the first phase of the

proceedings necessarily carries over to, and infects the penalty phase.

Moreover, these constitutional violations are compounded during the

penalty phase by the prosecutors ongoing pattern of misconduct, as

established above, whereby his continued efforts to use highly prejudicial

"other acts" evidence and intentionally misled the jury regarding the law to

be applied.

     This court cannot look in isolation at each act of misconduct to

determine whether it independently constitutes harmless error.  Rather, it is

the cumulative effect of all incidents of prosecutorial misconduct that must

guide this court's review of the record. *Berger v. U.S.,* 295 U.S.  at 89;

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986), The misconduct here has

"so infected the trial with unfairness as to make the resulting conviction a

denial of due process.'" *Darden v. Wainwright*, 477 U.S. at 181 , quoting

*Donnelly v. DeChristoforo,* 416 U.S. 637 (1974). Such a review compels

the conclusion that the prosecutorial misconduct here may not be

_____

[1]See Joint Appendix Vol. IV, Mitigation Trial Tr.  pp. 159-160.

constitutionally considered harmless. To the contrary the misconduct described above establishes that petitioner was denied a fundamentally fair trail and sentencing. Petitioner has thus established his entitlement to a writ of habeas corpus with respect to his Third Claim for Relief.

3.    **FOURTH CLAIM FOR RELIEF: PETITIONER OBJECTS TO THE MAGISTRATE JUDGE'S RECOMMENDATION DENYING RELIEF REGARDING THE STATE COURT'S DENYING INSTRUCTION ON A LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER AS THE STATE COURT'S HOLDING WAS CONTRARY TO OR AN UNREASONABLE APPLICATION OF THE CONCLUSION OF THE LAW ANNOUNCED BY THE UNITED STATES SUPREME COURT IN *HOPPER V. EVANS*, AND THEREBY DEPRIVED PETITIONER OF HIS RIGHT TO DUE PROCESS OF LAW AND HIS RIGHT TO BE PROTECTED AGAINST CRUEL AND UNUSUAL PUNISHMENT AS GUARANTEED BY THE CONSTITUTION OF THE UNITED STATES.**

Prior to the charge to the jury at the guilt phase, counsel for Defendant requested an instruction on the lesser included offense of involuntary manslaughter. The request was denied and the objection to its exclusion was overruled. (Joint App. IV, Tr. p. 1203). This ruling, affirmed by Ohio's Appellate and Supreme Courts, deprived Plaintiff of his rights to due process and is contrary to and constitutes an unreasonable application of federal law as announced by the United States Supreme Court.

A.    **Magistrate Judge's Decision**

61

The Magistrate Judge recommends rejecting this claim concluding that the evidence "negates his claim the he did not intend to kill Sponhaltz and Vargo" and, thus, the Ohio Supreme Court rejection of a lesser included offense instruction for involuntary manslaughter "was not objectively unreasonable." (Doc. 103, p. 60). Petitioner demonstrates below that this recommendation is in error.[2]

## B.     Petitioner is Entitled to Relief

It is axiomatic that a sentence of death may not be constitutionally imposed after a jury verdict of guilt of a capital offense when the jury was not permitted to consider a verdict of guilty of a lesser included non-capital offense where the evidence would support such a verdict. *Beck v. Alabama*, 447 U.S. 625 (1980). The Supreme Court explained the constitutional importance of this principle.

> [P]roviding the jury with the `third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard . . . . but a defendant is entitled to a lesser offense instruction–in this context or any other–precisely because he should not be exposed to the substantial risk that the jury's practice will diverge

---

[2] This Court has previously found that this ground has not been procedurally defaulted. (Decision, Doc. 61, adopting Report and Recommendation, Doc. 50, where the Court found that no procedural default defense had been raised as to this Claim for Relief. (Doc. 50, p.10). And see Doc. 103, p. 57.

