introduction of "other acts" testimony and evidence which was not circumscribed by an appropriate instruction from the trial court. The decisions of the state Court of Appeals and Ohio Supreme Court to the contrary were clear unreasonable applications of longstanding precedent established by the United States Supreme Court and implemented by lower federal courts. Additionally, the errors were not harmless as they infused the entire guilt and penalty phase trials with highly prejudicial and utterly speculative "other bad acts" evidence which had to taint the jury's consideration of the capital specifications at the guilt phase and the weighing of mitigators at the penalty phase. Accordingly, petitioner is entitled to issuance of the writ as to this Claim.

**8      TENTH CLAIM FOR RELIEF: PETITIONER OBJECTS TO THE MAGISTRATE JUDGE'S RECOMMENDATION DENYING RELIEF REGARDING THE TRIAL COURT'S FAILURE TO ORDER THE ELECTION OF COUNTS PRIOR TO THE SENTENCING PHASE OF PETITIONER'S TRIAL WAS CONTRARY OR AN UNREASONABLE APPLICATION OF THE CONCLUSION OF LAW THAT CAPITAL SENTENCING PROCEDURE MUST BE ONE THAT GUIDES AND FOCUSES THE JURY'S OBJECTIVE CONSIDERATION OF THE INDIVIDUAL OFFENSE AND THE INDIVIDUAL OFFENDER BEFORE IT CAN IMPOSE A SENTENCE OF DEATH AS ANNOUNCED IN *JUREK V. TEXAS,* AND THUS DEPRIVED PETITIONER OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW AND TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT.**

Prior to the sentencing phase hearing, defense counsel requested the court to require the prosecutor to elect the counts of the indictment upon which the State chose to proceed for each victim. The trial court refused the request. Consequently, the jury was permitted to consider four counts of aggravated murder even though there were only two victims. (Mit. Tr. pp. 5-6). The jury's consideration at the sentencing phase of multiple aggravated murder charges for each victim unfairly infected the weighing process at mitigation and greatly prejudiced the Petitioner.

## A.     Magistrate Judge's Decision

The Magistrate Judge recommends rejection of this claim on the merits. (Doc. 103, pp. 69-72. The Magistrate Judge agrees with the State Court conclusions that the instructions would cure any problem relating to failure to order election of counts and that any error is not contrary to or an unreasonable application of federal law.[1]

## B.     Petitioner Established Entitlement to Relief on This Count

Under Ohio law, "where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the

---

[1].There is no issue regarding procedural default as this Court has previously held that no defense was raised as to this claim. (Decision, Doc. 61, adopting Report and Recommendation, Doc. 50, where the Court found that no procedural default defense had been raised as to this Claim for Relief. (Doc. 50, p.10). Additionally, the Magistrate Judge correctly concludes that this claim was properly exhausted. (Doc.103, pp. 68-69).

indictment . . . may contain counts for all such offenses but the defendant may be convicted of only one."  ORC 2941.25.  In a non-capital case, the issue of multiple sentences for an allied offense is easily remedied by a reviewing court which can simply vacate one of the sentences.  However, in a capital case such a remedy is not feasible.  Unlike a non-capital case, a jury is involved directly in the sentencing phase.  Consequently, when a jury is permitted to consider allied offenses during a sentencing proceeding, the weighing process is adversely affected rendering the sentences constitutionally unreliable.

In *State v. Johnson*, (1986), 24 Ohio St.3d 87, 93, the Ohio Supreme Court held that,

> Pursuant to *Furman v. Georgia*, (1972), United States Supreme Court has directed that jury discretion and capital sentencing be sufficiently guided so as to avoid the arbitrary and selective imposition of the death penalty.

*Id.* at 93.  Consistent with this principle, the Court has held that the sentencing procedure in a case where the death penalty is being considered must be one that "guides and focuses the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death."

*Jurek v. Texas*, 428 U.S. 262, 263 (1976).

In cases where duplicative or non-statutory aggravating circumstances have been included for the jury's consideration in a capital sentencing proceeding, the courts have found that the constitutional principles enunciated in *Furman* and *Johnson* have not been met.

> That requirement is not met in a system where the jury considers the same act or indivisible course of conduct to be more than one special circumstance . . ., the inclusion of a non-statutory aggravating factor creates a situation where a jury can deviate from the guidance provided by statute. The result may be an `arbitrary and capricious infliction of the death penalty' contrary to the dictates of *Godfrey*, *supra*. (Citations omitted).

*State v. Johnson,* 24 Ohio St.3d at 94.

Because the death penalty is "qualitatively different from a sentence of imprisonment, however, long . . . there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case. *Id.*, *quoting Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

The submission to the jury of two principle offenses in the penalty phase which involve only a single indivisible course of conduct as to each victim, impermissibly tips the scales toward death, thus denying Mr. Palmer

124

fundamental fairness.

Pursuant to ORC 2929.04(B), a jury is instructed that it is permitted to consider the nature and circumstances of the offense in the weighing process. The nature of the offense is only to be considered for purposes of determining the extent of mitigation. *State v. Stumpf*, (1987), 32 Ohio St.3d, 95. The Sixth Circuit has explained the risk associated with the failure to require an election.

