questions about whether his trial was rendered fundamentally unfair with the admission of such evidence without a clearly defined limiting instruction have been raised.  Petitioner has demonstrated a substantial body of federal law that supports this contention.  Thus, Petitioner has met his burden to show that his Ninth Ground for Relief raises serious constitutional questions with respect to which reasonable jurists could differ in their conclusions.  Plaintiff has, therefore, met the *Slack* requirement and a Certificate of Appealability should issue with respect to this claim.

     **5.**     **Tenth Claim for Relief: The Trial Court's Failure to Order the Election of Counts Prior to the Sentencing Phase of Petitioner's Trial was Contrary to or an Unreasonable Application of the Conclusion of Law that Capital Sentencing Procedure Must be One that Guides and Focuses the Jury's Objective Consideration of the Individual Offense and the Individual Offender Before it Can Impose a Sentence of Death as Announced in *Jurek v. Texas*, and Thus Deprived Petitioner of his Constitutional Right to Due Process of Law and to be Free From Cruel and Unusual Punishment.**

In this ground for relief, Mr. Palmer contends that the trial court should have ordered the state to elect the counts of the indictment upon which the state chose to proceed for each victim.  The trial court refused and, as a result, the jury was permitted to consider four courts of aggravated murder even though there were only two victims.  The juries' consideration at the sentencing phase of multiple aggravated murder charges for each victim unfairly infected the weighing process at mitigation and greatly prejudiced Petitioner.

The Magistrate Judge recommends denying a Certificate of Appealability with respect to this claim finding simply that "the jury found that the acts committed by Petitioner were proved beyond a reasonable doubt to constitute aggravated murder in two different ways."  The Magistrate Judge concludes that the Supreme Court's decision in *Jurek v. Texas*, 428 U.S. 262

(1976) did not prohibit the weighing of two aggravated murder charges for each victim is part of

the weighing process at mitigation.  (Report and Recommendation, Doc. 128, p. 12).  The

Magistrate Judge conducted no analysis under *Slack*.

The Report and Recommendation does not explain how weighing more than one

aggravated murder charge against mitigating factors as to each victim causes the very danger that

the Sixth Circuit warned against in *United States v. Duncan*, 850 F.2d 1104 (6th Cir. 1988),

abrogated on other grounds, *U.S. v. Sanderson*, 966 F.2d 184 (6th Cir. 1992).

> A multiplicitous indictment charges a single offense in several
> counts.  Its dangers are that the defendant may be given multiple
> sentences for what congress considered a single offense, and that
> prolix recitation may falsely suggest to a jury that a defendant has
> committed not one but several crimes.

*U.S. v. Duncan*, 850 F.2d at 1108, fn.4, citing C. Wright, *Federal Practice and Procedure*,

Section 142, pp. 475-76 and n. 19 (1984); see also *United States v. Marquardt*, 786 F.2d 771,

778 (7th Cir. 1986) (multiple indictments create the impression of more criminal activity than in

fact occurred).  Although these cases may be distinguishable on their individual facts, the

constitutional principles enunciated in these cases are clearly established, directly on point and

have been utterly ignored in the state court's handling of this claim.  Allowing the jury in Mr.

Palmer's case to weigh two aggravated murder counts for each victim against the mitigation

evidence offered fails to "guide[] and focus[] the jury's objective consideration of the

***particularized circumstances of the individual offense and the individual offender before it***

***can impose a sentence of death."***  (Emphasis added). *Jurek v. Texas*, 428 U.S. 262, 263 (1976).

In cases where duplicative or non-statutory aggravating circumstances have been included

for the jury's consideration in a capital sentence and proceeding, the courts have found that the

27

constitutional principles enunciated in *Furman* have not been met.

> That requirement is not met in a system where the jury considers the same act or indivisible course of conduct to be more than one special circumstance . . . the inclusion of a non-statutory aggravating factor creates a situation where a jury can deviate from the guidance provided by statute.  The result may be an `arbitrary and capricious infliction of the death penalty' contrary to the dictates of *Godfrey*, *supra*. [Citations omitted].

*State v. Johnson*, (1976), 24 Ohio St.3d 87, 94.  The Ohio Supreme Court in *Johnson* was simply restating the well established constitutional principle reaffirmed in *Godfrey v. Georgia*, 446 U.S. 420 (1980).

> . . . if a state wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious and infliction of the death penalty.

*Id*. 446 U.S. at 428.

A reasonable jurist could disagree with this Court and find that these clearly established principles were violated by allowing the jury, in considering a death sentence, to weigh more than one aggravated murder count for a single victim.  Accordingly, the Court should grant a Certificate of Appealability with respect to this claim.

**6.    Twelfth Claim for Relief: Petitioner Objects to the Magistrate Judge's Recommendation Denying Relief Regarding the Trial Court's Instruction to the Jury During the Sentencing Phase of Mr. Palmer's Trial Requiring the Jury to Be Unanimous in Their Decision as to Whether Mr. Palmer Was to Receive a Life Sentence Was Contrary to or An Unreasonable Application of the Conclusion of the Law Announced by the United States Supreme Court in *Mills V. Maryland*, and Violated Petitioner's Rights to Due Process of Law and to Be Free from Cruel and Unusual Punishment as Protected by the Eighth and Fourteenth Amendments to the United States Constitution.**

At the sentencing phase of Mr. Palmer's trial, the Court instructed the jury as follows:

> Members of the jury you have heard the evidence and the
> arguments of counsel and you will now decide whether you will
> recommend to the Court that the sentence of death shall be
> imposed upon the Defendant as to Counts I, II, III, IV and VI of the
> indictment ***and, if not,*** you will recommend that the Defendant be
> sentenced to life imprisonment . . . . (Emphasis added).