> from theory.  Where one of the elements of the
> offense charged remains in doubt, but the
> Defendant is plainly guilty of some offense, the jury
> is likely to resolve its doubts in favor of conviction.
> (Citations and internal quotes omitted).

*Id.*, 447 U.S. at 634.  The Supreme Court in *Beck* emphasized the

fundamental nature of this constitutional protection.

> That [procedural] safeguard would seem to be
> especially important in a case such as this.  For
> when the evidence unquestionably establishes that
> the defendant is guilty of a serious, violent
> offense–but leaves some doubt with respect to an
> element that would justify conviction of a capital
> offense–the failure to give the jury the `third option'
> of convicting on a lesser included offense would
> seem inevitably to enhance the risk of an
> unwarranted conviction.  ***Such a risk cannot be
> tolerated in a case in which the defendant's life
> is at stake*** . . . .

> To ensure that the death penalty is indeed imposed
> on the basis of `reason rather than caprice or
> emotion' we have invalidated procedural rules that
> tended to diminish the liability of the sentencing
> determination.  The same reasoning must apply to
> rules that diminish the reliability of the guilt
> determination.  ***Thus, if the unavailability of a
> lesser included offense instruction enhances
> the risk of an unwarranted conviction, [the
> state] is constitutionally prohibited from
> withdrawing that option from the jury in a
> capital case.***  (Emphasis added).

*Id.*, 447 U.S. at 637-638.

63

The Magistrate Judge recommends denial of this claim finding that the evidence prevents a rational juror from finding a lack of purpose. The Magistrate Judge concludes this by incorrectly finding that only Petitioner's evaluation of the evidence would support this defense and further relies on the evidence supporting an aggravated murder verdict. (Doc. 103, p. 60). In so finding the Magistrate, like the state courts, fails to properly apply the Supreme Court's decision in *Beck v. Alabama*, 447 U.S. 625(1980) and *Hopper v. Evans*, 456 U.S. 605 (1982).

In *Hogan v. Gibson,* 197 F.3d 1297 (10th Cir. 1999), faced with facts of "purposeful intent" more compelling than those in this case, the Tenth Circuit held that the state courts failed to properly apply *Beck* in rejecting the petitioner's appeal on the issue of failure to instruct on a lesser included offense of first degree manslaughter. In *Hogan,* the record showed the defendant inflicted 20 separate stab wounds in killing his girlfriend.

In Ohio, under ORC 2945.74 and Crim. R. 31(C), the jury is permitted to consider three categories of lesser included offenses on which, when supported by evidence presented at trial, it must be charged: (1) attempts to commit the crime charged, if such an attempt is an offense at law; (2)

inferior degrees of the indicted offense; or (3) lesser included offenses.

*State v. Deem*, (1988), 40 Ohio St.3d 205, syllabus, para. 1.  Under Ohio

law an offense may be considered a lesser included offense where,

> (I) the offense is a crime of a lesser degree than the
> other; (ii) the offense of the greater decree cannot
> be committed without the offense of the lesser
> degree also being committed; and (iii) some
> element of the greater offense is not required to
> prove the commission of a lesser offense.

*State v. Kidder*, (1987), 32 Ohio St.3d 279, syllabus, para. 1.

Involuntary manslaughter, therefore, which can be an aggravated

felony of the first degree, is an offense of a lesser degree than aggravated

murder, a capital offense.  Indeed, as the Ohio Supreme Court has held,

"involuntary manslaughter is a lesser included offense of murder."  *Id*. at

282.  When the defendant offers a defense to certain elements of the

higher offense charged, he is entitled to an instruction on the lesser

included offense.  The defendant need only come forward with "some

evidence" to be entitled to the lesser included offense instruction.  *State v.*

*Jenkins*, (1984), 15 Ohio St.3d 164, 218-219.  As the court in *Jenkins*

noted, the primary difference between involuntary manslaughter and

aggravated murder lies in the defendant's intent.  For involuntary

manslaughter, the killing need only occur as a proximate result of

committing or attempting to commit a felony.  *Id*. citing ORC 2903.04(A).  It is important to remember that "the ***persuasiveness of the evidence regarding the lesser included offense is irrelevant.***" (Emphasis added).  *State v. Wilkins*, (1980), 64 Ohio St.2d. 382, 388.  As the Court in *Wilkins* explained,

> If under ***any reasonable view*** of the evidence ***it is possible*** for the trier of fact to find the Defendant not guilty of the greater offense and guilty of the lesser offense, ***the instruction on the lesser included offense must be given.***  The evidence must be considered in the light most favorable to the defendant.  (Emphasis added).