> A duplicitous indictment charges a single offense in several counts. Its dangers are that the defendant may be given multiple sentences for what Congress considered a single offense, in that prolix recitation may falsely suggest to a jury that the defendant has committed not one, but several crimes.

*United States v. Duncan*, 850 F.2d 1104, 1108, f.n. 4 (6th Cir. 1988), abrogated on other grounds, *U.S. v. Sanderson,* 966 F.2d 184, 187 (6th Cir. 1992). See also *United States v. Marquardt*, 786 F.2d 771, 778 (7th Cir. 1986) (multiple indictments create the impression of more criminal activity than in fact occurred). The Magistrate Judge's distinguishes these cases on their individual facts. Yet petitioner has demonstrated that the constitutional principles enunciated in these cases are clearly established, directly in point and have been violated by the interpretation of the State Courts.

In this case, the direct effect of the multiple charges misled the jury into considering more aggravating factors than it should have been permitted to consider during the weighing process. The inclusion of multiple charges for a single death would lead the jury to inflate the aggravating circumstances. An impression is created in the minds of the jurors that the deaths were especially heinous because of the number of charges stemming from the deaths. The risk to the Petitioner in this case was exacerbated by the Court's instruction that "you will consider all of the evidence, arguments, the testimony of defendant, and all other information which is relevant to the **nature and circumstances of the aggravating circumstances . . . .**" (Mit. Tr. pp. 157-158). The jury was also instructed that it was to "consider any mitigating factors, including but not limited to the **nature and circumstances of the offense**. . . ." (Emphasis added). (Mit. Tr. p. 161).

Given the record, there can be little doubt that the failure to require an election, at least prior to the sentencing phase, created a real and viable risk that the jury would incorrectly assume that the "defendant has committed not one but several crimes." *Duncan, supra*, 850 F.2d at 1108, f.n. 4. This is the precise harm that requiring an election is intended to

avoid.  The net effect of this is that the court has failed to properly "direct that jury discretion and capital sentencing be sufficiently guided so as to avoid arbitrary and selective imposition of the death penalty."  *State v. Johnson, supra*, 24 Ohio St.3d at 93; and see *Jurek v. Texas, supra*, 428 U.S. at 273-274.  The trial court's failure to prevent this risk by ordering an election of counts, coupled with its instructions to the jury to weigh all the aggravating circumstances against mitigating circumstances, significantly compromised Mr. Palmer's right to a fair sentencing proceeding and render the death sentence unreliable in violation of his constitutional rights as enunciated in *Woodson, supra*; *Jurek, supra*; and *Duncan, supra*.

The Magistrate Judge's reliance on the fact that the state statute on its face applies to indictment and conviction not capital sentencing does not resolve the unconstitutional confusion created in the minds of the jurors that concerned the Sixth Circuit in *Duncan*. The decision of the Ohio Court of Appeals and Ohio Supreme Court to the contrary is an unreasonable application of and contrary to establish the Supreme Court precedent.

## C.    The Error is not Harmless

Nor can the state court's failure be considered harmless.  The failure to elect counts clearly tipped the scales in favor of the aggravators and,

thus, in favor of a recommendation of death.   Consequently this error by

the state trial court "had substantial and injurious effect or influence in

determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637

(1993).  It cannot, therefore be considered harmless.

Accordingly, Petitioner is entitled to issuance of a writ of habeas

corpus with respect to this Claim.

**9.    ELEVENTH CLAIM FOR RELIEF: PETITIONER OBJECTS TO THE MAGISTRATE JUDGE'S RECOMMENDATION DENYING RELIEF REGARDING THE TRIAL COURT'S EXCLUSION OF RELEVANT MITIGATION EVIDENCE FROM REVEREND BUSH AT THE PENALTY PHASE OF MR. PALMER'S CAPITAL TRIAL WAS CONTRARY TO AND AN UNREASONABLE APPLICATION OF THE CONCLUSION OF LAW ANNOUNCED IN THE UNITED STATES SUPREME COURT CASE OF *LOCKET V. OHIO*, IN VIOLATION OF PETITIONER'S RIGHTS TO AN INFORMED INDIVIDUALIZED DETERMINATION OF AN APPROPRIATE PENALTY AND TO HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND TO BE FREE OF CRUEL AND UNUSUAL PUNISHMENT.**

During the penalty phase of Petitioner's capital trial, the Court

excluded from the jury's consideration and otherwise prevented the

sentencing jury from considering any testimony from Reverend Bush, in

spite of the obvious relevance of his testimony to mitigation issues being

offered by Mr. Palmer.  (Mit. Tr. pp. 5-9).

**A.    Magistrate Judge's Decision**

The Magistrate Judge recommends rejecting this claim on the merits. (Doc. 103, pp. 72-75)[2] In so doing, the Magistrate Judge implicitly faults defense counsel for failing to make a proffer. (Doc. 103, p. 74). Petitioner contends that Counsel was deficient with respect to the presentation of this important mitigating evidence. [3] Nevertheless there is a sufficient record from which a court should grant relief with respect to this issue.