(Mit. Tr., p. 158). The jury is then instructed:

> You shall recommend the death sentence, if you **unanimously** find
> by proof beyond a reasonable doubt that the aggravating
> circumstances outweigh the mitigating factors. If you do not so
> find as to any one or all of the four counts of the indictment, you
> shall **unanimously** recommend either life sentence with parole
> eligibility after serving 20 years of imprisonment or life sentence
> with parole eligibility after serving 30 years of imprisonment.
> (Emphasis added).

(Mit. Tr. p. 162). This instruction requiring a unanimous verdict regarding sentences less than

death violates Mr. Palmer's clearly established constitutional rights as enunciated in *Mills v.*

*Maryland,* 486 U.S. 367 (1988).

The Magistrate Judge recommends denial of a Certificate of Appealability as to this claim

concluding that the instruction in Mr. Palmer's case does not violate the proscription of *Mills.*

Regarding this point, the Magistrate Judge believes that the challenged instruction would not

require unanimity "on the existence or weight of any particular mitigating factor." (Report and

Recommendation, Doc. 128, p. 13). Consequently, he concludes that under *Slack* a reasonable

jurist could not find the instruction to be in contravention of *Mills.* The Magistrate Judge is in

error.

The only options given to the jury by the Court's instruction was to reach a ***unanimous***

verdict as to a sentence of death or ***"unanimously*** recommend . . . life sentence with parole

eligibility. . . ." There is simply no way for a juror to read that instruction as informing them that

29

a single juror's refusal to vote for death would be sufficient to prevent imposition of the death sentence. It is, therefore, constitutionally deficient. In *Mills v. Maryland*, 486 U.S. 367 (1988), the Supreme Court reversed the imposition of a death sentence and remanded for re-sentencing in light of the probability that jurors, by virtue of the Court's instructions, thought that they were precluded from considering any mitigating evidence unless they first unanimously agreed on the existence of a particular mitigating circumstance. The Court explained its concern,

> . . . if petitioner is correct, a jury that does not unanimously agree on the existence of any mitigating circumstance may not give mitigating evidence any effect whatsoever, and must impose the sentence of death.

*Id*. at 375. In light of the *Mills* Court's directive that "in reviewing death sentences, the Court has demanded even greater certainty that the jury's conclusions rested on proper ground," there is clearly room for differences of opinion among reasonable jurists as to whether the instruction in this case creates the risk of misleading a juror into thinking the jury must be unanimous as to one or more mitigating factors before it may consider a life sentence.

The *Mills* Court cautioned federal courts about how a typical jury may react to an instruction like the one given in Mr. Palmer's case.

> But common sense . . . [s]uggest[s] that juries do not leave blanks and so do not report themselves as deadlocked over mitigating circumstances after reasonable deliberations . . ., unless they are expressly instructed to do so. The decision to exercise the power of the state to execute a defendant is unlike any other decision citizens and public officials are called upon to make. Evolving standards of societal decency have imposed a correspondingly high requirement of reliability on the determination that death is the appropriate penalty in a particular case. The possibility that petitioner's jury conducted its tasks improperly certainly is great enough to require re-sentencing.

30

*Id.* at 383-84.

As the Sixth Circuit has noted, *Mills* stated that it would be the "height of arbitrariness" to require unanimous agreement on mitigating circumstances. *Gall v. Parker*, 231 F.3d 265, 328 (6th Cir. 2000), *superceded on other grounds by, Bowling v. Parker,* 344 F.3d 487, 501, n. 3 (6th Cir. 3003). Yet, that is precisely what the instruction did in this case.

> [B]ecause it is reasonably likely that the jury was confused on the necessity of unanimity for mitigation, and because "the verdict of death may not have been imposed had they understood that one juror could block the death sentence if he or she believed there were sufficient mitigating circumstances," *Kibbe,* 431 U.S. at 154, 97 S.Ct. 1730, we conclude that this error so infected the sentencing phase that the resulting death sentence violated due process.

*Gall* at 329-330.[1]

More recently the Sixth Circuit has granted a writ in a capital habeas case where the trial court delivered instructions substantively the same as the unanimity instruction given here. *Davis v. Mitchell,* 318 F.3d 682 (6th Cir. 2003). The Court found that *Mills* required that "each juror be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death." *Id.* at 687. The Court defined the underlying principle that must guide a federal court's review of the imposition of a death sentence in a weighing state such as Ohio:

> Thus, in order for Eighth Amendment law on mitigating factors to be coherent and capable of judicial administration without serious confusion, ***a capital jury must understand that, in the words of the Federal Death Penalty Act, "a finding with respect to a mitigating factor may be made by one or more members of the jury."***

---

[1]Unlike the instructions in *Scott v. Mitchell*, 209 F.3d 854 (2000), upon which the respondent relies in her Return of Writ, the instructions here allowed for the distinct possibility that the jury could incorrectly believe that they had to be unanimous in their decision regarding the mitigating circumstances.

*Id.* at 688.