*Id*.

In Mr. Palmer's case, there can be little doubt that he was entitled to an instruction on the lesser included offense of involuntary manslaughter. As the Court in *Jenkins* noted, the difference between involuntary manslaughter and aggravated murder relates to the degree of intent.  In this case, there was uncontradicted evidence that shortly before the shootings, Mr. Palmer had consumed a half bottle of whiskey or more as he and Eddie Hill drove around the Martin's Ferry area (see for example Tr. p. 1088).  Petitioner offered the corroborating testimony of Nancy Piper, the clerk at the store where Petitioner testified that he bought a fifth of

66

Southern Comfort.  She confirmed that her store did sell two bottles of Southern Comfort on the afternoon of the shootings.  (Joint App. IV, Trial Tr. pp. 1055-1057).  This is consistent with Petitioner's testimony that, during the period of time leading up to the shootings, he purchased a fifth of Southern Comfort from Ms. Piper's martins Ferry liquor store and consumed most of it. (Id. Trail Tr. pp. 1080). Such a consumption of a high volume of alcohol alone should allow for the involuntary manslaughter instruction. *Cf.*, *State v. Emerick,* (Ohio App. 1st Dist. 1995), 108 Ohio App. 3d 401, 406 (affirming involuntary conviction of parent whose  intoxication lead to the death of child) *; and State v. Fyffe,* (Ohio App.3d Dist. 2001) 2001 WL 1187816 (unreported)(defendant indicted for shooting and killing friend while intoxicated).  Where the "jury finds evidence of intoxication beyond mere reduced inhibitions, impaired judgment, or blurred appreciation of defendant's acts exists [it may] consider that the accused's purpose to kill may have been nullified." *State v. Bolden,* (Ohio App. 12th Dist. 1996) 1996 WL 174621. *4 (unreported).  With evidence that he consumed a fifth of whiskey leading up to the shootings, Petitioner was entitled to allow submit that question to the jury, particularly in light of the additional evidence supporting his lack of purposeful intent.  Moreover,

during the period surrounding the shootings Petitioner was also dealing
with cocaine and marijuana use. "the cocine would enhance the situation .
. . and when you didn't have it, you would feel in need of having it." (Trial
Tr. p. 1067).

 For example, there is no contradiction in the record to the testimony
of Mr. Palmer that Mr. Sponhaltz was ranting and raving at Mr. Hill in spite
of Mr. Hill's apologetic demeanor, and that Sponhaltz, in a state of anger,
grabbed Eddie Hill. It was not until that point that Mr. Palmer, with his gun
in his hand, and very intoxicated swung at and hit Mr. Sponhaltz, thereby
discharging his gun into the side of Mr. Sponhaltz's head. In fact, initially,
Mr. Palmer thought he had hit his companion with a gunshot because Mr.
Hill screamed at the time the gun was discharged. Mr. Palmer testified that
he fired again but did not remember pulling the trigger. He described his
state of mind as "mass confusion." (Joint App. IV, Trial Tr. pp. 1093-1095).
Mr. Palmer then, backing up, turned into Mr. Vargo who threw his arms up
either to keep appellant from running into him or to grab him. In his state
of confusion and intoxication and with no time to think, his gun fired again.
Appellant denied any intent to kill or rob the victims. (Joint App. IV, Trial
Tr. pp. 1096-1101). There was no witness who testified to the shootings.