## B. Petitioner is Entitled to Relief With Respect to This Claim

When considering counsel's desire to call Reverend Bush at mitigation, the trial court seemed concerned only as to whether Reverend Busch had a formal degree in counseling. When defense counsel could not assure him that Reverend Bush did have such a degree, the Court ruled that Reverend Bush would not be allowed to testify before the jury. (Mit. Tr. p. 7-8). Reverend Bush's testimony, which apparently would deal with his counseling of Mr. Palmer in jail, was clearly appropriate to the jury's considerations regarding imposition of the death penalty. Nevertheless, it was improperly excluded by the Court.

---

[2] .There is no issue regarding procedural default as this Court has previously held that no defense was raised as to this claim. (Decision, Doc. 61, adopting Report and Recommendation, Doc. 50, where the Court found that no procedural default defense had been raised as to this Claim for Relief. (Doc. 50, p.10). Additionally, the Magistrate Judge correctly concludes that this claim was properly exhausted. (Doc.103, pp. 74).

[3] See Discussion re IAC, at pages 156-189.

129

Evidence from a minister who has met with a defendant who could

enlighten the jury regarding his counseling with the defendant would clearly

promote the interest of consistent and rational capital sentencing that

would be focused on the individual merits of the defendant's mitigating

circumstances.  Exclusion of such evidence was a fundamental error that

requires reversal of the death sentence.  When death is being considered

as a punishment, United State Supreme Court has emphasized the weight

and degree of reliability of such a sentence which is required if imposition

of a death penalty is to comport with the requirements of the Eighth

Amendment.

> Consideration of both the offender and the offense in order to arrive at a just and appropriate sentence has been viewed as a progressive and humanizing development (citations omitted) while the prevailing practice of individualizing sentencing determinations generally reflect simply enlightened policy rather than a constitutional imperative, we believe that in capital cases, the **fundamental respect for humanity underlying the Eighth Amendment (citation omitted) requires consideration of the**

> **character and record of**
> **the individual offender and**
> **the circumstances** of the
> particular offense as a
> **constitutionally**
> **indispensable** part of the
> process of inflicting the
> penalty of death.

*Woodson v. North Carolina*, 428 U.S. 280, 304 (1976).  The effect of excluding a key witness at the sentencing phase who would be in a position to shed light on the character of the individual offender and his particular circumstances would be a direct violation of this constitutional principle.  The Court's decision in this regard unquestionably reduced the possibility that the sentencing of Mr. Palmer would be "individualized."  This testimony is particularly important in light of the fact that Mr. Palmer had absolutely no criminal record prior to the shootings at issue.  As the United States Supreme Court later held,

> Given that the imposition of death by public
> authority is so profoundly different from all other
> penalties, we cannot avoid the conclusion that an
> individualized decision is essential in capital cases.
> The need for treating each defendant in a capital
> case with that degree of respect due the
> uniqueness of the individual is far more important
> than in non-capital cases. . . .  The non-availability
> of corrective or modifying mechanisms with respect
> to an executed capital sentence underscores the
> need for **individualized consideration as a**

131

> **constitutional requirement in imposing the**
> **death sentence.**  (Emphasis added).

*Lockett v. Ohio,* 438 U.S. 586, 605 (1978).

Consistent with these principles, relevant mitigating evidence must be considered by a capital sentencer.  Exclusion of such individualized mitigating evidence violates a defendant's fundamental right to a fair sentencing hearing.

In *Skipper v. South Carolina,* 476 U.S. 1 (1986), the Court held that a trial court's decision during a sentencing phase to exclude testimony of jailers and a regular jail visitor regarding petitioner's good behavior during his time in jail denied petitioner's constitutional right to place all relevant mitigating evidence before the sentencing jury prior to imposition of punishment.  The Court explained,

> There is no disputing that this Court's decision in
> *Eddings [v. Oklahoma*, 455 U.S. 104 (1982)*]*
> requires that in capital cases the sentencer not be
> precluded from considering, as a mitigating factor,
> ***any aspect of defendant's character or record*** in
> any of the circumstances of the offense that ***the***
> ***defendant proffers*** as a basis for a sentence less
> than death.  (Citations and internal quotes omitted).

*Skipper v. South Carolina*, 476 U.S. 1, 4 (1986) citing *Lockett, supra*.

The trial court in this case, by excluding clearly relevant mitigating

evidence from Reverend Bush violated the principles enunciated in

*Lockett, Eddings, and Woodson*.  The decision of the Ohio Court of

Appeals and the Ohio Supreme Court to the contrary is erroneous and

unreasonable application of this Supreme Court precedent.

## C.    The Error is not Harmless

Nor can the state court's exclusion of Reverend Bush's mitigation

testimony be considered harmless.  It deprived the jury of hearing

mitigation testimony important to the issue of petitioner's personal value as

a human being worthy of being spared the death penalty.  Consequently

this error by the state trial court "had substantial and injurious effect or

influence in determining the jury's verdict."  *Brecht v. Abrahamson,* 507

U.S. 619, 637 (1993).  It cannot, therefore be considered harmless.