> In *Davis,* the Sixth Circuit found the following instruction to be constitutionally infirm:
>
> If all twelve members of the jury find by proof beyond a reasonable doubt that the aggravating circumstances which [defendant] was found guilty of committing outweigh the mitigating factors, if any, then you must return such finding to the Court.
>
> I instruct you as a matter of law that if you make such finding then you have no choice and must recommend to the Court that the sentence of death be imposed upon the defendant . . .
>
> On the other hand, if after considering all of the relevant evidence raised at trial, the testimony, other evidence, the unsworn statement of [defendant] and the arguments of counsel, you find that the State of Ohio failed to prove beyond a reasonable doubt that the aggravating circumstances which the defendant . . . was found guilty of committing, outweigh the mitigating factors, then you will return your verdict reflecting your decision; *that is, you must find that the State has failed to prove beyond a reasonable doubt that the aggravating circumstances which the defendant was found guilty of committing outweigh the mitigating factors. In this event you will then proceed to determine which of the two possible life imprisonment sentences to recommend to the Court.* (Emphasis in original).

*Id.* at 684-685. The Court of Appeals found this instruction to be constitutionally offensive

because, among other reasons, there was **"silence in these instructions on the lack of unanimity**

**required for mitigating circumstances . . . ."** *Id.* at 690. The same "silence" exists here. Again,

there is no way the jury in Palmer can look at the instruction that twice directs the jury that its

verdict must be unanimous, (first, as to a death sentence and second, as to a life sentence) and

understand unanimity is not required to prevent a sentence of death.

The Sixth Circuit concluded that the substantively similar instructions in *Davis* violated

petitioner's Eighth Amendment rights.

> . . . the Eighth Amendment requires that jurors not be precluded from giving effect to the mitigating evidence by an instruction requiring unanimity as to the presence of mitigating circumstances. *See Mills, supra.* **Any instruction requiring that a jury must first unanimously reject the death penalty before it can consider a life**

32

*sentence likewise precludes the individual juror from giving effect to mitigating evidence and runs afoul of Mills.* (Emphasis added).

*Id.* at 689.

The same constitutional defect is present here. The jury is told that it must first address the issue of whether the aggravators outweigh the mitigators, i.e., whether a death sentence is to be imposed. Only then are they to consider imposition of a life sentence. (Mit. Tr. p. 158). They are then told a second time that they are to first consider whether they will recommend imposition of the death sentence, and then are told that, if they do not unanimously agree on imposition of a death verdict, they must *"unanimously* recommend" imposition one of the life sentences. (Mit. Tr. p. 162). There is no reasonable way each juror can read these instructions without concluding that all must reach a unanimous decision regarding mitigating circumstances before a sentence less than death can be imposed.

Under *Mills*, *Gall,* and *Davis,* such instructions deny Petitioner a fundamentally fair sentencing hearing. Such error is by definition prejudicial and not harmless. *Mills, supra; Davis*, *supra.* Accordingly, the decisions of the Court of Appeals and the Ohio Supreme Court to the contrary are clearly inconsistent with an improper application of the law announced in those cases. The decisions in *Gall* and *Davis* establish that Mr. Palmer's success on Twelfth Ground for Relief is at least open to fair debate among reasonable jurists. Under the analysis in *Slack,* a Certificate of Appealability should issue as to this claim.

7.     **Fifteenth Claim for Relief: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**.

(i)     **Claim 15.3 - Trial Counsel Failed to Request the Services of a Toxicologist or Pharmacologist During Guilt Phase to Explain the Effect of Alcohol and Cocaine Withdrawal on Petitioner's**

33

**Ability to Form the Specific Intent to Kill.**

Palmer's trial counsel failed to obtain any competent expert who had a familiarity with the effect that Petitioner's history of drug and alcohol abuse had on his actions at the time of the shootings. The Sixth Circuit recognizes "that the failure of defense counsel to engage a competent psychiatrist would be relevant in determining whether a defendant received ineffective assistance of counsel." *Mason v. Mitchell,* 320 F.3d 604, 616 (6TH Cir. 2003). Trial counsel was aware early on in the case that Petitioner had a significant history of drug and/or alcohol abuse, together with serious psychological disorders. (See for example, Norma Needham's May 25, 1989 letter to counsel, Petitioner Exhibit 2, Trial Notebook, pp. 237-238, and see OVMC Records for July 1987 hospitalization, Trial Notebook, pp. 405-442). Nevertheless, counsel did nothing to obtain a competent expert to address the effect that Mr. Palmer's drug abuse and alcohol consumption leading up to the shootings had on his ability to form the requisite intent. Such failure denied Mr. Palmer constitutionally adequate counsel. *Mason v. Mitchell,* 320 F.3d at 616. Since trial counsel's failure to obtain a competent expert on this issue was not the product of a strategic decision, it fails to meet the minimum standards set by the Supreme Court for providing effective counsel under *Strickland*.

On this matter, it must be remembered that Dr. Smith at the evidentiary hearing confirmed that had someone with Dr. Smith's credentials been called to testify at the guilt phase, the jury would have received scientifically based evidence that Petitioner's ability to form intent at the time of the shootings was significantly impaired. This undermines the outcome of the jury verdict as to both guilt and sentence, and renders those verdicts unreliable within the meaning of *Strickland*. See *Mason v. Mitchell*, 320 F.3d at 616, where the Sixth Circuit expressly found that

"the failure of defense counsel to engage a competent psychiatrist would be relevant in determining whether a defendant received ineffective assistance of counsel."[2] Thus, this is a valid claim of the denial of a constitutional right to effective assistance of counsel as announced in *Strickland v. Washington*, 446 U.S. 668 (1984). Petitioner has demonstrated that, as to the merits of this claim, there is room for debate among reasonable jurists. Thus, consistent with *Slack,* 529 U.S. at 424, a certificate of appealability should issue on this claim.