There record is further undisputed that Mr. Palmer knew neither of the victims. All evidence offered by the prosecution as to Mr. Palmer's intent was circumstantial.

It is readily apparently that Mr. Palmer met his burden under Ohio law to offer "some evidence" that he lacked the intent to kill the victims. Again, under Ohio law, the persuasiveness of the evidence offered by the Defendant is irrelevant to his entitlement to a charge on a lesser included offense. *State v. Wilkins*, *supra,* 64 Ohio St.2d. at 388. Mr. Palmer, having come forward with "some evidence" that he lacked purposeful intent to kill his victims, he was constitutionally entitled to an instruction on the lesser included offense of involuntary manslaughter, consistent with Ohio law. *Beck v. Alabama*, 447 U.S. at 634-637.

The Magistrate Judge discounts this claim because the Petitioner "relies upon his own version of events to support his claim . . ." (Doc. 103, p. 60).[3]   The Magistrate Judge, like the Ohio Supreme Court, recount the evidence supporting the aggravated murder charge in rejecting Petitioner's entitlement to a lesser included offense instruction claim. *Palmer v. State*

---

[3]  The Magistrate Judge's reliance on *Campbell v. Coyle,* 260 F.3d 531 (6th Cir. 2001) is misplaced.  Unlike the instant case, in *Campbell* the defendant presented no evidence of intoxication or evidence that he was coming to the defense of a friend.

*of Ohio,* 80 Ohio St. 3d at 562-563; and see Doc. 103, p. 6. But the

analysis for a *Beck* claim must focus on the evidence presented in support

of the involuntary manslaughter instruction.

> Similarly, state appellate court's original conclusion on direct
> appeal that a manslaughter instruction was not necessary
> because there was `sufficient evidence' to support a finding of
> premeditation in the trial record is squarely contrary to the
> holding of *Beck.* (Citation omitted). *Beck,* 447 U.S. at 627, 100
> S.Ct. 2382, requires a court to consider whether there is
> sufficient evidence to warrant instructing the jury on a lesser
> included offense, ***not whether there is sufficient evidence to
> warrant conviction on the greater offense.*** (Emphasis
> added).

*Hogan v. Gibson,* 197 F.3d 1297, 1305 (10th Cir. 1999), cert. denied, 120

S.Ct. 2658. In *Valdez v. Ward*, 219 F.3d 1222 (10th Cir. 2000), the Court

held that a defendant's admission of intent to kill the victim did not

foreclose a jury's consideration of first-degree manslaughter as a lesser

included offense. *Id*. at 1242-1243.[4]

    Contrary to the implication of the Report and Recommendation, the

fact that the lesser included offense instruction is based on Petitioner's

---

[4] And see *Wiggerfall v. Jones*, 918 F.2d 1544 (11th Cir. 1990) (where the court reversed the denial of a habeas corpus petition finding that petitioner's due process rights were violated by the trial court's failure to charge the jury on a lesser included non-capital offense). And see also, *Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3rd Cir. 1988) (where the court reversed the denial of a habeas corpus petition holding that the petitioner's due process rights to a fundamentally fair trial were violated in an aggravated manslaughter conviction case by the trial court's failure to instruct on aggravated assault as a lesser included offense).

own testimony or statement does not obviate the *Beck* requirement of giving the lesser included offense instruction. In *Hogan*, the Court of Appeals specifically reversed the finding of the District Court that the "self serving nature" of the petitioner's statement was insufficient to support a *Beck* instruction. *Id.* at 1310-1311. It is worth emphasizing that in *Hogan*, there was substantial evidence to support the aggravated murder conviction of the habeas petitioner. Indeed, the defendant stabbed and cut the victim more than twenty times in the throat, head, neck, chest, and back. Approximately three of these stab wounds would have been independently fatal. The victim was married but was "friends' with the defendant for several years and saw him outside the husband's presence and without his knowledge. There was evidence that the defendant boasted to the victim and her husband that he was taking a martial arts class where he was learning to use a knife to inflict fatal injuries. *Id.* at 1300-1301. Nevertheless, on the strength of the defendant's confession to police suggesting he acted in the heat of passion, the Tenth Circuit concluded that the state courts' denial of a lesser included manslaughter instruction was contrary to *Beck* and granted the writ. *Id.* at 1307-1308. The Court explained,