Accordingly, the death sentence must be vacated and the writ

granted as to this Claim.

**10.    TWELFTH CLAIM FOR RELIEF: PETITIONER OBJECTS TO THE MAGISTRATE JUDGE'S RECOMMENDATION DENYING RELIEF REGARDING THE TRIAL COURT'S INSTRUCTION TO THE JURY DURING THE SENTENCING PHASE OF MR. PALMER'S TRIAL REQUIRING THE JURY TO BE UNANIMOUS IN THEIR DECISION AS TO WHETHER MR. PALMER WAS TO RECEIVE A LIFE SENTENCE WAS CONTRARY TO OR UNREASONABLE APPLICATION OF THE CONCLUSION OF THE LAW ANNOUNCED BY THE UNITED STATES SUPREME COURT IN *MILLS V.***

**MARYLAND, AND VIOLATED PETITIONER'S RIGHTS TO DUE PROCESS OF LAW AND TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT AS PROTECTED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

At the sentencing phase of Mr. Palmer's trial, the Court instructed the jury as follows:

> You shall recommend the death sentence, if you **unanimously** find by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors. If you do not so find as to any one or all of the four counts of the indictment, you shall **unanimously** recommend either life sentence with parole eligibility after serving 20 years of imprisonment or life sentence with parole eligibility after serving 30 years of imprisonment. (Emphasis added).

(Mit. Tr. p. 162). This instruction requiring an unanimous verdict regarding sentences less than death violates Mr. Palmer's rights as secured by the Eighth and Fourteenth Amendments to the United States Constitution.

## A.    Magistrate Judge's Decision

The Magistrate Judge recommends rejection of this claim on the merits suggesting that the instruction properly stated Ohio law and did not require a unanimous verdict as to mitigating factors.[4]  The Magistrate

---

[4] There is no issue regarding procedural default as this Court has previously held that no defense was raised as to this claim.  (Decision, Doc. 61, adopting Report and Recommendation, Doc. 50, where the Court found that no procedural default defense had been raised as to this Claim for Relief.  (Doc. 50, p.10).  Additionally, the Magistrate Judge correctly concludes that this claim was properly exhausted. (Doc.103, p. 75).

Judge has misread the Instruction and is in error.

## B.    The Instruction Required a Unanimous Verdict as to Mitigation And Thereby Denied Petitioner Due Process

The only options given to the jury was by the Court's instruction was

to reach a unanimous verdict as to imposing a sentence of death or

**"*unanimously*** recommend . . .  life sentence with parole eligibility . . ."

There is simply for a juror to read that instruction as informing them that a

single juror's refusal to vote for death would be sufficient to prevent

imposition of the death sentence.  It is therefore constitutionally deficient.

In *Mills v. Maryland*, 486 U.S. 367 (1988), the Supreme Court reversed the

imposition of a death sentence and remanded for re-sentencing in light of

the probability that jurors, by virtue of the Court's instructions, thought that

they were precluded from considering any mitigating evidence unless they

first unanimously agreed on the existence of a particular mitigating

circumstance.  The Court explained its concern,

> . . . if petitioner is correct, a jury that does not unanimously agree on the existence of any mitigating circumstance may not give mitigating evidence any effect whatsoever, and must impose the sentence of death.

*Id*. at 375.  In light of the *Mills* Court's emphasis that "in reviewing death

sentences, the Court has demanded even greater certainty that the jury's

135

conclusions rested on proper ground," a reversal of the death sentence is

equally appropriate in this case.  The *Mills* Court went on to caution,

> But common sense . . . [s]uggest[s] that juries do
> not leave blanks and so do not report themselves
> as deadlocked over mitigating circumstances after
> reasonable deliberations . . ., unless they are
> expressly instructed to do so.  The decision to
> exercise the power of the state to execute a
> defendant is unlike any other decision, citizens and
> public officials are called upon to make.  Evolving
> standards of societal decency have imposed a
> correspondingly high requirement of reliability on
> the determination that death is the appropriate
> penalty in a particular case.  The possibility that
> petitioner's jury conducted its tasks improperly
> certainly is great enough to require re-sentencing.

*Id.* at 383-84.

The Court's instruction in this case makes it clear that the jury has to

unanimously agree on the aggravating circumstances outweighing

mitigating factors or unanimously agree that the mitigating factors outweigh

the aggravating circumstances.  This is clearly contrary to the admonition

of *Mills.*  As the Sixth Circuit has properly characterized the Supreme

Court's decision, *Mills* stated that it would be the "height of arbitrariness" to

require unanimous agreement on mitigating circumstances.  *Gall v. Parker*,

231 F.3d 265, 328 (6th Cir. 2000).  Yet, that is precisely what the trial court

has done in this case.  The instruction clearly improperly leads the jury to

believe that it is required to impose the death penalty where one juror was able to prevent the other eleven from giving effect to mitigating evidence. *Gall* at 329.

Unlike the instructions in *Scott v. Mitchell*, 209 F.3d 854 (2000), upon which the Respondent relies in her Return of Writ, the instructions here allowed for the distinct possibility that the jury could incorrectly believe that they had to be unanimous in their decision in regarding the mitigating circumstances.