The Magistrate Judge does not reach the merits of this claim or render a determination that, as to the merits, the claim is not subject to debate among reasonable jurists under *Slack*. Rather, he reiterates his conclusion that the claim is procedurally defaulted. (Report and Recommendation, Doc. 128, pp. 13-16). Petitioner has demonstrated that the Magistrate's Judge's application of the procedural default bar to this claim is itself subject to debate among reasonable jurists and thus should be certified for appeal. *Slack*, 529 U.S. at 484. The conclusion that this issue is fairly debatable is apparent from this Court's previous rulings finding that the procedural default defense was not viable as to this claim as well as others.

In the present habeas proceedings, the Magistrate Judge expressly found that that no procedural default defense was raised as to this claim. (Report and Recommendation, Doc. 50, p. 10; and see Supplemental Report and Recommendation 56). Both of these Reports and Recommendations were affirmed by the District Judge. (Decision and Entry, Doc. 61). The Magistrate Judge correctly stated in his Report that "Petitioner's Motion [for Summary Judgment] plainly challenges Respondent to set forth clearly where procedural default is claimed

---

[2]See also, *Caro v. Calderon,* 165 F.3d 1223, 1226-28 (9th Cir. 1999), *cert. denied*, 527 U.S. 1049 (1999) (failure to retain a competent expert can rise to the level of constitutionally inadequate counsel.)

and to show why summary judgment is not justified." (Doc. 50, p.10). In fact, Respondent did not file any objection to the Magistrate Judge's conclusion that ***no procedural default defense had been raised with respect to Claim 15.3 ,*** or any of the other claims listed in that Report. (See Respondent's Objections to March 4, 2002 Report, Doc. 52, p. 2, where Respondent does not list Claim 15.3 as among the objections she asserts to the Magistrate Judge's Report). Consistent with Rule 72 the defense is thereby waived. The Magistrate Judge, therefore, is in error when he states the claim was raised in the Return of Writ as to 15.3.

It is important to note that, in his Supplemental Report and Recommendation, the Magistrate Judge concluded,

> When Respondent opposed Petitioner's Partial Summary Judgment Motion, she did not even mention the ineffective assistance of trial counsel claims (See Doc. No. 133) not even to the point of incorporating by reference the assertions made in her Return of Writ. . . . It is not enough when faced with a motion in Federal Court to remain silent and then expect the Court to hypothesize a present opposition from the content of an earlier pleading. It frequently happens that parties plea claims or defenses in the hope that something will develop to support them, but summary judgment practice is the "fish or cut" bait time: if you persist in your claim or defense, you must show that you are entitled to litigate it further.

(Supplemental Report and Recommendation, Doc. 56, pp. 2-3). No objection was filed to this Report which was ultimately affirmed by the Court. Such a failure by the Respondent itself constitutes a waiver of that defense.

> [Defendant] has waived these affirmative defenses by not asserting them in its own motion for summary judgment and, more importantly, by not asserting them in its opposition to the [plaintiff's] motion for summary judgment.

*United Mine Workers of America 1974 Pension Trust v. Rawl Sales and Processing Co.,* 793

36

F.Supp. 339, 344 (D.D.C. 1992), aff'd 984 F.2d 469 (D.C. Cir. 1993), *cert. denied,* 509 U.S. 924

(1993). This waiver occurs even where the defense is raised in the answer. *Id.,* 793 F.Supp. at

344. In affirming that holding the D.C. Circuit explained, "[a]s a general rule the failure to raise

an affirmative defense in opposition to a motion for summary judgment constitutes an

abandonment of that defense." *United Mine Workers of America 1974 Pension Trust,* 984 F.2d at

478. Thus, the defense has been waived, and, contrary to the Magistrate Judge's suggestion

cannot be revived. Thus, under *Slack* a Certificate of Appealability should issue to review the

Court's contradictory rulings on this procedural issue.

Even had the defense been preserved as to Claim 15.3, Respondent waived the defense by

not objecting to the Magistrate Judge's specific holding that no procedural default claim had

been raised as to Claim 15.3. See, *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 595-596 (6th Cir.,

2006).

Moreover, Respondent never raised any procedural default defense to this claim in the

Post Hearing Memorandum. (Doc. 74). The subsequent Report and Recommendation

erroneously concludes that this claim is procedurally defaulted. (Report & Recommendation,

Doc. 103, p. 91). The Magistrate Judge suggests that Palmer allegedly violated a state procedural

rule that post conviction claims be supported by evidence outside the record. One problem with

the Magistrate Judge's analysis is that Ohio's Post Conviction statute (R.C. § 2953.21(A) (1))

clearly indicates that the purported evidentiary requirement is directory not mandatory because it

uses the terms "**may** file a supporting affidavit and other documentary evidence in support of the

claim for relief." (Emphasis added).

Another problem with the analysis is that the last state court to deal with this claim found

37

that the claim was not sufficiently documented rather than defaulted. The Magistrate Judge concludes that the Court of Appeals' decision was based on application of a rule of procedure and not a determination on the merits. However, within the quote referenced by the Magistrate Judge is the Court of Appeals' statement that "no great expertise is required to determine the effects of alcohol on person." A reasonable jurist could fairly conclude that this was a merits determination holding, in essence, that counsel was not deficient in failing to obtain a toxicology expert. This issue was presented to the Court of Appeals as part of Assignments of Error II, IV, and V. (Joint Appendix p. 2324).