71

> Hogan himself confessed to committing a reprehensible act of violence. By denying the jury the option to convict him on a lesser, non-capital offense supported by the evidence, thus leaving only a choice between conviction of capital murder and acquittal, Oklahoma may have "encourage[d] the jury to convict for an impermissible reason-its belief that the defendant is guilty of some serious crime and should be punished." *Beck,* 447 U.S. at 642, 100 S.Ct. 2382. Hogan must, therefore, be retried.

*Id.* at 1312

There is no substantive difference between the facts in *Hogan* and the facts here, except that the nature of the killing in *Hogan* appears even more deliberate and gruesome.

In *Lambright v. Stewart*, 220 F.3d 1022 (9th Cir. 2000), the court granted a certificate of appealability to a habeas corpus petitioner on the issue of the state court's denial of a lesser included instruction. In that case, in spite of a significant amount of evidence against the defendant regarding the issue of purposeful killing, the Court found a basis for providing an instruction on the lesser included offense.

> To be sure, there is substantial evidence in this case indicating that the killing was premeditated. But there is also ***some evidence*** showing that neither petitioner intended to kill the victim. Given the presence of conflicting evidence, . . . we concluded that the issue of whether the trial court violated *Beck* in failing to instruct on a lesser included offense is debatable among jurists of

> reason.  We therefore grant a COA.  (Emphasis
> added).

*Id.* at 1028.

The failure to give a lesser included offense instruction cannot be considered harmless error.  As the Court of Appeals explained in *Hogan,* "a *Beck* error can never be harmless." *Hogan*, 197 F.3d at 1312.  "[T]he jury [in a capital case] must be permitted to consider a verdict of guilt of a noncapital offense 'in every case' in which 'the evidence would have supported such a verdict.' " *Hopper,* 456 U.S. at 610.  Consistent with *Hopper* and *Hogan,* with "some evidence" supporting an involuntary manslaughter as described above, the writ must issue, even should this Court determine that the *Beck* instruction should be available as to only one of the victims.

Petitioner, having offered some evidence that he did not intend to kill Mr. Sponhaltz and Mr. Vargo, was entitled to the lesser included offense instruction.  Consistent with the above authority, the state trial court's failure to instruct on involuntary manslaughter under Ohio law deprived Plaintiff of his due process rights and his protection against cruel and unusual punishment as enunciated in *Beck*.  Given the overwhelming federal precedent supporting this contention, the state court's

73

determination to the contrary constitutes an unreasonable application of the construction of law announced in *Beck* and *Hopper v. Evans*, 456 U.S. 605, 612 (1982). The writ should, therefore, be granted as to this Fourth Claim for Relief.

4. **SIXTH CLAIM FOR RELIEF**: **THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY THAT THEY WERE REQUIRED TO MAKE A SPECIFIC FINDING THAT PETITIONER INTENDED TO KILL THE RESPECTIVE VICTIMS WAS CONTRARY TO OR AN UNREASONABLE APPLICATION OF A CONCLUSION OF LAW ANNOUNCED IN THE UNITED STATES SUPREME COURT CASES OF *UNITED STATES V. GAUDIN* AND *NEDER V. UNITED STATES* AND DEPRIVED PLAINTIFF OF HIS RIGHT TO DUE PROCESS OF LAW AND HIS RIGHT TO BE PROTECTED FROM CRUEL AND UNUSUAL PUNISHMENT UNDER THE UNITED STATES CONSTITUTION.**

The Report and Recommendation incorrectly determined that the trial court's instructions on purpose adequately to conveyed to the jurors that they were required to find that Palmer had the specific intent to cause the deaths of Sponhaltz and Vargo. (R&R, Doc. 103, pp. 61-64).