More recently the Sixth Circuit has granted a writ in a capital habeas case where the trail court delivered instructions substantively the same as the unanimity instruction given here. *Davis v. Mitchell,* 318 F.3d 682 (6th Cir. 2003). The Court noted that under *Mills* "each juror be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death." *Id*. at 687. The Court defined the underlying principle that must guide a federal court's review of the imposition of a death sentence in a weighing state such as Ohio:

> Thus, in order for Eighth Amendment law on mitigating factors to be coherent and capable of judicial administration without serious confusion, a capital jury must understand that, in the words of the Federal Death Penalty Act, "a finding with respect to a mitigating factor may be made by one or more members of the jury."

137

*Id.* at 688.

In *Davis,* the Sixth Circuit found the following instruction to be

constitutionally infirm:

> If all twelve members of the jury find by proof beyond a
> reasonable doubt that the aggravating circumstances which
> Wiley Davis, Jr. was found guilty of committing outweigh the
> mitigating factors, if any, then you must return such finding to
> the Court.
>
> I instruct you as a matter of law that if you make such finding then
> you have no choice and must recommend to the Court that the
> sentence of death be imposed upon the defendant, Wiley Davis, Jr.
>
> On the other hand, if after considering all of the relevant evidence
> raised at trial, the testimony, other evidence, the unsworn statement
> of Wiley Davis, Jr. and the arguments of counsel, you find that the
> State of Ohio failed to prove beyond a reasonable doubt that the
> aggravating circumstances which the defendant, Wiley Davis, Jr.,
> was found guilty of committing, outweigh the mitigating factors, then
> you will return your verdict reflecting your decision; *that is, you must*
> *find that the State has failed to prove beyond a reasonable doubt that*
> *the aggravating circumstances which the defendant was found guilty*
> *of committing outweigh the mitigating factors. In this event you will*
> *then proceed to determine which of the two possible life*
> *imprisonment sentences to recommend to the Court.*

*Id.* at 684-685.  The Court of Appeals found this instruction to be
constitutionally offensive.

> [S]ilence in these instructions on the lack of unanimity required
> for mitigating circumstances, the improper "acquittal-first"
> instruction, and the unqualified instruction, "Now, as you know
> ··· the law requires that in order for you to reach a decision all
> 12 of you must be in agreement"-would have led a reasonable
> jury to apply an unconstitutional standard of unanimity at all

stages in the deliberative process.

*Id.* at 690. The Sixth Circuit concluded that the instructions violated

petitioners Eighth Amendment rights.

> [O]nce a state has adopted that method of narrowing the class
> of persons eligible for the death penalty and providing for
> individualized juror consideration of the appropriateness of the
> death penalty in a particular case, the Eighth Amendment
> requires that jurors not be precluded from giving effect to the
> mitigating evidence by an instruction requiring unanimity as to
> the presence of mitigating circumstances. *See Mills, supra.*
> ***Any instruction requiring that a jury must first***
> ***unanimously reject the death penalty before it can***
> ***consider a life sentence likewise precludes the individual***
> ***juror from giving effect to mitigating evidence and runs***
> ***afoul of Mills.*** (Emphasis added).

*Id.* at 689.

The same constitutional defect is present here.  The jury is told that it

must first  address the issue of whether the aggravators outweigh the

mitigators, only then are they to consider imposition of a life sentence.  (Mit

Tr. pp. 158).  They are then told a second time that they are to first

consider whether they will recommend imposition of the death sentence,

and then are told that, if they do not unanimously agree on imposition of a

death verdict, they must ***"unanimously*** recommend" imposition one of the

life sentences. (Mit. Tr. p. 162).  There is no reasonable way each juror can

read these instructions without concluding that all must reach a unanimous

decision regarding mitigating circumstances before a sentence less than

death can be imposed.

Under *Mills*, *Gall,* and *Davis, such* instructions deny Petitioner a

fundamentally fair sentencing hearing.  Such error is by definition

prejudicial and not harmless. *Mills, supra;  Davis*, *supra.* Accordingly, the

decisions of the Court of Appeals and the Ohio Supreme Court to the

contrary are clearly inconsistent with an improper application of the law

announced in those cases.  The writ should accordingly issue as to this

Claim.

11. **FIFTEENTH CLAIM: Trial Counsels' Acts and Omissions Constituted Ineffective Assistance of Counsel Which Prejudiced Mr. Palmer Thus Violating His Rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

Below Petitioner sets forth specific objections to the disposition of

claims involving ineffective assistance of trial counsel set forth in the

Report and Recommendation.

A. **Trial Counsel was Deficient in Withdrawing the Motion to Suppress. [Claim 15.2].**

**Merits:**

The Report and Recommendation erroneously concludes that, since

there was no apparent coercive government conduct,  trial counsel's failure

140

to pursue suppression of Palmer's confession was reasonable. (R&R, Doc. 103, pp. 88-90). Petitioner objects to this finding. First, simply because there is case law suggesting that coercive government conduct is a necessary quid pro quo for finding a confession involuntary does not relieve counsel who decide to assert a particular legal claim from preserving the claim, presenting the claim as forcefully as possible and ensuring that a full record is made in connection with the claim. Guideline 10.8 of the ABA Guidelines Governing the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003).