The Court of Appeals decided on the merits that Petitioner had no right to such an expert since he had presented insufficient evidence to establish the need for such an expert. (Joint Appendix pp. 2480, 2483-2484). Thus, the state Court of Appeals looked at the merits the claim and decided Palmer did not meet his burden of production or, ultimately, his burden of persuasion. Thus, jurists of reason would find it debatable whether the district court could ignore the law of the case doctrine and impose a procedural default the Warden never asserted.

Even if the state courts had reasonably applied a procedural default, Petitioner has demonstrated that in failing to object to the Magistrate's finding, Respondent waived that defense. The Magistrate Judge's own conflicting findings on this issue make it clear that whether procedural default has occurred is itself subject to debate by reasonable jurists. The Certificate of Appealability should issue as to this claim.

**(ii)    Claim 15.6:  Failure to Properly Object to Incomplete and Erroneous Jury Instruction on Inferences.**

State courts may not permit a jury to base an inference of fact upon another inference.

Fundamental fairness dictates that the court must provide a limiting instruction where an element

of an offense, such as intent to kill, is based upon circumstantial evidence and inferences drawn

upon that evidence. "We will not uphold a conviction, however, that was obtained by nothing

more than `piling inference upon inference . . . .'" *U.S. v. Rahseparian*, 231 F.3d 1257, 1262 (10th

Cir. 2000), quoting *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir. 1990). Permitting a jury

to stack inferences in this way renders a resulting verdict unreliable. "Where an inference is

based solely and entirely upon another inference, its foundation is so insecure that reliance upon

the second inference would stretch credulity beyond its permissible bounds and result in an

inferred fact which in reality is speculative . . ." *State v. Ebright*, (1983), 11 Ohio App.3d 97, 98.

The Magistrate Judge recommends rejecting this claim on both procedural default

grounds and the merits. The Magistrate Judge's procedural default recommendation is probably

the most surprising ruling in this matter in that he previously recommended granting Plaintiff's

Motion for Summary Judgment on that basis. Indeed, the Magistrate Judge concedes this point.

(Report and Recommendation, Doc. 128, p. 17).

The Magistrate Judge fails to note that he subsequently reaffirmed that recommendation

in his Report and Recommendation entered May 1, 2002.

> Having considered the parties' Objections, the Magistrate Judge again respectfully
> recommends Petitioner's Motion for Summary Judgment be GRANTED ***as to
> claims . . . 15.6***, 15.11, 15.12, 15.13, 15.21, and 15.22. . . .

(Supplemental Report and Recommendation, Doc. 56, p. 6). (Emphasis added). No objections

were filed to the Supplemental Report by Respondent. Respondent thus waived the defense that

the Magistrate Judge now tries to resurrect. *Frontier Ins. Co. v. Balty*, 454 F.3d at 595-596. The

Magistrate Judge's Supplemental Report was subsequently affirmed by the District Court on

October 10, 2002. (Order, Doc. 61). The District Court specifically affirmed the granting of partial summary judgment as to the above listed claims. (*Id*.) At no point in the subsequent three years did Respondent ever file a Motion asking the District Court to review that ruling. Petitioner subsequently filed his Post-Evidentiary Hearing Merits Brief on June 23, 2003 addressing only the merits of this claim. (Doc. 79, pp. 38 *et seq*.). Petitioner can find no record of Respondent filing any reply to the argument on the merits. The Respondent's failure to object to the Magistrate Judge's Supplemental Report and Recommendation to grant summary judgment on the procedural default defense with respect to this claim, operated as a waiver of that defense. See *Diamond v. Colonial Life and Acc. Ins. Co.,* 416 F.3d 310, 316 (4th Cir. 2005) ("when [plaintiff] failed to lodge an objection to the magistrate judge's suggested disposition . . . in his **second report,** she failed to make the `specific written objection' required to invoke a *de novo* review by the District Court." (Emphasis added).

It is decidedly unfair for the Magistrate Judge to suggest that Petitioner has somehow waived the argument that the summary judgment decision established the law of the case by failing to raise it in his objections on the merits decision, while at the same time ruling that Respondent has not waived procedural default defense by failing to object to the Magistrate Judge's Supplemental Report and Recommendation. Nor is it an entirely accurate description of Petitioner's objection as to this claim. Petitioner makes it very clear in his Objections that the District Court's affirmance of Summary Judgement in Petitioner's favor on the procedural default defense forecloses relitigation of that issue. (See, for example, Petitioner's Objections, Doc. 110, p.158). Petitioner's burden under Rule 72 is to identify the specific rulings of the Magistrate Judge to which he objects. Petitioner did that in his objections and made it very clear

40

that the District Court's ruling on summary judgment with respect to all claims covered by the order foreclosed the Magistrate Judge's reversal. Petitioner's law of the case argument simply provides additional legal authority for the objection previously made. That is all Petitioner was obligated to do. Petitioner has not "waived" the issue and the Magistrate Judge cites no case law to support that part of his recommendation.

Moreover, the Magistrate Judge cites no law that gives a magistrate judge the authority to essentially overrule a prior Order of the District Court regarding summary judgment. Yet that is precisely the effect of his Recommendation. Petitioner can find no authority that would permit such action.