A. **Procedural Default:**

Petitioner first raised this claim in the Belmont County Court of Appeals as ASSIGNMENT OF ERROR VII. (Joint Appendix pp. 837-850). The state court of appeals found that this claim was subject to plain error

74

analysis since trial counsel failed to raise the issue at trial. (Joint Appendix p. 1349). The state court of appeals found that "[a]ny error that may have been committed was harmless, not plain." (Joint Appendix p. 1350). Palmer raised this issue before the state supreme court as PROPOSITION OF LAW VII. (Joint Appendix pp. 1562-1564). The Ohio Supreme Court found that the issue was previously raised and rejected in other cases or waived. (Joint Appendix Vol.IX, p. 1899). Respondent did not make any express assertion that this claim is procedurally defaulted. (Return pp. 68-70). Therefore, any procedural default defense is waived. See, <u>Gray v. Netherland</u>, 518 U.S. 152, 165-66 (1996).

**B.    Merits:**

Palmer was charged with aggravated murder under O.R.C. § 2903.01(B). To convict, his jury had to find by proof beyond a reasonable doubt that Palmer purposely caused the deaths of Messrs. Sponhaltz and Vargo death during the course of an aggravated robbery or during a course of conduct involving the killing of two or more persons. Moreover, when Palmer was indicted and tried for aggravated murder, the Ohio Revised Code included as an element of aggravated murder the offender's specific intent to kill the victim. See O.R.C. § 2903.01(D). The trial court's

75

instructions on purpose relieved the State of Ohio of its burden of proof on

the mens rea element of O.R.C. § 2903.01(B) and (D).

Following the trial phase, the state trial court instructed the jury, in

pertinent part, as follows:

> Purpose to cause the death of another is an essential element of the crime of aggravated murder.

> A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to cause the death of Charles W. Sponhaltz [and Steven R. Vargo].

> A person acts purposely when the gist of the offense is a prohibition against conduct of a certain nature regardless of what the offender intends to accomplish thereby, if it is his specific intention to engage in conduct of that nature.

> Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct.

> The purpose with which a person brings about a result is determined from the manner in which it is done, the weapon used, and all other facts and circumstances in evidence.

> No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another.

(Joint Appendix Vol.IV, pp. 1207, 1212, 1215, 1220-21, 1227).

The Due Process Clause of the Fourteenth Amendment guarantees an accused that the State must prove each essential element of the crime charged beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). When Palmer was tried, specific intent to kill was an essential element of an Ohio capital offense. O.R.C. § 2903.01(D). See State v. Manes, 484 N.E.2d 140, 146 (1985). See also O.R.C. § 2903.01(B) (defendant must purposely cause victim's death.)  Therefore, Palmer's jury had to unanimously find that Palmer specifically intended to kill  Messrs. Sponhaltz and Vargo death when he fired the gun.

Because the state had to prove the mens rea element of aggravated murder beyond a reasonable doubt, the burden of proof regarding Palmer's purpose or intent to kill could not be shifted to him. See Wilbur v. Mulaney, 421 U.S. 684, 698-701 (1975). A jury instruction which relieves the State of its burden of proof regarding the mens rea element of the offense is unconstitutional. Id. Burden-shifting instructions on the mens rea element of the offense are unconstitutional whether the presumption of the mens rea is conclusive or rebuttable. Francis v. Franklin, 471 U.S. 307, 313, 317-18 (1985); Sandstrom v. Montana, 442 U.S. 510,517-18, 524 (1979). Those bedrock constitutional principles were infringed by the trial court's

77

initial instructions to Palmer's jury.

The trial court's definition of purpose was improper as a matter of state law. Ohio defines "purpose" as follows:

> A person acts purposely when it is his specific intention to cause a certain result, or when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, if it is his specific intention to engage in conduct of that nature.