Second, there is a contradiction in the Miranda cases as to the standard of review for voluntariness. Compare Colorado v. Connelly, 479 U.S. 157, 170 (1986) with Brewer v. Williams, 430 U.S. 387, 404 (1977). The Sixth Circuit recognized the contradiction in United States v. Jones, 935 F.2d 271, 1991 WL 105751 at **2 (CA6 1991)(table) cited in the R&R at p. 90. To determine whether a statement is the product of official coercion one looks at: (1) the location of the questioning, Miranda v. Arizona, 384 U.S. 436 (1966); (2) whether Miranda warnings were given, United States v. Bowden, 380 F.3d 366, 271-72(CA6 2004); (3) whether the accused initiated contact with law enforcement, United States v.

141

Crowder, 62 F.3d 782, 785 (CA6 1995); and the accused's personal

characteristics such as recent substance abuse, United States v. Harris,

44 F.3d 1206, 1210 (CA3 1995).

Third, the R&R makes the inferential leap that Palmer's trial counsel

recognized that there was no coercive police conduct and therefore

decided to withdraw the motion to suppress. (R&R, Doc. 103, p. 90). The

problem with the inference is that trial counsel Nichelson conceded in his

testimony that the there was no professional justification for withdrawing

the motion. (Nichelson Tr., Vol. II, p. 20).  Moreover, since the proceedings

related to the motion to suppress and it withdrawal were not recorded one

cannot reconstruct what actually occurred and must therefore rely on trial

counsel's recollections as opposed to guess work.

Here, trial counsel properly filed a Motion to Suppress Petitioner's

taped confession in light of Palmer's testimony at trial that, during the days

after the shootings prior to his arrest, "I stayed under the influence of

alcohol and drugs so I wouldn't have to think about it too often." (Joint

App. Vol. IV, Trial Tr. p. 1106).  Although Palmer testified that he tried to

sober up before calling the police, counsel testified that Mr. Palmer had a

flat affect during his confession.  There is substantial evidence in the

142

record, therefore, to suggest that given Mr. Palmer's significant history of drug and alcohol abuse both prior to the shootings and during the events, he was unable to voluntarily give a statement and waive his rights to counsel at the time the confession was given to police. In spite of this evidence, Mr. Nichelson testified that he withdrew the motion to suppress after having an offer off-the-record conversation with the Court in which the Court supposedly indicated that it was disinclined to grant the motion. (Nichelson Tr., Vol. II, pp.19-20).

Mr. Nichelson conceded, that based on what he knew at the time, there was no justification in terms of trial strategy to withdraw the motion to suppress. (Id. at 20). In fact, he further conceded that withdrawing the motion to suppress would potentially have the effect of waiving all issues regarding the taped confession. It is evident, therefore, that counsel failed to meet his obligation to properly represent his client by withdrawing the motion for reasons that did not advance his client's interest and with respect to which there was no legal strategy exercised. This constitutes ineffective assistance of counsel within the definition of Strickland. A prejudice caused to Petitioner is evident as the trial record indicates that the confession was a significant part of the prosecution's case during the

143

culpability phase.  The objection should be sustained and the wit should issue.

> **B.    Trial Counsel Failed to Request the Services of a Toxicologist or Pharmacologist During the Guilt Phase to Explain the Effect of the Alcohol and Cocaine Withdrawal on Petitioner's Ability to Form Specific Intent to Kill. [Claim 15.3].**

**Procedural Default:**

The Report and Recommendation erroneously concludes that this claim is procedurally defaulted.   (R&R, Doc. 103, p. 91).  The basis for the determination in the R&R was that Palmer allegedly violated a state procedural rule that post conviction claims be supported by evidence outside the record. One problem with this analysis is that Ohio's Post Conviction statute (R.C. § 2953.21(A) (1)) clearly indicates that the purported evidentiary requirement is directory not mandatory because it uses the terms "<u>may</u> file a supporting affidavit and other documentary evidence in support of the claim for relief."   Another problem with the analysis is that the last state court to deal with this claim found that the claim was not sufficiently documented rather than defaulted. This issue was presented to the Belmont County Court of Appeals as part of Assignments of Error II, IV, and V. (Joint Appendix p. 2324). . The Belmont

144

County Court of Appeals decided on the merits that Petitioner had no right to such an expert since he had presented insufficient evidence to establish the need for such an expert. (Joint Appendix pp. 2480, 2483-2484).  Thus, the state court of appeals looked at the merits of the claim and decided Palmer did not meet his burden of production or, ultimately, his burden of persuasion. Hence there is no default.

In the present habeas proceedings, the Court previously found that no procedural default defense was raised as to this claim. (R&R, Doc. 50, p. 10; Supplemental R&R, Doc. 56).  In adopting the Report and Recommendation regarding Petitioner's motion for summary judgment the District Court never made a finding that this claim was procedurally defaulted.  Moreover, Respondent never raised any procedural default defense to this claim in the Post Hearing Memorandum. (Doc. 74). Therefore, this claim is not defaulted.