It is equally unfair for the Magistrate Judge to invoke a waiver argument against the Petitioner *sua sponte*. That argument was not raised by Respondent in its Memorandum in Opposition to Petitioner's Motion for the Issuance of a Certificate of Appealability. (Doc. 127, see p. 13). In any event, there simply is no legal authority that would permit a Magistrate Judge to effectively overrule a decision by the District Court to enter summary judgment in Petitioner's favor on an affirmative defense. At the very least, this issue should be subject to review on appeal as reasonable jurists would likely have differing opinions on this issue. *Slack,* 529 U.S. at 484.

Likewise, there is room for debate on the merits of the claim. Contrary to the Magistrate Judge's interpretation of the record, the evidence does support the contention that the prosecutor was impermissibly permitted to stack inferences which were not logically conencted to the jury's ultimate conclusion of prior calculation and design.

In the case at bar, the trial court provided the jury only with a general instruction

41

regarding the definition of inference. (Joint App., Vol. IV, Tr. p. 1231). The record discloses no objection by counsel to the Court's failure to instruct the jury that it is prohibited from stacking one inference upon another inference to prove an element of an offense. Defense counsel was aware of the importance of such a limiting instruction and conceded that there would be no strategic justification for not either submitting an instruction to be included or objecting to the omission of such an instruction. (Nichelson Trial Tr., Vol 1, pp. 58-59). Such an instruction was particularly important where the prosecution introduced substantial evidence of other acts of criminal misconduct unrelated to the indictments. *Id.* at 59. The instruction in this case permitted the jury to go beyond an inference from direct circumstantial evidence. The trial judge instructed the jury,

> In order to warrant a conviction in a criminal case upon circumstantial evidence *or by any evidence,* it is necessary that the evidence be so clear and convincing as to exclude every reasonable doubt . . . (Emphasis added).

(Joint App. Vol. IV, Trial Tr., p. 1232). (Emphasis added).

The Court then proceeds to instruct the jury on determining credibility by informing them that they should "take into consideration *any other facts or circumstances* which may have a bearing upon the credibility of the witnesses." (Emphasis added). (Id.). By using the phrase "circumstantial evidence or *by any evidence*", and by further informing the jury that they can take into consideration in weighing credibility "any other facts or circumstances," invited the jury to consider a variety of evidence that was clearly unrelated to the elements of intent and purpose, such as the unsubstantiated allegations that he sexually abused his children and ex-wife, that he was intending to harm Mr. Goolie, and that the gas station attendants were lucky they were not robbed or killed. There is little question that the prosecutor, through irrelevant testimony and

42

through argument, invited the jury to stack these inferences. (See Petitioner's Traverse Doc. 25, pp. 25-33 for a description of the large body of irrelevant and prejudicial material the prosecutor used to stack inferences of intent and guilt). (Joint App. Vol. IV, Trial Tr., pp. 751, 847, 867, 840, 924, 932, 935, 940-942, 945-948, 953-957, 970, 972, 975, 972, 1127, 1198, 1148, 1198, 1200, 1159-60, and Mitigation Tr., pp. 122-126, 153).

"An inference is reasonable only if the conclusion flows from the logical and probabilistic reasoning." *U.S. v. Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998). The prosecutor exploited the absence of a limiting instruction regarding the stacking of inferences by arguing to the jury,

> No matter what anyone tells you, you alone have the power to put those facts together and draw the necessary and reasonable inferences. *No one can tell you that you can or cannot draw a certain inference* if you feel beyond a reasonable doubt, *if you know in your heart* that that is the necessary and probable inference to draw from *all of the evidence* . . .

(Joint App. Vol. IV, Trial Tr. pp. 1159-1160).  (Emphasis added).  This is completely inconsistent with the Supreme Court's longstanding proscription against obtaining a conviction by "piling inference upon inference." *Direct Sales Co. V. U.S.,* 319 U.S. 703, 711 (1943).

Trial counsel's failure to obtain the limiting instruction regarding stacking of inferences, as trial counsel conceded, is particularly critical to this case as the prosecutor had offered substantial evidence regarding unrelated alleged criminal activity of Mr. Palmer prior to the shootings of Mr. Vargo and Mr. Sponhaltz. (See generally, Traverse, pp. 25-28 for a recitation of the prejudicial evidence offered by the prosecutor.) It was this highly prejudicial evidence that the prosecutor invited the jury to use in stacking inferences for the purpose of drawing the conclusion that Mr. Palmer purposely killed the two victims. This had the effect of relieving the prosecution of its burden of proving intent which clearly contravenes well-established Supreme

43

Court precedent. One cannot constitutionally be given the death penalty for an unintended murder. *Enmund v. Florida*, 458 U.S. 782, 792-93 (1982).

Trial counsel's failure to propose an instruction prohibiting the jury from stacking inferences, as they were invited to do by the prosecutor, relieved the state of proving the element of intent and ultimately permitted the jury to return a verdict of guilty. Through counsel's deficient performance, the jury was permitted to stack inferences drawn from unrelated and highly prejudicial assertions of other criminal acts, thus, the verdict is necessarily rendered unreliable. In such circumstances jurists of reason would find it debatable under *Slack* as to whether this claim states a valid claim of the denial of a constitutional right.

Jurists of reason would find it debatable whether the Magistrate Judge and, ultimately the District Court, could ignore the this Court's previous dispositive holding rejecting the procedural default defense as to this claim and impose a procedural default bar the Warden never asserted. Likewise, Petitioner has demonstrated above that reasonable jurists can differ as to the merits of the claim. Accordingly, consistent with *Slack,* Petitioner is entitled to a Certificate of Appealability regarding this claim.