O.R.C. § 2901.22(A) (emphasis added.) The definition of "purpose" is written in the alternative: A person acts purposely either when he specifically intends to cause a certain result or when the "gist of the offense" is prohibited "conduct" of a certain nature. Id. Both definitions should not be given in a capital case as the comment to the Ohio jury instructions makes clear:

> COMMENT: Section 3 [conduct definition] will be given in rare cases where conduct is prohibited, e.g., Corruption of a minor, R.C. Section 2907.04. The trial bench has been giving both Section 2 and Section 3
> instructions in "result" situations (aggravated murder) and it is both incorrect and confusing.

> Comment, OJI 409.01 (emphasis added.)

The Supreme Court of Ohio has condemned the use of this conduct definition of purpose in capital cases. See State v. Carter, 651 N.E.2d 969, 973-74 (Ohio 1995).

78

The trial court should not have given the "conduct" definition of purpose in this capital case. Its effect was to relieve the State of its burden to prove the mens rea element of aggravated murder. The proper result definition of purpose was completely undermined by the improper conduct definition. See Francis, 471 U.S. at 322 (instruction unconstitutional when correct language contradicts correct language and discrepancy is unexplained).

The conduct definition stated that Palmer acted purposely if he engaged in prohibited conduct "regardless of what the offender intended to accomplish thereby." (Joint Appendix Vol.IV, pp. 1207, 1212, 1215, 1220). This conduct definition told the jurors that it was unnecessary for them to find the specific purpose to kill in order for them to find Palmer guilty of the mens rea element. The state was thereby relieved of its burden to prove Palmer's purpose or his specific intent to kill in violation of the Due Process Clause. See Francis, 471 U.S. at 313; Sandstrom v. Montana, 442 U.S. at 520-23.

Moreover, that instruction relieved the State of its burden to prove the element of purpose to kill because a reasonable juror could have understood that Palmer's purposeful participation in the robbery was

79

sufficient to show purpose to kill. See Boyde v. California, 494 U.S. 370, 390 (1990) (held that court must determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in [an unconstitutional manner]."). It is submitted that the most logical reading of the instruction by the jury is that "purpose" has a special definition in this context and that it can be found merely if the defendant participated in the robbery.

Although the court had instructed the jury that it had to find purpose to kill, the "gist of the offense" instruction which immediately followed this instruction gives a particular meaning to the word purpose. After being told that purpose to kill was a necessary element of the offense of aggravated murder, the jury was told that purpose could be found as long as the offender was engaging in illegal conduct. Therefore, it was entirely reasonable for the jurors to conclude that a finding of purpose to rob was sufficient to satisfy the purpose requirement of aggravated murder.

In the context of the entire jury charge, a reasonable juror could have misinterpreted the instruction on purpose. The Supreme Court directs the reviewing court on habeas to look at the jury instructions as whole before the reviewing court may conclude that an incorrect passage has made the

instructions constitutionally infirm. See <u>Francis</u>, 471 U.S. at 315. For this type of claim, relief on habeas "depends upon the way in which a reasonable juror could have interpreted the instruction." <u>Id</u>. (citing <u>Sandstrom</u>, 442 U.S. at 514). Therefore, the scope of a habeas court's review must encompass the effect of the erroneous instruction in light of the entire charge to the jury.

A reasonable juror, when taking this instruction on purpose in the context of the entire charge, would have understood them to mean that Donald Palmer was guilty of the mens rea element of aggravated murder if he caused Sponhaltz and Vargo's death by purposely engaging in some form of unlawful conduct. A reasonable juror, taking these instructions as whole, would not have understood that Palmer could have been guilty of the mens rea element of aggravated murder only if he shot Sponhaltz and Vargo with the purpose to cause the specific result of Sponhaltz and Vargo's death.