**Merits:**

Palmer's trial counsel failed to obtain any competent expert who had a familiarity with the effect that Petitioner's history of drug and alcohol abuse had on his actions at the time of the shootings.  The Sixth Circuit recognizes "that the failure of defense counsel to engage a competent

145

psychiatrist would be relevant in determining whether a defendant received ineffective assistance of counsel." <u>Mason v. Mitchell</u>, 320 F.3d at 616. Trial counsel was aware early on in the case that Petitioner had a significant history of drug and/or alcohol abuse, together with serious psychological disorders. (See for example, Norma Needham's May 25, 1989 letter to counsel, Petitioner Exhibit 2, Trial Notebook, pp. 237-238, and see OVMC Records for July 1987 hospitalization, Trial Notebook, pp. 405-442). Nevertheless, counsel did nothing to obtain a competent expert to address the effect that Mr. Palmer's drug abuse and alcohol consumption leading up to the shootings had on his ability to form the requisite intent.

Since trial counsels' failure to obtain a competent expert on this issue was not the product of a strategic decision, it fails to meet the minimum standards set by the Supreme Court for providing effective counsel under <u>Strickland</u>. As the testimony of Dr. Smith at the evidentiary hearing confirmed, had someone with Dr. Smith's credentials been called to testify at the guilt phase, the jury would have received scientifically based evidence that Petitioner's ability to form intent at the time of the shootings was significantly impaired. This undermines the outcome of the jury verdict

146

as to both guilt and sentence, and renders those verdicts unreliable within the meaning of Strickland.  See Mason v. Mitchell, 320 F.3d at 616 where the Sixth Circuit expressly found that "the failure of defense counsel to engage a competent psychiatrist would be relevant in determining whether a defendant received ineffective assistance of counsel." See also, Caro v. Calderon, 165 F.3d 1223, 1226-28 (9th Cir. 1999), *cert. denied*, 527 U.S. 1049 (1999) (failure to retain a competent expert can raise to the level of constitutionally inadequate counsel.)  As a result, the writ should issue.

> ### C.    Trial Counsel Rendered Deficient Performance When They Failed to Assure That All Proceedings Were Recorded and That There Was a Complete Record for Future Appellate Review. [Claim 15.4]

**Procedural Default:**

The Report and Recommendation erroneously concludes that this claim is procedurally defaulted asserting that the claim was not raised on direct appeal.   (R&R Doc. 103, p. 92). Palmer did raise the claim on direct appeal.  Specifically, Palmer argued on direct appeal, in both the state court of appeals and supreme court,  that "because of the importance of having a complete record in a death penalty case, defense counsel should have ensured that a complete record was made for all proceedings." (Joint

147

Appendix pp. 903, 1625).

Moreover, in the present habeas proceedings, the Court previously found that no procedural default defense was raised as to this claim. (R&R, Doc. 50, p. 10; Supplemental R&R, Doc. 56). In adopting the Report and Recommendation regarding Petitioner's motion for summary judgment the District Court never made a finding that this claim was procedurally defaulted. Moreover, Respondent never raised any procedural default defense to this claim in the Post Hearing Memorandum. (Doc. 74). Therefore, this claim is not defaulted.

**Merits:**

It is undisputed that trial counsel failed in their obligation to assure that all proceedings were properly recorded. (See generally Nichelson working file, Petitioner Exhibit 1, Bates pp. 000007-000035; and see Joint App. Vol. IX, p. 2110). Given the stakes involved in a capital murder case, there can be no legal strategy involved in simply failing to assure that all proceedings are on the record. There were many instances where the court proceedings were unrecorded and the record or transcript substitute provided under Ohio App. R. 9 proved to be inadequate for purposes of appellate review.

148

For example, the State moved for a jury view of the scene.  There was no objection from defense counsel and the motion was granted as to the scene of the two murders.  However, the jury was actually taken to two additional views with respect to which Defendant's counsel was quite surprised.  However, there is no transcript or record of what transpired at those additional jury views.  (Motion Tr. pp. 37-38; Tr. p. 824).  Because the prosecutor had not requested the additional views and the Court had no opportunity to rule on additional views, defense counsel moved for a mistrial which was overruled.  (Tr. p. 825).  (See Joint App. Vol. VI, Agreed Statement of Evidence, pp. 559-560 ).

Additionally, there were at least eight sidebar conversations during Petitioner's trial for which there is not record.  (See Joint App. Vol. VI, Agreed Statement of Evidence, pp. 554 ).  During voir dire, juror number 6 was replaced, never having been excused by the Court on the record.  (*Id.* at 558*).*  Additionally, sometime between September 8, 1989, when defendant's Motion to Suppress was filed, and the time when defense counsel withdrew the Motion to Suppress (see Motion Tr. p. 24), there was at least one unrecorded conversation and possibly more between the trial court and one of the defense counsel concerning defendant's Motion to

149

Suppress.  The Motion to Suppress was withdrawn after the Judge stated, in a non-recorded proceeding, that no evidence would be suppressed. (See Joint App. Vol. VI, Agreed Statement of Evidence, pp. 558-559 ).