> **(iii)    Claims 15.8 and 15.9:  Failure to Object to Evidence that Palmer did not pay his child support. Failure to seek a limiting instruction regarding other acts evidence. (Advanced together).**

Petitioner asserts that trial counsel were constitutionally ineffective when they failed to object to the introduction of evidence that Mr. Palmer failed to pay child support and in failing to seek a limiting instruction regarding the other bad acts evidence previously discussed. The child support evidence was clearly irrelevant to any issue in this case. Further, there was no legitimate strategic reason for failing to seek a limiting instruction on the "other bad acts" evidence which,

likewise, was irrelevant and highly prejudicial.

The Magistrate Judge recommends against issuing a Certificate of Appealability on these claims. The Magistrate Judge does no analysis under *Slack* and offers no case law in support of his conclusion. (Report and Recommendation, Doc. 128, p. 17). Indeed, the Magistrate Judge simply disposes of the issue by accepting the characterization of the Court of Appeals without any specific legal or factual analysis. The Magistrate Judge does not address Petitioner's argument supporting issuance of the certificate.

Evidence as to whether or not Palmer paid his child support obligation was probative of nothing in his capital case. Its admission only served to further the prosecution's obvious plan of character assassination by trying Palmer for who he was and not solely for what he did in the culpability phase. Trial counsel Nichelson conceded in his deposition that there was no strategic reason for permitting this evidence in. Logic dictates that, in fact, this evidence could only harm the Petitioner's defense at trial and his efforts to prove mitigation. (See Nichelson Tr., Vol. I, pp. 40-56, and see Nichelson Tr. Vol. II, pp. 2, 20-24). Nevertheless, Court held that trial counsel were not ineffective in failing to request a limiting instruction concerning of evidence that Palmer did not pay his child support because there was substantial evidence of his guilt. [Claim 15.9] (Report and Recommendation, Doc. 103, p. 101).

Such reasoning means as long as there is "substantial evidence of guilt" the prosecution can place before the jury as much character assassination as it can muster since it is harmless. As was the case during the mitigation phase, counsel failed to object to or seek limiting instructions regarding evidence offered by the prosecutor that Petitioner allegedly engaged in other criminal activity unrelated to the charges which were the subject of his trial. Specifically, the prosecutor,

without objection, was allowed to elicit testimony regarding Petitioner's alleged criminal intent toward the gas station attendants, and a local motel, as well as regarding unsubstantiated criminal acts allegedly perpetrated against his children and his ex-wife, including sexual and physical abuse. None of this evidence had to do with his whereabouts since it was not contested that he shot the victims. None of this evidence regarding unsubstantiated criminal acts allegedly perpetrated against his children and his ex-wife, including sexual and physical abuse, was relevant in any way to his intent or state of mind the day of shootings. There was no objective evidence presented that Palmer had any criminal intent toward the gas station attendants or the local motel. A limiting instruction was warranted.

Petitioner has demonstrated above that the prosecutor's barrage of irrelevant evidence of alleged other criminal activity "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. at 181. Counsel's deficient performance in failing to object or to try and limit the prejudical effect of other act evidence so prejudiced Petitioner that it deprived him of a trial whose results at both the guilt and mitigation phases were rendered unreliable. *Strickland,* 466 U.S. at 687. Given the serious nature of the unrelated evidence of other criminal activity, there can be no question that there is a reasonable probability, that but for counsel's errors regarding the admission of this evidence, "the result of the proceeding would have been different." *Id.* 466 at 694. As a consequence Palmer submits that he has made a substantial showing of the denial of a constitutional right. The strength of the case law reviewed above together with the egregious facts supporting these two Claims clearly fall within the *Slack* analysis of claims that are subject to debate among reasonable jurists. Therefore, Court should issue a Certificate of Appealability as to Claims 15.8 and 15.9.

    **(iv)**    **Claim 15.10: Failure to object to prosecutorial misconduct concerning: (i) reasons why Petitioner was in the geographical area of the offenses; (ii) mis-statements of law in closing argument; (iii) interjecting personal opinions; (iv) introduction of other acts evidence; and (v) securing juror commitments in voir dire to impose the death penalty**.

The District Court erroneously concluded that Petitioner had failed to advance any argument in support of this claim. In fact, in Petitioner's Post Hearing Merits brief, (Doc. 79), Petitioner combined his arguments for Claims 15.6 through 15.13 into a single exposition as noted on page 41 of the Post Hearing Brief. (And see discussion at pp. 25-30 of Petitioner's Post Hearing Brief).

Without doing any *Slack* analysis, the Magistrate Judge simply concludes without citation of authority or reference to any specific part of the record that Petitioner has not shown that his objections to these acts by the prosecutor would have been sustained. Petitioner has demonstrated above ample dispositive Federal constitutional decisions supporting the inadmissable nature of such highly prejudicial irrelevant testimony. (Without repeating those federal constitutional arguments, Petitioner respectfully refers the Court to the discussion of the sub-claims under the Third Claim for Relief above).

It is important to note that trial counsel Nichelson testified that there was no strategic reason for permitting the evidence to be placed before the jury since it would only harm Palmer's defense at trial and his efforts to establish mitigation. (Nichelson Tr., Vol. I, pp. 46-50; Vol. II, pp.2, 20-24). Petitioner has made a substantial showing under *Strickland* of the denial of his right to effective assistance of counsel in this regard and that, at the very least, reasonable jurists can reach differing conclusions regarding this claim. Thus, the Court should grant a Certificate of

Appealability as to this claim.