The effect of the erroneous "conduct" definition of purpose was compounded by the fact that the jury was also instructed that "the purpose with which a person brings about a result is determined from the manner in which it is done, the weapon used, and all other facts and circumstances in

81

evidence." (Joint Appendix Vol.IV, pp. 1207, 1212, 1215, 1220). This instruction told the jury that they could infer purpose from the use of a weapon. When taken as whole, these instructions created an impermissible conduct definition of the essential element of purpose under O.R.C. § 2901.22(A). This conduct definition relieved the state of its burden of proof as to this essential element.

Although the jury was told that, "[p]urpose to cause the death of another is an essential element of the crime of aggravated murder", it was also instructed in that "[a] person acts purposely when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, if it is his specific intention to engage in conduct of that nature." (Joint Appendix Vol.IV, pp. 1207, 1212, 1215, 1220). Thus, the term "purpose" was given a specialized definition and the jurors were told to use that in their deliberations. Further, it must be presumed that Palmer's jury followed the instructions of the trial court as they were given. See Zafino v. United States, 506 U.S. 534, 540 (1993); Parker v. Randolph, 442 U.S. 62 (1979). Therefore, the erroneous definition of purpose was necessarily incorporated into the jury's understanding of the words "purpose" and

82

"intent".

The jury was told that a "person acts purposely ... regardless of what the offender intends to accomplish [if he commits a prohibited act]." (Joint Appendix Vol.IV, pp.  1207, 1212, 1215, 1220). In this context, the jury was instructed by the definition of purpose that actual intent was irrelevant once Palmer engaged in prohibited conduct. When the instructions are taken as whole; a reasonable juror would have believed that Palmer could be guilty of aggravated murder if he purposely engaged in any illegal conduct that led to the victims' death.  Four times in the instructions on the element of purpose, the jury was told to focus on whether Palmer engaged in illegal conduct in causing the victim's death. The jury was instructed that this intent to engage in illegal conduct meant that Palmer had acted "purposely." The jury was misinformed that culpability for aggravated murder followed from a purposeful choice to engage in some type of illegal conduct that led to the victims' deaths.

Under Francis, Palmer must show that the charge as a whole relieved the State of Ohio of its burden of proof on the mens rea element of aggravated murder. See 471 U.S. at 371. Because the instructions only required that the jury find that Palmer was engaged in illegal conduct that

83

day, the jury did not have to consider a separate specific intent to kill.

Francis v. Franklin makes clear that the Due Process Clause is violated by a mandatory rebuttable presumption that shifts the burden of persuasion to a defendant on an essential element of the crime charged. 471 U.S. at 317. See also Sandstrom, 442 U.S. at 517-18. See also Stromberg v. California, 203 U.S. 359 (1931) (reversal required when jury correctly and incorrectly instructed on crucial point of court; impossible for reviewing court to determine if jury relied on correct instruction).

Regarding this claim, it does not matter that Palmer's jury was instructed to find a purposeful killing beyond a reasonable doubt. In Francis, the court stated that "general instructions on the state's burden of persuasion and the defendant's presumption of innocence are not rhetorically inconsistent" with an evidentiary presumption like the one given to Palmer's jury. Id. at 319. The court noted that a jury could improperly find that purpose to kill was proved, beyond a reasonable doubt, if the jury found the predicate facts were proved beyond a reasonable doubt. Id. Thus, Palmer's jury could have found, beyond a reasonable doubt, that he purposely killed, once it found beyond a reasonable doubt, that he was purposely engaged in illegal activity. See Francis, 471 U.S. at 325. The

84

only definition of purpose given to the jury told them that purpose to kill could be found regardless of what he intended to do.

It is also noteworthy that Palmer's jury was not given a required statutory instruction that any inference of his purpose to kill was "nonconclusive." O.R.C. § 2903.01(D), as it was written at the time of this trial, required the jury to be instructed in felony murder cases that any inference of purpose to kill was only "nonconclusive." As Palmer was charged with aggravated murder under O.R.C. § 2903.01(B), his jury should have been so instructed. This failure to so instruct further derogated the state's burden of