There were also unrecorded chambers conversations, referred to at trial transcript pages 138-39, which dealt with an objection by defense counsel to the State's failure to provide *Brady* information, despite a specific request, concerning George Goolie's possession and/or distribution of controlled substances and drugs.  There are unrecorded discussions which took place during the jury view including objections. Additionally, there are unrecorded conversations referred to at Mitigation transcript page 6 regarding Reverend Bush and unrecorded conversations between counsel which may have related to a possible juror problem.  (See Joint App. Vol. VI, Agreed Statement of Evidence, pp. 558-559 ).

At some point during the trial, there were off the record unrecorded arguments presented by attorneys for defendant regarding the introduction of a certain firearm into evidence.  This became an important issue in Mr. Palmer's trial.   There are unrecorded conversations alluded to at the Mitigation transcript page 137 relating to a visual aid used by the prosecution listing all mitigating factors.  There were six in-chambers

150

conversations with respect to which it was suggested that defendant was not present and may not have waived his right to be present.  The individuals interviewed to reconstruct this record could not remember the specific information except that  defendant may not have been present at various important stages.  *(Id.)*.[5]

In Ohio, Criminal Rule 22 provides that "in serious offense cases, all proceedings shall be recorded."  There can be little doubt that capital punishment cases would be included in this grouping.  The state courts of Ohio have consistently interpreted the term "all proceedings" literally. *State v. Grant*, (1993) 67 Ohio St.3d 465; *State v. Jells*, (1990), 53 Ohio St.3d 22.   Apart from the testimony and evidentiary rulings, other proceedings deemed essential to a complete record include voir dire and counsel's arguments to the jury, *United States v. Workcuff*, 422 F.2d 700 (D.C. Cir. 1970); sidebar conferences, *United States v. Smith*, 787 F.2d 111 (3rd Cir. 1986); as well as virtually anything that happens in open court, *United States v. Piascik*, 559 F.2d 545 (9th Cir. 1977).

The importance of a record is underscored by ORC 2929.04 which provides that "the Court of Appeals or Supreme Court shall affirm a

---

[5]See generally Appellant's Brief to the Court of Appeals, pp. 11-12, Joint Appendix pp. stamped pp. 000801-803.

sentence of death only if the particular court is persuaded **from the record**

that aggravating circumstances outweigh the mitigating factors present in

the case."  Read in conjunction with ORC 2929.03(G), the law of Ohio

clearly requires that all trial level proceedings be recorded and provided to

the reviewing courts.  Appellant is given the responsibility to order a

transcript of the proceedings for any appellate review.  App. R. 9(B).

Consequently, Appellate counsel has a duty to provide the reviewing court

with complete and accurate record of what occurred below.  See generally,

*State v. Brewer*, (1990), 48 Ohio St.3d 50.

ORC 2929.03(G) and 2929.05 mandate that in all capital cases, the

Appellate Courts receive and review the entire record on appeal.  Clearly a

fair, full and meaningful review is impossible when the Court does not have

before it a complete record.  *State, ex rel. Spirko v. Court of Appeals*,

(1986), 27 Ohio St.3d 13, 16.  As the Ohio Supreme Court stated in *Spirko*,

> ORC 2929.05 thus places as solemn responsibility
> on the appellate courts *** to determine if death is
> the fitting punishment.  It is clear that a court cannot
> review all the facts and circumstances of a case if it
> does not have a **complete record** from which to
> conduct such a review.  (Emphasis added).

*Id.* at 627.  Accordingly, the Court in *Spirko* went onto hold that

> Just as the right to confer with an attorney `is a right

152

inherent in justice itself,' so to is the **right to an unabridged transcript**.  If consultation with one's lawyer is essential to prepare a case for the Appellate Courts, we believe in **the availability of a trial record is indispensable for that very same purpose.**  Without a transcript, a capital defendant is precluded from obtaining a complete and meaningful appellate review of his case as provided by statute [and the Ohio Constitution].  In brief, with respect to the right to the right to a comprehensive transcript `**any person who is denied the right is denied justice.'**  (Citation omitted) (Emphasis added).

*Id.* at 628.

Trial counsel were clearly constitutionally ineffective under *Strickland* in failing to protect Petitioner's right to appeal by assuring the recording of all proceedings.  The obvious prejudice to Petitioner is described above and recognized in well established Supreme Court precedent.

**Harmless Error**:

Indeed, the Supreme Court recognized the constitutional importance of a complete transcript for a fair appellate review several decades ago. *Griffin v. Illinois*, 351 U.S. 12, 19-20 (1956); and see, for example, *United States v. Selva*, 559 F.2d 1303 (5ᵗʰ Cir. 1977), where the court held that although the defendant alleged no specific error to have occurred during unrecorded portions of this trial, consisting of closing arguments made by defense in government counsel, the absence of a full record foreclosed as

153

new appellate counsel was prevented from fully examining the record for

possible error