>    **(v)    Claims 15.11, 15.12 and 15.13.  Failure to Object to Testimony
>    by Deputy Hawthorn Concerning His Contact with Petitioner
>    on May 7-8th 1989. Failure to Object to Testimony by Larry
>    Kiss Concerning His Observations of a Brown Car on May 8,
>    1989.  Failure to Object to Testimony by Service Station
>    Employees Critzer and Kolb Concerning Their Observations
>    of Petitioner on the Day of the Shooting.  (Advanced Together).**

The Magistrate Judge notes that his original Recommendation regarding this claim was that it was procedurally defaulted for not being raised in state court.  In his Objections, as the Magistrate Judge notes, Petitioner objects to that specific ruling.  In his discussion of these claims the Magistrate Judge does not recommend either way whether a Certificate of Appealability should issue.  (Report and Recommendation, Doc. 128, p. 18).  Thus, the Magistrate Judge does no specific analysis of Petitioner's arguments and does no analysis under *Slack*.

All three of these claims deal with the constitutionally ineffective assistance of trial counsel in failing to object to "other bad acts" evidence. Petitioner has demonstrated above, under Claim 3 and its sub-claims, that the prosecutor's barrage of irrelevant and speculative evidence of alleged other criminal activity "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. at 181. Counsel's deficient performance in failing to oppose such evidence so prejudiced Petitioner that it deprived him of a trial whose results at both the guilt and mitigation phases were rendered unreliable. *Strickland,* 466 U.S. at 687. Given the serious nature of the unrelated evidence of other criminal activity, there can be no question that there is a reasonable probability, that but for counsel's errors regarding the admission of this evidence, "the result of the proceeding would have been

different." *Id.* 466 at 694. Under such circumstances jurists of reason would find it debatable as to whether this claim states a valid claim of the denial of a constitutional right and that a Certificate of Appealability should issue on the merits of these claims.

As mentioned, the Court previously found that Respondent failed to oppose Petitioner's motion for Summary Judgment that this claim was not defaulted. (Report and Recommendation, Doc. 50, pp. 13-14). Such a failure by the Respondent itself constitutes a waiver of that defense.

> [Defendant] has waived these affirmative defenses by not asserting them in its own motion for summary judgment and, more importantly, by not asserting them in its opposition to the [plaintiff's] motion for summary judgment.

*United Mine Workers of America 1974 Pension Trust v. Rawl Sales and Processing Co.,* 793 F.Supp. 339, 344 (D.D.C. 1992), aff'd 984, F.2d 469 (D.C. Cir. 1993), *cert. denied,* 509 U.S. 924 (1993). This waiver occurs even where the defense is raised in the answer. *Id.* 793 F.Supp. at 344. In affirming that holding the D.C. Circuit explained, "[a]s a general rule the failure to raise an affirmative defense in opposition to a motion for summary judgment constitutes an abandonment of that defense." *United Mine Workers of America 1974 Pension Trust,* 984 F.2d at 478. Thus, the defense has been waived, and, contrary to the Magistrate Judge's suggestion, cannot be revived.

In adopting the Report and Recommendation regarding Petitioner's motion for summary judgment the District Court made a finding that this claim was not procedurally defaulted. (Doc. 61). In conflict with the prior ruling, the Report and Recommendation erroneously concludes that this claim is procedurally defaulted. (Report and Recommendation, Doc. 103, pp. 102). That finding is again alluded to in significant discussion in the Report and Recommendation as to the Certificate of Appealability. (Doc. 128, p. 18). Petitioner demonstrated above that the

49

Magistrate Judge erred in so doing.  Specifically, the Magistrate Judge has no authority to *sua sponte* resurrect an affirmative defense with respect to which Petitioner had previously been granted summary judgment.   Nor does he have authority to reverse such a prior holding.  Thus, jurists of reason would find it debatable whether the district court could ignore its prior dispositive decision under the law of the case doctrine or any other authority and impose a procedural default the Warden never asserted.[3]  Indeed, the Magistrate Judge's original contrary decision and the adoption of that recommendation by District Judge confirms the debatable nature of these issues under *Slack*.  Thus, a Certificate of Appealability should issue on both the merits and procedural issues with respect to these claims.

> ### (vi)    Claims 15.14 and 15.22 - Failure to Be Adequately Prepared for the Sentencing/Mitigation Phase. Failure to Properly Investigate and Present Mitigating Evidence. (Advanced Together)

The Magistrate Judge recommends a denial of the certificate as to 15.14 by artificially isolating that claim and suggesting incorrectly that it has been abandoned.  (Doc 128, p.19).  Claim 15.14 must be read in conjunction with 15.22 as they are inextricably interrelated.  The Magistrate Judge isolates 15.14 by apparently identifying that claim as consisting only a paragraph 125 of the Petition. (Doc. 128, p.19).  There is absolutely no way that claim should be read in isolation.  It is pled as part of a series of factual examples of the trial counsel's failure to properly investigate and otherwise prepare for the mitigation.  Paragraph 125 of the Petition (Doc. 15) is simply an undisputed fact that provides competent evidence that Petitioner was denied effective assistance of counsel at mitigation because counsel failed to investigate and

---

[3] Petitioner has previously demonstrated that the Respondent has waived any procedural default defense by failing to object to the Magistrate Judge's second Report and Recommendation granting summary judgment as to this claim.  (See Docs. 56, 61 and see argument above.)